IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRENDA J. COOPER; SYLVIA R. CAFFEY;
MARGARET J. ODEMS; BERNICE B.
RICHARDSON; DORA A. WARD; ROSIE BRADY;
PEARL SELDON; BETTY PHILLIPS, PERSONAL
REPRESENTATIVE AND DEVISEE OF HILDRED
JOHNSON DECEASED; ALICE CRUMLEY,
DEVISEE OF HILDRED JOHNSON; AND SYLVIA
CUNNINGHAM                                                                    PLAINTIFFS

VS.                                    CIVIL ACTION NO. 4:16-cv-052 DMB-JMV

MERITOR, INC. F/D/B/A ROCKWELL
INTERNATIONAL CORPORATION; TEXTRON,
INC. F/D/B/A RANDALL DIVISION OF TEXTRON,
INC.                                                                           DEFENDANTS

*CONSOLIDATED WITH*

JOE E. SLEDGE; KATRENA FISHER,
PERSONAL REPRESENTATIVE AND
DEVISEE OF HENRY FISHER, DECEASED DAVID
L. MCCLAIN; MARY MCCLAIN; DOLPHUS
BRIDGES; BARBARA L. BRIDGES; CAROL S.
JOHNSON; CORDELIA REED; JAMES WRIGHT;
LUCILLE TURNER; EMMA J. HARDIMAN; JEFFREY
SCOTT; SINCELLIA SCOTT                                                         PLAINTIFFS

VS.                                    CIVIL ACTION NO. 4:16-cv-053 DMB-JMV

MERITOR, INC. F/D/B/A ROCKWELL
INTERNATIONAL CORPORATION; TEXTRON,
INC. F/D/B/A RANDALL DIVISION OF TEXTRON,
INC.                                                                           DEFENDANTS

*AND*

KATHERINE LONGSTREET COOKE;
SHIRLEY NEVITTE; STACY H. BRIDGES;
BERNARD WILLIAMS A/K/A HUBERT WILLIAMS;
LESSIE LUSK A/K/A LESSIE LUSK PORTER;
JAMES HARRIS; SHIRLEY HARRIS; DARRELL
HUBBARD; SANDRA HUBBARD; BESSIE BAGGETT

**A/K/A BESSIE YATES; THYRA W. CRAIG**  PLAINTIFFS

VS.  CIVIL ACTION NO. 4:16-cv-054 DMB-JMV

**MERITOR, INC.; ROCKWELL AUTOMATION,
INC.; and TEXTRON, INC.**  DEFENDANTS

*AND*

**SRA INVESTMENTS, LLC c/o STEVE
COUCH; AMOS JOHNSON; ANNIE MAE
MCFARLAND AND MISTER; DOBIE ARCHER;
SAMMIE LOGGINS, JR.; ANGELIA REED
LOGGINS; CAMMIE L. HARGES; TARIK
JOHNSON; CURTIS BLISSETTE; LINDA
SINGLETON; WILLIAM EARL BENSON; BARBARA
BENSON**  PLAINTIFFS

VS.  CIVIL ACTION NO. 4:16-cv-055-DMB-JMV

**MERITOR, INC. F/D/B/A ROCKWELL
INTERNATIONAL CORPORATION; TEXTRON,
INC. F/D/B/A RANDALL DIVISION OF TEXTRON,
INC.**  DEFENDANTS

*AND*

**FELICIA WILLIS AS ADMINISTRATRIX OF THE
ESTATE OF DAISY K. WILLIS, DECEASED;
VIOLA P. SYKES; EMMA J. SCOTT a/k/a EMMA
MCKINNEY; JESSE LITTLE; ANNETTE MARIE
BARNES HIGHTOWER; TERRY L. MURRY; BOBBIE M.
MISTER; MARY M. INGRAM; EARL REED; and
RUBYE BOOKER**  PLAINTIFFS

