**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**BRENDA J. COOPER, ET AL. PLAINTIFFS**

**VS. CIVIL ACTION NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., ET AL. DEFENDANTS**

***CONSOLIDATED WITH***

**JOE E. SLEDGE, ET AL. PLAINTIFFS**

**VS. CIVIL ACTION NO. 4:16-CV-53-DMB-JMV**

**MERITOR, INC., ET AL. DEFENDANTS**

***AND***

**KATHERINE LONGSTREET COOKE, ET AL. PLAINTIFFS**

**VS. CIVIL ACTION NO. 4:16-CV-54-DMB-JMV**

**MERITOR, INC., ET AL. DEFENDANTS**

***AND***

**SRA INVESTMENTS, LLC, ET AL. PLAINTIFFS**

**VS. CIVIL ACTION NO. 4:16-CV-55-DMB-JMV**

**MERITOR, INC., ET AL. DEFENDANTS**

***AND***

**FELICIA WILLIS, ET AL. PLAINTIFFS**

**VS. CIVIL ACTION NO. 4:16-CV-56-DMB-JMV**

**MERITOR, INC., ET AL.** **DEFENDANTS**

**ORDER**

This matter came before the court on plaintiffs' motion to compel [466] defendants, Meritor Inc., Rockwell Automation Inc., and the Boeing Company (hereinafter, collectively, "Meritor") to produce certain "T and M production documents" inadvertently provided to, and currently sequestered by, plaintiffs' counsel (hereinafter "the clawback documents"). T&M is an environmental firm who has done work for Meritor for many years. Jim Peeples, T&M's vice president, has been designated by Meritor as a testifying expert in this case—a designation which lies at the heart of the issues addressed herein. Following briefing and a hearing on the motion, the court has ordered the production of all, except one, of the clawback documents[1] for the reasons expressed at the hearing and set forth below.

*Background*

This is an environmental tort case[2] filed on March 16, 2016 by the owners of homes in the Eastern Heights neighborhood of Grenada, Mississippi who contend that defendants' manufacturing facility, next door, is responsible for contamination—primarily in the form of TCE and hexavalent chromium, of their air, ground water, and soil. The claims asserted are under state law and are for fraud and fraudulent concealment, negligence, nuisance, civil conspiracy, trespass, and intentional or negligent infliction of emotional distress.

[1] Revised Exhibit A, Document 10 [468-1] was found to be privileged. That document does not involve, as the court understands it, a communication with Peeples, but rather is a 2013 communication from Meritor's counsel requesting assistance from an employee of T&M in connection with remediation work at the Grenada facility being performed by T&M. According to Meritor, the communication was made to facilitate legal services by counsel to Meritor.

[2] There are actually (5) five, separate, toxic tort cases against these defendants which have been consolidated for purposes of discovery.

The case management order [83] entered in this matter set the original discovery deadline as November 29, 2017, the deadline for designation of plaintiffs' experts as April 28, 2017, and the deadline for designation of defendants' experts as July 28, 2017. The trial date was set for June 4, 2018.

*Meritor's Expert Designation*

On April 28, 2017, plaintiff timely designated their experts, and, on motion of the defendants, their expert designation deadline was extended to August 18, 2017. On that date, Meritor designated its experts, and Textron, Inc., also a defendant, filed a separate, but—the court is advised—identical designation. The defendants' expert designation, the most relevant portions of which are italicized below, provides as follows:

***A. RETAINED EXPERT WITNESSES***

Defendants designate and disclose the following retained experts pursuant to Fed. R. Civ. P. 26 (a)(2)(B) in each of the above styled cases:

> Barbara D. Beck, Ph.D., D.A.B.T.
> Fellow ATS, ERT, Principal
> Gradient
> 20 University Road
> Cambridge, Massachusetts 02138
>
> A copy of Dr. Beck's Curriculum Vitae and report is attached as Exhibit A.
>
> Trevor E. Phillips, FRICS, ASA, CRE
> Managing Director
> Alvarez & Marsal Disputes and Investigations, LLC
> 700 Louisiana Street, Suite 3300
> Houston, Texas 77002
>
> A copy of Mr. Phillips' Curriculum Vitae and report are attached as Exhibit B.
>
> Robert L. Powell Ph.D., P.E
> Ramboll Environ
> 10150 Highland Manor Drive

Suite 440
Tampa, FL 33610

A copy of Dr. Powell's Curriculum Vitae and report is attached as Exhibit C.

