IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**BRENDA J. COOPER, ET AL.**                                         **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., ET AL.**                                            **DEFENDANTS**

*Consolidated With*

**JOE E. SLEDGE, ET AL.**                                            **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 4:16-CV-53-DMB-JMV**

**MERITOR, INC., ET AL.**                                            **DEFENDANTS**

*AND*

**KATHERINE LONGSTREET COOKE, ET AL.**                               **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 4:16-CV-54-DMB-JMV**

**MERITOR, INC., ET AL.**                                            **DEFENDANTS**

*AND*

**SRA INVESTMENTS, LLC, ET AL.**                                     **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 4:16-CV-55-DMB-JMV**

**MERITOR, INC., ET AL.**                                            **DEFENDANTS**

*AND*

**FELICIA WILLIS, ET AL.**                                           **PLAINTIFFS**

**VS.**                               **CIVIL ACTION NO. 4:16-CV-56-DMB-JMV**

**MERITOR, INC., ET AL.**                                            **DEFENDANTS**

**ORDER**

This matter is before the court on the plaintiffs' Second Motion to Compel Meritor to produce certain T&M documents withheld on the basis of alleged privileges/protections.[1] Doc. #485. For the reasons discussed below, the motion is GRANTED in so far as concerns production of the subject materials and taken under consideration as relates to an award of fees and expenses.

I. *The Peeples Designation*

Because Meritor's designation of Jim Peeples, an employee of T&M,[2] on its extended deadline for doing so, August 18, 2017, lies at the heart of the instant dispute over the privileges and protections, if any, to be afforded the T&M documents at issue here, that designation is set forth here, in full:

**B. EXPERTS NOT SPECIFICALLY RETAINED PURSUANT TO RULE 26(a)(2)(C) AND RETAINED PURSUANT TO RULE 26(a)(2)(B)**

Defendants identify the following expert, pursuant to Rule 26(a)(2)(C) and 26(a)(2)(B), in each of the above-styled cases:

James Peeples, PE
Vice President, Senior Technical Environmental Engineer T&M Associates, Inc.
4675 Lakehurst Court, Suite 250
Columbus, Ohio 43016

Exhibit F contains a copy of Mr. Peeples' Curriculum Vitae and list of reports, including all opinions, analysis, sources and references contained therein, which have previously been submitted to the United States Environmental Protection Agency and/or the Mississippi Department of Environmental Quality and previously produced to all parties, upon which Mr. Peeples will rely and testify. The materials reflect the subject matter on which Mr. Peeples will testify. All of the opinions Mr. Peeples may testify to will be expressed to a reasonable degree of scientific, technical, and/or engineering certainty. Mr. Peeples' hourly rate for expert testimony is $300.

---

[1] As discussed infra., p. 3, the original motion to compel [doc.#466] concerned, generally, the same categories of documents and the same arguments of counsel. The court's order on the prior motion appears in case 4:16-cv-52-DMB-JMV at Doc. #484.
[2] T&M is one of Meritor's environmental contractors.

Exhibit F to the designation of Jim Peeples is as follows:

EXHIBIT F[3]

1. Corrective Measures Pre-Design Investigation Results, Feb. 21, 2008 (MTOR-EPA0010647 –10835)
2. Annual Monitoring Report, Calendar Year 2011, Grenada Manufacturing, LLC (GRENADA 049780 –050389)
3. 2012 Annual Monitoring Report, Grenada Manufacturing, LLC (GRENADA 007684 – f008906)
4. Annual Monitoring Report, Calendar Year 2013, Grenada Manufacturing, LLC (GRENADA 053281 – 054003)
5. Annual Monitoring Report, Calendar Year 2014, Grenada Manufacturing, LLC (GRENADA 054004 –055174)
6. Moose Lodge Road Area Additional Investigation Report, Comprehensive Study Area Groundwater Evaluation (MTOR-00-0000003 – 0002565)
7. April 29, 2016, Trudy Fisher, Butler Snow Letter to Mississippi Department of Environmental Quality (MTOR-02-0002593 – 0002603)
8. 2016 Data Gap Work Summary (MTOR-02-0002579 – 0002592)
9. Annual Monitoring Report, Calendar Year 2015, Grenada Manufacturing, LLC (TM024825)(MTOR-02-0018705 - 0019376)
10. 2016 Annual Monitoring Report, Grenada Manufacturing, LLC Facility (MTOR-020019377 – 0020392)
11. AOC A Investigation Report, Grenada Manufacturing, LLC Facility (MTOR-02-0005439 – 0005943)
12. Kirk and PCA Properties Investigation Report (MTOR-02-0009153 – 0010915)
13. Groundwater Monitoring Report, 2nd Quarter 2017, Moose Lodge Road Area (MTOR02-0016919 – 0017202)
14. T&M Environmental Quality Information System (EQuIS) database (DATABASE)
15. Sodium Concentrations Data – Deep Zone, figure (MTOR-02-0016917)
16. Sodium Concentrations Data – Shallow Zone, figure (MTOR-02-0016918)
17. Potassium Concentrations Data – Deep Zone, figure (MTOR-02-0016914)
18. Potassium Concentrations Data – Shallow Zone, figure (MTOR-02-0016915)

Doc. #465-1 at 7.