VS.  CIVIL ACTION NO. 4:16-cv-056-DMB-JMV

**MERITOR, INC. F/D/B/A ROCKWELL
INTERNATIONAL CORPORATION; TEXTRON,
INC. F/D/B/A RANDALL DIVISION OF TEXTRON,
INC.**  DEFENDANTS

## ORDER DENYING MOTION TO COMPEL THE RETURN OF PRIVILEGED DOCUMENTS

This matter is before the court for decision on the Motion of Textron, Inc. (Textron) to Compel the Return of Documents currently in the possession of Plaintiff's counsel and claimed by Textron to be privileged. ([111] in 4:16-cv-52; [101] in 4:16-cv-53; [104] in 4:16-cv-54; [106] in 4:16-cv-55; and [104] in 4:16-cv-56). As discussed below, the court finds that Textron has no privilege to assert with respect to the subject documents.

In the instant case, Textron asserts a privilege over fifteen (15) documents created from 1989 to 1996 during a period of time it owned and operated a wheel cover manufacturing facility in Grenada, Mississippi. In 1999, Textron entered and subsequently consummated an asset sale agreement with Grenada Manufacturing, LLC (hereinafter sometimes "the APA"). According to Textron, it did not transfer ownership of documents related to environmental matters, including the subject 15 documents, to Grenada Manufacturing, LLC as part of that sale. It is Textron's positon that it retains ownership of all such documents and any affiliated privilege with respect thereto.

Textron argues that because the Textron/Grenada Manufacturing, LLC APA excludes from the sale, assets not "used exclusively in, or held for use exclusively in, the Business," documents related to environmental matters were excluded. Textron also argues that the fact that it or another entity retained all environmental liabilities and obligations, to the extent such claims were based on the release of materials at the facility before the closing date, means ownership of the documents related to environmental matters was not transferred to Grenada Manufacturing, LLC as part of the APA. According to an affidavit supplied by Textron, boxes of these environmental documents, together with other business records of Textron's operations prior to the 1999 sale, were left by Textron at the Grenada facility after the sale. Indeed, Textron contracted for a right to access the documents for a period of time following the sale. APA 14.1.

In the court's view, Textron's claim of retained ownership of the documents, even if it were convincing,[1] does not satisfactorily answer whether its treatment of those assets waived any privilege that might be claimed with regard to any of them.

If Textron is correct that it did not sell documents related to environmental matters to Grenada Manufacturing, LLC in 1999 (15 pages of which it now contends are privileged), then it has conceded that it left those documents – for decades – in possession and control of another (indeed, others) without restriction on the ability of the other entities to access, review, copy or disseminate them. The documents were in the possession of Grenada Manufacturing, LLC from 1999 until 2004 when Grenada Manufacturing, LLC filed Chapter 11 bankruptcy. The bankruptcy court authorized, without objection by Textron (who was a named creditor), a sale to Ice Industries, Inc. of its assets, including its documents, but Textron argues that Grenada Manufacturing, LLC could not have transferred the environmental records dating prior to the Textron/Grenada Manufacturing, LLC sale in 1999, to Ice Industries, Inc. because Grenada Manufacturing, LLC did not own those documents.

Even if this were so, Textron is faced with the fact that it intentionally left documents that it must acknowledge (because it is material to its claim of retained ownership of the documents in the first instance) it knew concerned environmental matters related to releases from the business prior to 1999. These documents were intentionally left unattended and unrestricted in the hands of yet another party – this time, Ice Industries, Inc. Though Textron was given notice

---

[1] As the Court construes the provisions of the asset purchase agreement, ownership of *all* documents concerning the business (except those related to tax refunds and rebates) were transferred pursuant to section 1.1(v) of the purchase and sale agreement (albeit with provision made for the seller to access historical environmental documents after the close of the sale, as necessary, in order to address certain environmental liabilities retained by it). The environmental documents are plainly documents generated in connection with the operation, and continued operation, of the business and the mere fact that Textron retained liabilities and obligations related to certain environmental matters (and an associated contractual right to access the documents in the possession of Grenada Manufacturing, LLC post-sale to address those liabilities), does not mean the documents were not part of the assets sold by way of the APA.

of the asset transfer to Ice Industries, Inc., it made no effort to retrieve the environmental documents or to even review them for privilege.