Ranjit Machado, PE
Managing Principal
Environment & Health
Ramboll Environ
4350 North Fairfax Drive
Suite 300
Arlington, VA 22203

A copy of Mr. Machado's Curriculum Vitae and report is attached as Exhibit D.

Billy Hall, PE
Chairman
NewFields Companies
Suite 2000
1349 West Peachtree Street
Atlanta, Ga. 30309

A copy of Mr. Hall's Curriculum Vitae and report is attached as Exhibit E.

***B. EXPERTS NOT SPECIFICALLY RETAINED PURSUANT TO RULE 26(a)(2)(C) AND RETAINED PURSUANT TO RULE 26(a)(2)(B)***[3]

*Defendants identify the following expert, pursuant to Rule 26(a)(2)(C) and 26(a)(2)(B), in each of the above-styled cases:*

*James Peeples, PE*
*Vice President, Senior Technical Environmental Engineer T&M Associates, Inc.*
*4675 Lakehurst Court, Suite 250*
*Columbus, Ohio 43016*

*Exhibit F contains a copy of Mr. Peeples' Curriculum Vitae and list of reports, including all opinions, analysis, sources and references contained therein, which have previously been submitted to the United States Environmental Protection Agency and/or the Mississippi Department of Environmental Quality and previously produced to all parties, upon which Mr. Peeples will rely and testify. The materials*

[3] Emphasis added.

*reflect the subject matter on which Mr. Peeples will testify. All of the opinions Mr. Peeples may testify to will be expressed to a reasonable degree of scientific, technical, and/or engineering certainty. Mr. Peeples' hourly rate for expert testimony is $300.*

**C. NON-RETAINED EXPERT WITNESSES**

Defendants designate and disclose the following non-retained experts, pursuant to Rule 26(a)(2)(C) in each of the above-styled cases:

> John Ellis, PG
> Associate Vice President, Principal Geologist
> Arcadis U.S., Inc.
> 10352 Plaza Americana Drive
> Baton Rouge, LA 70817
>
> The general nature of the subject matter upon which Mr. Ellis will testify concerns Arcadis' environmental assessment performed in the Eastern Heights Neighborhood and the report, including all opinions, analysis and data therein, attached as Exhibit G. The subject report upon which Mr. Ellis will rely and testify includes sampling and analysis for indoor air, ambient air, subslab air, soil and groundwater in the Eastern Heights Neighborhood. Mr. Ellis' hourly rate for expert testimony is $180.
>
> United States Environmental Protection Agency
> Region 4
> 61 Forsyth Street SW
> Atlanta, Georgia 30303
>
> The general nature of the subject matter upon which the Defendants will rely upon from the U.S. EPA concerns the environmental studies conducted in the Eastern Heights Neighborhood and the reports and other government records, including the opinions, analysis and data therein, attached as Exhibit H.

Doc. #465-1 at 2-7.

Exhibit F to the designation of Jim Peeples states:

*EXHIBIT*[4][5]