---

[3] The court notes that over 4 months after Peeples designation was due and made, and only after Plaintiff's first motion to compel T &M documents became an issue, Meritor emailed plaintiffs' counsel informing them that it was designating Peeples as a retained/reporting expert only on certain portions of the 6,000 plus pages of material identified in *Exhibit F*. In that email, they also told plaintiffs' counsel that Peeples was designated only as a non-reporting/non-retained expert, on the balance. However, as designated by Meritor, Peeples remains a purported retained/reporting and non-retained/non-reporting expert on *all* of the matters in *Exhibit F*.

## II. The T&M Documents at Issue Here

The parties appear to agree that the documents at issue here, despite their volume[4], all fall within one of just three categories—which correspond with the *Exhibits 1* through *3* to Meritor's opposition. Doc. #494.

Moreover, the parties' arguments concerning the protections, if any, that should or should not be afforded each of the three categories of documents are relatively simple, and, for the most part, the parties' arguments are a re-hash of those made previously in relation to the earlier motion [466] to compel the production of clawback T& M documents.

The three categories of documents at issue[5] and arguments for or against their compelled production are as follows:

**1) The Post-2014 Peeples Communications**

The first category of documents—those identified on (241) two-hundred and forty-one pages of privilege log labelled as *Exhibit 1* to Meritor's opposition—are post-2014, communications between Jim Peeples, and others, to include Meritor counsel.

According to Meritor, it designated Peeples on August 18, 2017, only as a specifically retained expert, as of January 2015, on the subject of "groundwater flow to the Eastern Heights neighborhood, as well as the source of the alleged ground water contamination in the neighborhood." Doc. #494 at 4. Per Meritor, Peeples' Rule 26 report, required of a specially

---

[4] *Exhibits 1* through *3* collectively comprise over three hundred pages of privilege log and include references to approximately (1,000) one-thousand documents.
[5] Plaintiffs originally appeared to argue that certain documents (those identified on *Exhibits C* and *D* to their 2nd motion to compel are matters considered-even if ultimately rejected- by Peeples in formulating his purported opinions to be offered a the trial of this matter, and as a consequence, are not protected, regardless of whether Peeples is deemed a reporter or non-reporter or both. Apparently, those documents are no longer in dispute except to the extent they appear on Exhibits 1-3 to Meritor's opposition.

4

retained expert, consisted only of five reports, identified in *Exhibit F* to his designation. The reports are labelled as follows:

- Moose Lodge Road Area Additional Investigation Report, (Ex. 11)
- Annual Monitoring Report, Calendar Year 2015, Grenada Manufacturing, LLC Facility (Ex. 14)
- 2016 Annual Monitoring Report, Grenada Manufacturing, LLC Facility (Ex. 15)
- AOC A Investigation Report, Grenada Manufacturing, LLC Facility (Ex. 16)
- Kirk and PCA Properties Investigation Report (Ex. 17)

Doc. #494 at 4.

Meritor argues that communications with Peeples as a specially retained expert, after January 2015, are afforded work product protection pursuant to Fed. R. Civ. P. 26(b)(4)(C) which, indeed, protects such communication except to the extent the communications concern facts or data considered, or assumptions relied upon, by a specially retained expert in forming his opinions. Fed. R. Civ. P. 26(b)(4)(C)(ii-iii). Meritor asserts that none of the documents identified on *Exhibit 1* contain any facts or data that Peeples considered in relation to the subject matter of this case or assumptions on which he based his opinions.

The plaintiffs argue that, contrary to Meritor's current assertions, Meritor designated, or purported to designate, Peeples as a *non*-reporting expert on all of the over six-thousand pages of documents–plus forty-six additional megabytes of information—identified in *Exhibit F* to the Peeples designation. Therefore, as a non-reporter, no work product protection is afforded his communications with counsel under Fed. R. Civ. P. 26(b)(4)(C).

Moreover, notwithstanding Peeples' designation as a non-reporter on all of the matters listed in *Exhibit F* to the designation, and even though plaintiffs have yet to file their formal challenge to Meritor's asserted designation of Peeples as a specially retained, reporting expert, plaintiffs have argued that, on its face, the purported designation of Peeples as a specially retained

5

expert fails for failure to provide the required report of such experts under Fed. R. Civ. P. 26(a)(2)(B). As such, Meritor is not entitled to the protections afforded by Fed. R. Civ. P. 26(b)(4)(C) to specially retained, reporting experts.