In other words, Textron plainly waived any privilege that would have otherwise been retained if the documents had, in fact, been excluded from the purchase and asset sale. *See Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir. 1993) ("Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney-client relationship waives the privilege."); *Solis v. Bruister*, 2013 WL 493374, at *2 (S.D. Miss. Jan. 22, 2013) (The voluntary disclosure of privileged or work product information to third parties constitutes a waiver and destroys any privilege claims.); *see also Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, 2016 WL 4967716, at *2–3 (D. Nev. Sept. 15, 2016).

At the hearing on this matter, Textron's counsel argued that while it may have known that documents related to environmental matters it claimed to own were left in the possession of Granada Manufacturing, LLC, it had forgotten by that time (1999), or otherwise failed to realize then, that those documents included documents that it might claim a privilege with respect to. And, when the assets of Grenada Manufacturing, LLC were sold to Ice Industries, Inc. in 2005, it did not retrieve the documents from Grenada Manufacturing, LLC, so as to avoid transfer of their physical possession and disclosure to Ice Industries, Inc. because it, again, did not recall/realize that there were privileged documents among them. In other words, Textron argues that unless it realized that the documents concerning environmental matters that it freely gave possession of to others for decades did in fact contain privileged documents, that disclosure could not waive any privilege attendant to the document(s).

The court is unpersuaded. *See Solis,* 2013 WL 493374, at *2 (Defendants have not convinced the Court that any privileges were not waived when Amy Smith's computer was

5

turned over to DirecTV.); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2003 WL 21384304, at *3 (W.D.N.Y. May 9, 2003) (Defendants have waived any attorney-client privilege or work-product protection that otherwise might have attached to any documents that were left in the possession of FCE after November 20, 1997.); *In re Grand Jury Subpoenas 89-3 & 89-4*, 734 F. Supp. 1207, 1213 (E.D. Va.), *order aff'd in part, vacated in part sub nom. In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244 (4th Cir. 1990) (Movant, it appears, permitted at least some of these documents to remain in the Subsidiary's custody and control after the sale of the Subsidiary. In so doing, it effectively waived its privilege with respect to these documents.).

Further, there is nothing about the "practical consequences doctrine" that dictates a different outcome. The practical outcome of leaving – for decades – documents a company contends it owns in possession of another, with no provision for protection of any privileged communications therein, not to mention permitting the subsequent transfer of possession to others on additional occasions, all without any effort to retrieve them prior to the instant litigation,[2] or to otherwise review them to remove privileged materials has the obvious practical and legal consequence of waiver of any associated privileges.

Finally, because the court finds that any privilege has been waived or transferred to another prior to the instant litigation, it is not necessary at this juncture to address the adequacy of the Textron privilege log with particularity. However, the court notes, for future reference, that a privilege log that fails to identify all authors and all recipients adequately (including not just a name but the person's relationship to counsel or the client) is insufficient. As counsel is no

---

[2] The court declines to find a waiver based on a party's disclosure in the course of the instant litigation. *See* lead case [83] CMO at section 6(f) "Pursuant to Rule 502(d) of the Federal Rules of Evidence, the attorney-client privilege and the work-product protections are not waived by any disclosure connected within this litigation pending before this Court. Further, the disclosures are not waived in any other federal or state proceeding."; *see also* F.R.E. 502(d).

doubt aware, simply because a lawyer is copied on a document, or even authored it, does not necessarily, under all circumstances, make it privileged.

**SO ORDERED** this, the 12th day of January, 2017.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**