1. *Corrective Measures Pre-Design Investigation Results, Feb. 21, 2008 (MTOR-EPA0010647 –10835)*
2. *Annual Monitoring Report, Calendar Year 2011, Grenada Manufacturing, LLC (GRENADA 049780 –050389)*
3. *2012 Annual Monitoring Report, Grenada Manufacturing, LLC (GRENADA 007684 –f008906)*
4. *Annual Monitoring Report, Calendar Year 2013, Grenada Manufacturing, LLC (GRENADA 053281 – 054003)*
5. *Annual Monitoring Report, Calendar Year 2014, Grenada Manufacturing, LLC (GRENADA 054004 –055174)*
6. *Moose Lodge Road Area Additional Investigation Report, Comprehensive Study Area Groundwater Evaluation (MTOR-00-0000003 – 0002565)*
7. *April 29, 2016, Trudy Fisher, Butler Snow Letter to Mississippi Department of Environmental Quality (MTOR-02-0002593 – 0002603)*
8. *2016 Data Gap Work Summary (MTOR-02-0002579 – 0002592)*
9. *Annual Monitoring Report, Calendar Year 2015, Grenada Manufacturing, LLC (TM024825)(MTOR-02-0018705 - 0019376)*
10. *2016 Annual Monitoring Report, Grenada Manufacturing, LLC Facility (MTOR-020019377 – 0020392)*
11. *AOC A Investigation Report, Grenada Manufacturing, LLC Facility (MTOR-02-0005439 – 0005943)*
12. *Kirk and PCA Properties Investigation Report (MTOR-02-0009153 – 0010915)*
13. *Groundwater Monitoring Report, 2nd Quarter 2017, Moose Lodge Road Area (MTOR02-0016919 – 0017202)*

[4] The court notes that after the close of discovery and after the subject of the clawback documents was raised, counsel for Meritor emailed plaintiffs' counsel informing them that it was designating Peeples as a retained/reporting expert, only on certain portions of the 6,000 plus pages of material identified in Exhibit F. In that email, they also told plaintiffs' counsel that Peeples was designated only as a non-reporting/non- retained expert, on the balance. However, as Meritor is well aware, the time for its completed designation of experts has long since lapsed. And, as designated by Meritor, Peeples remains designated as a retained/reporting and non-retained/non-reporting on *all* of the matters in Exhibit F.

[5] Emphasis added.

14. *T&M Environmental Quality Information System (EQuIS) database (DATABASE)*

15. *Sodium Concentrations Data – Deep Zone, figure (MTOR-02-0016917)*

16. *Sodium Concentrations Data – Shallow Zone, figure (MTOR-02-0016918)*

17. *Potassium Concentrations Data – Deep Zone, figure (MTOR-02-0016914)*

18. *Potassium Concentrations Data – Shallow Zone, figure (MTOR-02-0016915)*

Doc. #465-1 at 7.

Though the documents listed on Exhibit F have not been provided to the court, according to Meritor's counsel, the (18) eighteen documents referenced thereon comprise over (6,000) six-thousand pages and an additional (46) forty-six megabytes of data.[6]

*The Trial Date and Some Corresponding Deadlines are Extended.*

On October 23, 2017, a joint status conference was held, over which both the district judge and the undersigned presided. At that time, the parties announced that they were ready for trial but requested *inter alia* an extension of the dispositive motion deadline until January 8, 2018 and the right to defer filing challenges to the sufficiency of expert designations until the dispositive motion deadline. Those requests were granted. Doc. #344.

On October 31, 2017, on agreed motion of the parties, the deadline for completing Fed. R. Civ. P. 30(b)(6) depositions of the defendants was extended to December 14, 2017, approximately two weeks after the close of discovery.

On November 20, 2017 the parties jointly moved to continue the trial date, and on December 6, 2017, the trial was conditionally continued until October 9, 2018.[7]

[6] Plaintiffs assert that the documents identified on Exhibit F are comprised of over (10,000) ten-thousand pages.

[7] It is the undersigned's understanding that the condition for the continuance—completion of mediation—has been satisfied.

On December 8, 2017 a telephonic status conference was held and new deadlines—in light of the continued trial date—were set. The new deadlines were set, in relevant part, as follows: briefing on what has come to be known as the "T&M production privilege log issues" was to be completed by February 22, 2018, and scheduling of the Fed. R. Civ. P. 30(b)(6) depositions was extended to the first week of April, 2018. Aside from these extensions, the discovery deadline of November 29, 2017 was not extended. The dispositive and Daubert motion deadline was extended to May 9, 2018.