**2) Peeples' Communications/Work Concerning Vapor Intrusion at the Facility and Performance of the Permeable Remedial Barrier (PRB).**

*Exhibit 2* pertains to communications with Peeples about performing vapor intrusion studies in the Grenada facility and communications concerning the warranted performance of the permeable remedial barrier (PRB) at or near the subject site.

According to Meritor, neither vapor intrusion nor performance of the PRB is a matter on which Peeples was designated in this case to testify in any capacity. Instead, Meritor asserts that Peeples performed work or had communications about these matters as a consultant in connection with other litigation, and as such, these matters are protected under Fed. R. Civ. P. 26(b)(4)(D).

The plaintiffs, on the other hand, assert that both vapor intrusion and the PRB are issues about which Peeples is purportedly designated to serve as a testifying expert concerning.

**3) Peeples' CSIA Sampling Work.**

As it did in response to the original motion to compel production of T&M documents, Meritor asserts that this sampling work has nothing to do with the areas on which Peeples is designated to testify and was performed by Peeples as a mere consultant.

Plaintiffs assert that this issue was resolved by the court's prior opinion that addressed and ordered the production of the same or substantially similar CSIA documents.

### III.    *The Court's Ruling on the Motion to Compel*

1) <u>The Post-2014 Peeples Communications.</u>

Meritor premises the entirety of its argument about this category of documents on its assertion that it designated Peeples on August 18, 2017, as a specifically retained expert only, as

of January 2015, on certain limited matters concerning groundwater. However, this assertion misrepresents the designation.

Instead, as the court has previously held[6], the Meritor designation purports to designate Peeples as a *non*-reporter on all the matters listed on *Exhibit F* to the designation for all periods of time covered by the materials appearing on *Exhibit F*. As previously noted, these matters span over a decade and concern, in addition to ground water, air and soil contamination at the Grenada facility and surrounding areas.

Even further, while it is accurate that the designation purports to also designate Peeples as a specially retained reporting expert on all of the same subject matters, nothing even resembling a report required pursuant to Fed. R. Civ. P. 26(a)(2)(B) is provided.

Accordingly, as the court has previously ruled, Meritor is not entitled to the protection afforded specifically retained experts under Fed. R. Civ. P. 26(b)(4)(C).

2) The Vapor Intrusion and PRB Documents Identified in the Privilege Log, *Exhibit 2* to Meritor's Opposition.

Contrary to Meritor's representation that Peeples' designation in this case has nothing whatsoever to do with vapor intrusion studies at the Grenada facility or the performance of the PRB, a review of the matters covered in the documents listed in *Exhibit F* to Peeples' designation demonstrates otherwise. By way of illustration only, Peeples is purportedly designated to testify

---

[6] Doc. #484.

to the following concerning vapor intrusion at the subject facility:

> ### 1.3.10 Indoor Air
>
> A VOC plume originating in AOCs A and B, which are located at the upgradient area of the facility, travels with groundwater beneath the facility in route to the PRB. Given that impacted groundwater travels under the main plant building, indoor air (IA) sampling was conducted to verify VOCs from groundwater were not impacting indoor air quality at the facility.
>
> The results of the vapor intrusion assessment were presented in a letter to EPA dated February 26, 2002. The assessment identified ten VOCs that had potential to exceed the target concentrations at one groundwater monitoring location near the main plant building. The assessment concluded there were insufficient data to determine whether the vapor to IA pathway was complete and if IA quality had been impacted. In a letter dated June 14, 2002, EPA requested that an IA Monitoring Work Plan be prepared to collect data to further assess the vapor to IA pathway, and that an eleventh VOC, toluene, be added to the analyte list.
>
> An IA Monitoring Report (Brown and Caldwell, 2004c) was submitted to EPA in December 2004. This report summarized the air monitoring activities that occurred on February 17, 2003 and the results. In a letter dated May 17, 2004, EPA required that additional IA sampling be conducted to supplement the data from the February 17, 2003 sampling event. Additional IA sampling occurred on August 18, 2004, which was documented in the IA Monitoring Report. The data demonstrated the absence of a vapor intrusion (VI) issue at the facility.
>
> Nonetheless, EPA requested that additional winter and summer sampling rounds be performed five years later, in 2009. EPA stated that, if the results of the additional IA sampling events did not indicate vapor intrusion to the facility, no further sampling would be required in the plant building. The 2009 IA monitoring events also did not identify any IA concerns regarding the COCs present in groundwater beneath the facility. In fact, the groundwater concentration of COCs generally had declined over the six-year period of IA sampling (and are expected to continue to decline). (IA Monitoring Report, ICE Industries, Brown and Caldwell, 2010). In light of the six years of favorable data, EPA agreed that no further IA monitoring would be necessary at the plant, as long as the shallow groundwater COC concentrations monitored downgradient of the facility remained below the concentrations previously reported.
>
> This criterion was met, including in the most recent sampling event held in 2015 when the total chlorinated VOC (CVOC) concentration was 2.5 uM in MW-3[1]. Nonetheless, in March 2016 EPA requested that the facility permittee perform additional vapor intrusion sampling at the main plant building due to the Agency's application of a more stringent screening level to workers.