On December 22, 2017, despite the passage of the discovery deadline, plaintiff moved for, and was granted, permission to take the deposition of defendants' designated testifying expert Jim Peeples, out of time. Peeples' deposition was completed shortly thereafter.[8]

*The Inadvertent Production*

In the interim, on January 2, 2018, plaintiff moved to compel Meritor to produce certain documents that were part of the ongoing T&M production. These documents had been inadvertently provided to Plaintiffs' counsel, and reviewed by them, prior to receipt of what is commonly referred to as a "clawback" letter pursuant to Fed. R. Evid. 502.[9] The documents subject to clawback are identified by Meritor in two privilege logs: Revised Exhibit A and Revised Exhibit B. Revised Exhibit A identifies (82) eighty-two document(s), (10) ten of which have been withdrawn from the privilege log.[10]

[8] As noted above, Peeples is a vice president of T&M and a designated testifying expert in this case. His deposition was delayed as a result of the delayed production of the T&M documents.

[9] After receipt of the clawback letter—the court is informed—plaintiffs sequestered the clawback documents.

[10] Document Number of Withdrawn Documents: 2, 9, 11-15, 18-20, and 26.

*Revised Exhibit A: The Peeples Notes*

With the exception of two of the remaining documents (Nos. 10 and 16),[11] Revised Exhibit A is comprised of notes made by the aforementioned Jim Peeples—T&M's vice president and Meritor's designated, retained, and non-retained, testifying expert.

The Peeples notes reflect, generally, discussions about various environmental conditions/remediation at the defendants' Grenada Mfg. site and the Eastern Heights neighborhood. The discussions are with, variously: Meritor's counsel as well as, in most cases, other representatives of T&M, ARCADIS[12], and/ or employees of Ramboll Environ.[13] As relates to at least one of Peeples' notes, the communication includes Lori LaPratt.[14]

*Revised Exhibit B: The Peeples' Samples*

Only four entries in Revised Exhibit B involve clawback documents sought by the instant motion to be produced. Those four documents concern samples taken by Peeples and other T&M employees at the direction of LaPratt, Meritor's asserted consulting expert.

*Fed. R. Civ. P. 26 Before and After the 2010 Amendments*

As the parties have acknowledged, prior to the 2010 amendments to Fed. R. Civ. P. 26, in the Fifth Circuit, all communications between a testifying expert and counsel were discoverable. Indeed, as the 2010 advisory committee note explains, it was due to the breadth of this disclosure

---

[11] As indicated *supra* fn1, Document entry 10 was found privileged. Document entry 16 was prepared by a T&M employee who works with Peeples, and it concerns the same sampling at issue with respect to the 4 documents that are the subject of clawback and are listed on Revised Exhibit B. For the reasons explained hereafter regarding those documents, Document number 16 was found not to be protected.

[12] Also an environmental firm whose vice president, John Ellis, is designated by defendants as a testifying non-retained expert on the matters addressed in what plaintiffs' counsel represents to be a one-thousand-plus-page environmental assessment of the Eastern Heights neighborhood (See, Doc. #465-1, p. 3)

[13] Another environmental firm whose employees, Robert Powell and Ranjit Machado, are two of defendants' designated retained, testifying experts.

[14] LaPratt is, similarly, an employee of Ramboll Environ, but she is asserted by defendants to be a consultant for purposes of the litigation only.

requirement that Fed. R. Civ. P. 26 was amended to afford protection to drafts of expert reports[15]—and as concerns certain experts, certain communications with counsel (Fed. R. Civ. P. 26(b)(4)(C)). Specifically, as amended, Fed. R. Civ. P. 26 provides that experts who are retained and from whom a Fed. R. Civ. P. 26(a)(2)(b) report is required ("retained/reporting experts") may assert work product privilege as to communications with counsel. This rule applies except to the extent the communications: 1) identify facts or data that the party's attorney provided and the expert considered in forming the opinions to be expressed, 2) which identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed, or 3) that relate to compensation for the expert's study or testimony. Fed. R. Civ. P. 26(b)(4)(C).