Doc. #494-15.

And on the matter of the PRB, Peeples is purportedly designated to testify, for example, as follows:

8

**Enhanced Reductive Dechlorination (ERD) Treatment Zone at the South End of the Permeable Reactive Barrier (PRB)**

- Shallow and deep zone monitoring wells were installed at the south end of the PRB to monitor the ERD zone installed to treat CVOCs that appear to be bypassing the PRB;
- Well locations are shown on Figure 2 and analytical results are provided in Table 4;
- The wells were sampled in June 2016 to obtain background conditions in this area prior to the implementation of ERD at the south end of the PRB, and to establish the edge of impacted groundwater in this area;
- The monitoring results indicated that the highest concentration of CVOCs were present near the southern end of the PRB with concentrations declining significantly with distance from the southern end of the PRB;

2

- Deep zone impact extends less than 135 feet from the southern end of the PRB;
- Shallow zone impact extends less than 90 feet from the southern end of the PRB;
- The placement of emulsified vegetable oil (EVO) upgradient of this line of monitoring wells at the southern end of the PRB was guided by these background monitoring results, such that treatment zones could be established upgradient of all areas with impacted groundwater above MCLs for TCE, cDCE, and/or VC;

...

> **Status of PRB Pilot Test Area at Panel 9**
> - Three new monitoring wells, A-9ND, A-9DS and B-9D, were installed and sampled in the pilot test area located at Panel 9 in June 2016;
> - The wells associated with the PRB Panel 9 pilot test are shown on Figure 3 and the analytical results for this test, to date, are provided in Table 3.
> - The sampling results are used to establish background groundwater conditions prior to the start of the Panel 9 PRB Pilot Test;
> - Groundwater CVOC concentrations upgradient of the PRB at A-9U generally are consistent with concentrations observed in the monitoring program for the north PRB transect;
> - Groundwater CVOC concentrations downgradient of the PRB indicate almost complete removal of TCE by the PRB and significant reductions in the total CVOC concentrations downgradient of the PRB in comparison to the upgradient;
> - Total organic carbon content of the groundwater is low in all monitoring wells;
> - Bromide is below detection limits for all monitoring wells, indicating that it will be an effective tracer compound for the pilot study;
> - EVO wells were installed downgradient of Panel 9 in June 2016;
> - The wells were amended with EVO in June and July of 2016;
> - The EVO wells received the KB-1 bioaugmentation culture in July 2016, after demonstrating sufficiently low ORP (<-80 mV) in groundwater from each well;
> - Pilot test set-up occurred in this area in July and August 2016;
> - The pilot test start-up was delayed due to the slow review of the permit to use denatured alcohol as a treatment for the PRB wells by the U.S. Bureau of Alcohol, Tobacco, and Firearms;
>
> 3

Doc. #494-14 at 3-4.

In light of Meritor's purported designation of Peeples on the subject matter of the PRB and vapor intrusion, Meritor's claim of consulting only expert privilege to these documents is not well taken, and they should be produced.

3) <u>The Samples Taken By Peeples For CSIA Testing:</u>

The documents identified in *Exhibit 3* to Meritor's opposition are Peeples' notes and communications reflecting work he did to obtain groundwater samples for isotope analysis (AKA CSIA testing and/or "chemical fingerprinting"). These samples came from, in most, if not all cases, the very same wells he retrieved groundwater samples from, and seeks to opine on the

contaminants of, in the instant case, as well as the origin of those contaminants. As was explained in the court's prior order, and as set forth in the Comment to Fed. R. Civ. R. 26:

> Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule. Similarly, inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule. *Counsel are also free to question expert witnesses about alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed.*

Fed. R. Civ. P. 26 (emphasis added). In short, the fact that Peeples made the decision to collect ground water samples for CSIA testing but not to inform himself of the outcome of that testing is, itself, a fact on which the opinions he is designated to testify about are premised.

Accordingly, the CSIA sampling information obtained by Peeples is properly subject to disclosure.

### IV. The Time for Production

The documents addressed herein shall be produced on or before noon, Monday, March 12, 2018.

### V. The Court's Ruling on an Award of Fees and Expenses

This matter is under advisement and will be ruled on in due course.

**SO ORDERED** this, March 8, 2018.

/s/Jane M. Virden
UNITED STATES MAGISTRATE JUDGE