The comment to the Rule makes clear, however, that the new protections afforded to communications with counsel are limited to those between counsel and experts who are retained and required under the Rule to provide a report. The protections afforded these attorney communications do not apply to experts designated as non-retained/non-reporters under Fed. R. Civ. P. 26(a)(2)(C)—those communications are subject to the same disclosure requirements/protections, if any, that existed prior to the 2010 amendments. As noted, in the Fifth Circuit, there was no work product protection for communications between testifying experts, irrespective of whether they were retained/reporting or not. Such communications were, before the 2010 amendments and therefore remain, as to testifying experts other than retained/reporting experts, discoverable. TV-3, Inc. v. Royal Ins. Co. of Am., 194 F.R.D. 585, 588 (S.D. Miss. 2000) (correspondence between counsel and expert witnesses is discoverable given plain language of

[15] Though the privilege logs did not identify the document as subject to privilege, as a draft document pursuant to Fed. R. Civ. P. 26(b)(4)(B), at the hearing, Meritor argued that document entries 32-33—slightly more than a page of Peeples' notes—is protected from disclosure as a draft of his required Fed. R. Civ. P. 26(a)(2)(B) report. Whatever else might be said of that argument—including any argument that the failure to identify it on the claimed privilege log waives it—it is not colorable to suggest that a purported Fed. R. Civ. P. 26(a)(2)(B) report exceeding 6,000 pages in length and 46 megabytes is presented in draft form in slightly over one page of Peeples handwritten notes.

Fed. R. Civ. P. 26(a)(2) and its accompanying advisory committee note); Millsaps Coll. v. Lexington Ins. Co., No. 3:16CV193-CWR-LRA, 2017 WL 3158879, (S.D. Miss. July 24, 2017) (explaining that prior to the 2010 amendments, work product protection as set forth in Fed. R. Civ. P. 26(b)(3) was not applicable to communications between counsel and testifying experts); § 14:10. Protective orders and motions to compel, Copyright Litigation Handbook § 14:10, at fn.22 (2d ed.) (Prior to December 1, 2010, virtually all communications between counsel and a testifying expert were discoverable. Now, Fed. R. Civ. P. 26(b)(4)(C) protects communications between counsel and an expert required to give a written report under Rule 26(a)(2)(B) except [in limited circumstances]).

*The Motion to Compel*

In a nutshell, plaintiffs argue that, to the extent Peeples is designated by Meritor as a specifically retained/reporting expert, that designation is improper—though no motion to challenge the sufficiency of the designation has yet been brought. According to plaintiffs, Peeples is properly classified as a non-specially retained expert—and therefore non-reporting—under Fed. R. Civ. P. 26(a)(2)(C), and, as such, he is afforded no protections, under Fed. R. Civ. P. 26, for communications with counsel. In addition to the authorities noted by the court above, plaintiffs rely on the following additional authorities: United States v. Sierra Pac. Indus., No. CIV S-09-2445 KJM EF, 2011 WL 2119078, at *7 (E.D. Cal. May 26, 2011) (citing Report of the Civil Rules Advisory Committee (May 8, 2009, amended June 15, 2009), pp. 4–5); PacifiCorp v. Nw. Pipeline GP, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012). Doc. #467 at 4-5.

*Meritor's Opposition to the Motion*

Meritor's argument is simple: It designated Peeples as a specially retained Fed. R. Civ. P. 26(a)(2)(B) expert on the opinions, facts, and data contained in the (18) eighteen documents

identified on Exhibit F to the designation, and therefore, it is entitled to the protections afforded specifically retained/reporting experts under pursuant to Fed. R. Civ. P. 26(b)(4)(C).[16]

According to Meritor, it is immaterial that Peeples was simultaneously designated as a non-retained/non reporter on the very same opinions, facts and data.

*The Analysis*

As the court explained at the hearing on the instant motion to compel, held February 1, 2018, while it is accurate that Peeples was *purportedly* designated by Meritor as a specifically retained reporting expert on the opinions, facts and data contained in the (18) eighteen reports identified in Exhibit F to his designation, *he was simultaneously, purportedly, designated by Meritor as a non-specifically retained, non-reporting, expert on the opinions, facts and data reflected in the very same eighteen reports identified in Exhibit F to his designation*.

Meritor's position that Peeples' designation as a non-retained/non-reporting expert has no bearing on what he must disclose is unpersuasive and unsupported by any case law.

In the undersigned's view, if a party designates an expert as a non-retained/ non-reporting expert, he will be subject to the rules applicable to a non-reporter even if the expert is purportedly designated, at the same time, as a retained/reporting expert on the very same matters. As the court expressed at the above referenced hearing on this matter, Meritor is the architect of the

---

[16] Though Meritor's privilege logs, in some instances, assert both the protections afforded to specifically retained/reporting experts under Fed. R. Civ. P. 26 (b(4)(C), as well as pursuant to Miss. R. Evid. 502 (attorney-client privilege), Meritor's response to the motion to compel and its arguments at the hearing thereon have been devoid of any discussion of a privilege under Miss. R. Evid. 502. Instead, as concerns the Peeples notes, in its response and at the hearing, Meritor relies exclusively on the provisions which afford specially retained experts the protections from disclosure set forth in Fed. R. Civ. P. 26(b)(4)(B)(C)(and, with, with respect to a few documents, on the non-testifying consulting expert privilege set forth in Fed. R. Civ. P. 26(b)(4)(D)). Meritor's election to forego arguing satisfaction of the elements necessary to establish the attorney-client privilege is understandable. *See* § 33:28.Lawyer-client privilege, 4 MS Prac. Encyclopedia MS Law § 33:28 (2d ed.) ("While the privilege extends to legal staff and other representatives of the attorney, including 'experts that the lawyer has hired to assist in the preparation of the case,' the Advisory Committee Note warns that "[i]t does not extend to an expert employed to be a witness.")

circumstance it finds itself in. It chose to inexplicably—and utterly inconsistently—designate Peeples as both a non-retained and a retained expert on the very same, incredibly broad, swath of material. A disingenuous tact at best.

For example, were such manipulations of the rules permitted, Meritor could simply elect, at trial, to call Peeples only in his capacity as a non-reporting expert but have withheld from discovery, communications that any other witness testifying as a non-reporting expert would have had to disclose.

Further, Meritor's assertion that somehow the fact that neither counsel nor the court has been able to find a case where a party simultaneously purported to designate an expert as both retained and non-retained on the very same opinions, facts, and data, *supports* its opposition to the instant motion, is unconvincing. The absence of such a case, in fact, highlights the absurdity of Meritor's representation to the court, and counsel, that a person has been specifically retained to testify on certain matters, and at the same time, representing that he has not been so retained to report on those very same matters.

Moreover, pursuant to Fed. R. Civ. P. 26(a)(2)(B), persons specially retained to provide expert testimony in a case must provide a written report of the opinions, facts and data they are expected to testify to. In this regard, Meritor suggests the 18 documents identified on Exhibit F and comprising well over 6,000 pages of various reports/data constitute Peeples' Fed. R. Civ. P. 26(a)(2)(B) report in this case. This assertion is made despite the fact that the documents comprising Exhibit F span nearly a decade, and many, if not all, of them were prepared not by Peeples, and not in connection with the instant litigation, but years before it was even filed. Thus, while no motion has yet been brought challenging the sufficiency of the designation of Peeples as a retained/reporting expert under Fed. R. Civ. P. 26(a)(2)(B), the fallacy of the assertion that he

has been properly designated as such an expert is plain on its face and necessarily undermines Meritor's claim to protections afforded retained/reporting experts under that rule.

Of further note, in the instant case, not only has Peeples been designated as a non-reporting/non-retained expert, his designation is on an alarming number of opinions, facts, and data. As noted, they comprise over six-thousand pages and forty-six megabytes. Given the almost unconscionable volume of these opinions, facts, and data, even if Peeples were not a non-retained/non-reporting expert, but only designated as a specifically retained expert, a great deal of Peeples' notes contain facts or other data that were considered by Peeples—as evidenced by the fact he wrote them—and relate to matters upon which, according to the vast reaching designation, he will testify about. As a consequence they would be discoverable under Fed. R. Civ. P. 26(b)(4)(C).

For example, per the designation, the "PRB"—a form of permeable barrier—will be a subject of Peeples' testimony. So, facts or data referenced throughout the Peeples notes pertaining to the PRB would be discoverable, even if Peeples had not been designated as non-retained/non-reporting on this subject. Similarly, since Peeples is designated as a testifying expert on the subject of the "EQuIS database,"[17] facts and data considered by him concerning that database reflected in Peeples' notes would similarly be discoverable, even if Peeples had been designated only as a specifically retained expert on that topic. Again, defendants, alone, are the architects of this result.

Finally, though the issue was not raised by Meritor in its opposition to the instant motion, and was not asserted as a basis for privilege or protection on the relevant privilege log (Revised Exhibit A), at the hearing on the motion to compel, Meritor identified 16 document entries[18] that it contended were generated by Peeples, not as a testifying expert, but merely as a consultant for

[17] *See*, Doc. #465-1, at para. 14.
[18] Document Numbers: 37-38, 40-48, 50-52, 61, and74.

litigation purposes of doing work on vapor intrusion studies inside the Grenada manufacturing facility. This argument is specious. Far from being merely a consultant in this regard, Meritor, in its privilege log, repeatedly represents that Peeples is a retained reporting expert, entitled to the protections afforded such experts, under Fed. R. Civ. P. 26(b)(4)(C), on this subject.

Apparently, the representation that Peeples acted only as a consultant on the issue of vapor intrusion studies was one composed only at the motion hearing itself. Another ill- fated maneuver suggestive of a lack of candor. Furthermore, even if this were not the case, plaintiff convincingly argues that the exceptionally broad-reaching designation of Peeples includes opinions, facts, and data about the origin of toxins present at the Eastern Heights neighborhood—the same toxins being assessed and analyzed inside the subject facility by way of vapor intrusion studies. At best, for Meritor, there may be some ambiguity as to whether Peeples' designation relates to vapor intrusion testing at the facility, but under applicable law, that ambiguity is to be resolved in favor of disclosure. *See* Millsaps Coll. v. Lexington Ins. Co., No. 3:16CV193-CWR-LRA, 2017 WL 3158879, at *3 (S.D. Miss. July 24, 2017) (The inquiry into whether a privilege applies is highly fact-specific, and any ambiguities should be construed against its applicability. With regard to material sent to testifying experts, the term "considered" should be interpreted broadly to require "disclosure of all information a testifying expert 'generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected.") (citations omitted).

Lastly, as concerns Revised Exhibit B, the four documents, identified as subject to clawback, reflect information about groundwater samples that Peeples and his T&M team obtained from various monitoring wells at the subject site. According to Meritor, its non-testifying consultant, who is an employee of the firm Ramboll Environ—which also employs two of

Meritor's specifically retained experts—recommended testing of groundwater at the site to determine its components for the purpose, according to plaintiffs, of comparing the groundwater from varying areas. Such an analysis (also referred to as "fingerprinting") could bolster or undermine an argument that the contamination in one area came from another area. According to an affidavit of Peeples, recently filed, he, "[C]ollected a limited number of groundwater samples at the direction of and on behalf of Meritor's consulting expert and it is my understanding that the consulting expert likely would conduct additional testing and analysis on the samples. I have not been provided any data or analysis related to that subsequent testing. As a result, I have not considered, read, reviewed, or analyzed any of that data or analysis and I have not rendered any opinions in the above referenced reports pertaining to or even related to that data or analysis." Doc. #473-4.

According to Meritor, since Peeples' sampling was conducted to facilitate the consultants work, the fact that Peeples obtained the samples but not the results of the testing is protected under Fed. R. Civ. P. 26(b)(4)(D). Plaintiff, on the other hand, points out that Peeples, per his designation, will be opining, as a non-reporting expert, about origination of contamination in the Eastern Heights neighborhood. Thus, making the fact that he took samples relevant to that contamination, but chose not to learn the results, discoverable. The court agrees.

Peeples' sampling work was not done by a consultant and thus is not protected under Fed. R. Civ. P. 26(b)(4)(D). Also, because Peeples is a non-retained /non-reporter, he may not properly claim the protections of Fed. R. Civ. P. 26(b)(4)(C).

SO ORDERED, this, February 7, 2018.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE