# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**BRENDA J. COOPER, ET AL.**                                              **PLAINTIFFS**

**VS.**                                           **CIVIL ACTION NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., ET AL.**                                                 **DEFENDANTS**

*Consolidated With*

**JOE E. SLEDGE, ET AL.**                                                 **PLAINTIFFS**

**VS.**                                           **CIVIL ACTION NO. 4:16-CV-53-DMB-JMV**

**MERITOR, INC., ET AL.**                                                 **DEFENDANTS**

*AND*

**KATHERINE LONGSTREET COOKE, ET AL.**                                    **PLAINTIFFS**

**VS.**                                           **CIVIL ACTION NO. 4:16-CV-54-DMB-JMV**

**MERITOR, INC., ET AL.**                                                 **DEFENDANTS**

*AND*

**SRA INVESTMENTS, LLC, ET AL.**                                          **PLAINTIFFS**

**VS.**                                           **CIVIL ACTION NO. 4:16-CV-55-DMB-JMV**

**MERITOR, INC., ET AL.**                                                 **DEFENDANTS**

*AND*

**FELICIA WILLIS, ET AL.**                                                **PLAINTIFFS**

**VS.**                                           **CIVIL ACTION NO. 4:16-CV-56-DMB-JMV**

**MERITOR, INC., ET AL.**                                                 **DEFENDANTS**

**ORDER**

This matter is before the Court on the motion [509] of Plaintiffs to strike Meritor Inc.'s, Rockwell Automation Inc.'s and the Boeing Company's (collectively "Meritor") expert designation of James "Jim" Peeples. For the reasons discussed below, the motion, with limited exception, is DENIED.

I.   *The Parties' Positions:*

In support of their motion to strike Peeples, Plaintiffs argue that he is a non-specially retained/ non-reporting expert as to all matters addressed in his designation. A party must disclose, in accordance with the deadline for doing so, the subject matter on which a non-reporting expert is expected to testify and must provide a summary of the opinions and facts to which the witness will testify. FED.R.CIV.P. 26(a)(2)(C). According to Plaintiffs, Defendants' designation of Peeples does not comply with this disclosure requirement and should be stricken as unjustified and prejudicial.

Alternatively, Plaintiffs argue that even if, as Defendants contend, they designated Peeples as a non-reporting expert on only certain matters identified in his designation and as a specially retained/reporting expert on the other matters identified therein, the designation is still insufficient because it also fails to satisfy the requirements for a report of a specially retained reporting expert pursuant to FED.R.CIV.P. 26(a)(2)(B).

For its part, Defendants, as noted, argue that Peeples is a non-reporting expert on only the first five reports referenced in Exhibit F of his designation, and they contend that those reports sufficiently summarize the subject matter, opinions, and facts on which he is expected to testify. As for the balance of the documents referenced in the designation (appearing as Nos. 6-18 on Exhibit F), Defendants assert that Peeples is a specially retained expert, and the documents referenced in that capacity satisfy, FED.R.CIV.P. 26(a)(2)(B)'s requirement that such an expert

provide a report prepared and signed by him containing among other information, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them . . ." FED.R.CIV.P. 26(a)(2)(B)(i)(ii).

II. *The Peeples Designation*

On August 18, 2017, its deadline for doing so, Defendants made the following designation of Jim Peeples:

> **B. EXPERTS NOT SPECIFICALLY RETAINED PURSUANT TO RULE 26(a)(2)(C) AND RETAINED PURSUANT TO RULE 26(a)(2)(B)**
>
> Defendants identify the following expert, pursuant to Rule 26(a)(2)(C) and 26(a)(2)(B), in each of the above-styled cases:
>
> James Peeples, PE
> Vice President, Senior Technical Environmental Engineer T&M Associates, Inc.
> 4675 Lakehurst Court, Suite 250
> Columbus, Ohio 43016
>
> Exhibit F contains a copy of Mr. Peeples' Curriculum Vitae and list of reports, including all opinions, analysis, sources and references contained therein, which have previously been submitted to the United States Environmental Protection Agency and/or the Mississippi Department of Environmental Quality and previously produced to all parties, upon which Mr. Peeples will rely and testify. The materials reflect the subject matter on which Mr. Peeples will testify. All of the opinions Mr. Peeples may testify to will be expressed to a reasonable degree of scientific, technical, and/or engineering certainty. Mr. Peeples' hourly rate for expert testimony is $300.
>
> Exhibit F to the designation of Jim Peeples is as follows:
>
> EXHIBIT F
>
> 1. Corrective Measures Pre-Design Investigation Results, Feb. 21, 2008 (MTOR-EPA0010647 –10835)
> 2. Annual Monitoring Report, Calendar Year 2011, Grenada Manufacturing, LLC (GRENADA 049780 –050389)
> 3. 2012 Annual Monitoring Report, Grenada Manufacturing, LLC (GRENADA 007684 – f008906)
> 4. Annual Monitoring Report, Calendar Year 2013, Grenada Manufacturing, LLC (GRENADA 053281 – 054003)
> 5. Annual Monitoring Report, Calendar Year 2014, Grenada Manufacturing, LLC (GRENADA 054004 –055174)

6. Moose Lodge Road Area Additional Investigation Report, Comprehensive Study Area Groundwater Evaluation (MTOR-00-0000003 – 0002565)
7. April 29, 2016, Trudy Fisher, Butler Snow Letter to Mississippi Department of Environmental Quality (MTOR-02-0002593 – 0002603)
8. 2016 Data Gap Work Summary (MTOR-02-0002579 – 0002592)
9. Annual Monitoring Report, Calendar Year 2015, Grenada Manufacturing, LLC (TM024825)(MTOR-02-0018705 - 0019376)
10. 2016 Annual Monitoring Report, Grenada Manufacturing, LLC Facility (MTOR-020019377 – 0020392)
11. AOC A Investigation Report, Grenada Manufacturing, LLC Facility (MTOR-02-0005439 – 0005943)
12. Kirk and PCA Properties Investigation Report (MTOR-02-0009153 – 0010915)
13. Groundwater Monitoring Report, 2nd Quarter 2017, Moose Lodge Road Area (MTOR02-0016919 – 0017202)
14. T&M Environmental Quality Information System (EQuIS) database (DATABASE)
15. Sodium Concentrations Data – Deep Zone, figure (MTOR-02-0016917)
16. Sodium Concentrations Data – Shallow Zone, figure (MTOR-02-0016918)
17. Potassium Concentrations Data – Deep Zone, figure (MTOR-02-0016914)
18. Potassium Concentrations Data – Shallow Zone, figure (MTOR-02-0016915)

Doc. #465-1 at 7.

III. The "Clarifying" Email

Over four months after Defendants' designation, above, and after the expiration of the applicable discovery deadline, counsel for Meritor, in response to Plaintiffs' inquiries, undertook, via email, to "clarify" that it had not intended to designate Peeples as a non-retained/non-reporting expert and specifically retained/reporting expert on all of the matters listed on Exhibit. They, instead, intended to offer Peeples as a non-reporter only as to documents 1 through 5, and as a specially retained expert on documents 6 - 18.[1]

According to Meritor's "clarification email":

Mr. Peeples is a 26(a)(2)(C) witness as to the opinions contained in

---

[1] It would appear that Meritor's insistence that Peeples is specially retained, at least after 2015, arises from the fact that specially retained experts are afforded certain privileges of non-disclosure not available to non-specially retained/ non-reporting experts. This disclosure issue has already been before the undersigned and the Court's ruling is currently on appeal to the district judge.

documents 1-5 identified in Exhibit F to Meritor's disclosure. The
summary of his opinions to be offered regarding document 1 is
provided logically in the section entitled "Executive Summary."
The summary of his opinion to be offered regarding documents 2-4
is already included in the identified document in the one page
"Summary of Findings" found in each short document. Please
note that these documents also provide data and facts upon which
opinions identified below may be based.

Mr. Peeples is a 26(a)(2)(B) witness as to the opinions contained in
documents 6-18 identified in Exhibit F of Meritor's disclosure as
explained below. Each specifically identified report contains the
opinions that Mr. Peeples will testify to, as well as the basis for the
opinions and the facts and data upon which the opinions are based.
While some of the reports are extensive, the majority of the docu-
ments are data tables and appendices of raw data. There are far
fewer pages that contain the text of his reports. Also identified as
Document 14 in Exhibit F is the EQuIS database, which provides
the underlying data and support for all of the reports and which
was produced to Plaintiffs in August.

Doc. # 473-2 at Page ID 5531-32.

IV.  *Peeples's Expert Role(s)*

As indicated, the parties are in agreement that Peeples is a non-reporting expert as to the matters addressed in documents 1-5 on Exhibit F, but they are in disagreement about whether Peeples is specially retained as to matters 6-18 on Exhibit F.[2] Defendants' argument that Peeples is specially retained on these matters is twofold. First, Defendants assert that in January 2015, they began anticipating litigation related to the Eastern Heights neighborhood. Because of that anticipation, Defendants represent that they employed, from that point forward, Peeples as a specifically retained expert, and any reports appearing on Exhibit F thereafter are FED.R.CIV.P. 26(a)(2)(B) reports. Secondly, Defendants assert that as a specially retained expert, Peeples:

---

[2] It appears that Defendants' insistence that Peeples be treated as a specially retained expert springs from the fact that work product protection is afforded such experts' communications with counsel pursuant to FED.R.CIV.P. 26(b)(4)(C), but not to non-retained reporting experts. *See* Comment to the 2010 Amendments to Rule 26 of the *Federal Rules of Civil Procedure*.

> Consulted with Defendants' counsel, was made aware of, received and considered facts and data additional to the materials growing out of his and others' involvement in remediation- and litigation-oriented events, and arrived at expert conclusions reflected in five specified reports: document Nos. 6, 9, 10, 11 and 12, as identified in Exhibit F to Meritor's expert disclosures. *See* att. Ex. 4; *see also* Affidavit of James Peeples ("Peeples Aff.") ¶ 3(a) - (e), Doc. # 473-4 (Ex. 4 to Meritor's Opp. to Pls.' Mot. to Compel) (identifying reports generated as a "testifying expert"). See also, Chart, ¶ 13, below.

Doc. 521 at ¶10.

Addressing these arguments in turn, the Court notes that in January 2015, when Peeples was allegedly specially retained by Defendants, Peeples was already—and had been for many years—performing environmental assessment and remedial services for Meritor at the Grenada facility in response to EPA/MDEQ requirements. He continued to do so after January 2015 in the same fashion. Indeed, to the extent there are reports listed in Numbers 6 through 18 on Exhibit F, above, they are the same or substantially the same type of reports as those he provided on behalf of Meritor prior to January 1, 2015 (listed as numbers 1 through 5 on Exhibit F).

Moreover, merely designating a person as a specially retained expert once the prospect of litigation is anticipated does not make that designation proper, and tellingly, Defendants cite no authority for this position. In fact, this position stands in stark contrast to Defendants' previous representation to this Court in its response in opposition to Plaintiffs' motion to strike John Ellis as an expert [#518]. There, Defendants insisted that Ellis was a *non*-specially retained/ *non*-reporting expert even though he was engaged by Defendants after January 2015 to perform a vapor intrusion assessment at the Eastern Heights neighborhood adjacent to the Grenada facility in response to EPA/MDEQ requirements.

Furthermore, it is the means by which a person who is expected to testify has gained the knowledge and reached the opinions to be expressed that governs the determination of whether the person is to be considered a specially retained reporting expert or a non-reporting expert. *Tolan v.*

*Cotton*, No. CIV.A. H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept.14, 2015). ("A retained expert witness is an expert who, without prior knowledge of the facts giving rise to litigation, is recruited to provide expert opinion testimony.")(citation omitted). Further, a witness is "specially employed" under Rule 26(a)(2)(B) when "he has no personal involvement in facts giving rise to the litigation, but is engaged to provide opinion testimony, regardless of whether he is compensated or simply volunteers." *Id.* A non-specially retained expert's testimony, on the other hand, "arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation." *DiSalvatore v. Foretravel, Inc.*, No. 9:14-CV-00150-KFG, 2016 WL 7742996, at *2 (E.D. Tex. May 20, 2016).

In the instant case, to the extent Peeples actually prepared any of the reports listed on Exhibit F, all, both before and after January 1, 2015, were prepared for Meritor in connection with remediation work mandated by the EPA/MDEQ, irrespective of the prospect of any lawsuit. In short, Peeples's knowledge about the site was gained from years of working at or near the site on behalf of Meritor in order to satisfy EPA/MDEQ requirements. To suggest that Peeples's opinions are not based on his own personal involvement in on going work at the site both before and after January 2015 is simply not colorable.

Defendants' second rationale to support Peeples's designation as a specially retained reporting expert, is even more baffling. According to Defendants, they disclosed to Peeples, and he considered in formulating his opinions to be offered as a specially retained expert, "facts and data additional to the materials growing out of his and others' involvement in remediation- and litigation-oriented events," but this assertion does nothing to advance Peeples as a specially retained expert. Doc. #521 at ¶10.

7

Moreover, even if Peeples were specially retained as to the reports listed as 6 through 18 on Exhibit F, the assertion that Peeples considered facts and data aside from his and others remediation work at the site, and that information was not disclosed in the so-called Rule 26(a)(2)(B) reports(s)—as Defendants' argument suggests—that alone could serve as grounds for striking the reports. Further, far from being a report(s) prepared by Peeples to set forth the opinions and facts and data he considered in formulating the same, as is required of a specially retained expert report, the subject reports, in many instances, contain lengthy discussions of facts and opinions which Meritor, in various other pleadings, have adamantly represented to the Court have nothing whatsoever to do with the opinions Peeples is offered to testify on in the instant case. By way of example only, many of the reports, 6-18 on Exhibit F, address the vapor intrusion assessments *inside* the Grenada facility and performance of the permeable remedial barrier (PRB) near the site. These are topics which, again, Meritor has represented repeatedly have nothing to do with Peeples's testimony in the instant case. *See*, Meritor's opposition to motion to compel T&M document production at [#494].

In the face of those representations, it is disingenuous, at best, for Defendants to represent to the Court that these reports were prepared to disclose Peeples's opinions—and facts and data considered in connection therewith—as is required of a specially retained expert report under Rule 26(a)(2)(B).

In short, it is the opinion of the undersigned that Peeples is not a specially retained expert, and even if he were, the reports lists on Exhibit F 6-18, are not Rule 26(a)(2)(B) reports.

V.   *Is the Designation of Peeples as a Non-Reporter Sufficient to Withstand the Motion to Strike?*

No Rule 26(a)(2)(B) expert report is required of a non-specially retained/non-reporting expert. However, a party must disclose the subject matter on which that expert is expected to testify and provide a summary of the opinions to be offered and facts in support thereof.

In the opinion of the undersigned, a listing of over 18 documents (1-18 on Exhibit F) comprising in excess of 10,000 pages and 46 MB of additional data is hardly a statement of the subject matter on which the expert is expected to testify and a summary of the opinions and facts offered in support thereof. In fact, as noted, most of the reports listed in the designation cover matters which Meritor, in other pleadings, has represented have nothing to do with Peeples's anticipated testimony in this case.

Nevertheless, as the undersigned has previously discussed, *see* Order on motion to strike Ellis [#525], insufficiency of a designation alone does not mandate striking the expert where the insufficiency is either justified or essentially harmless. For the reasons described below, but only to the extent described herein, the insufficient designation of Peeples as a non-retained expert on the materials reflected on Exhibit F, though unjustified, is not so harmful as to warrant striking Peeples.

A. *The Corrective Measures Pre-Design Investigation Report*

The corrective measures report contains a two-page executive summary, a detailed table of contents, and a summary of recommendations based on the work detailed in the report. The narrative portion of the report is approximately fifty pages. In the undersigned's view, while this report offers more detail than is required pursuant to FED.R.CIV.P. 26(a)(2)(C), it is not so much more information as to deprive Plaintiffs of fair notice of the general subject matter on which Peeples will testify concerning the work discussed in the report, or, in general, the opinions he will

offer at trial on those matters, including the data supporting the same. Accordingly and to that extent, the report is not sufficiently prejudicial to warrant striking it.

### B. *Annual Monitoring Reports For 2011, 2012, 2013, 2014, 2015, and 2016*

The annual monitoring reports each follow the same format and build, from year to year, on one another. Importantly, each contains a summary of the work being reported on and a summary of the results. Additionally, each contains a detailed listing of the report's contents and does not exceed approximately thirty pages of narrative. As is the case with the corrective measures report, certainly more detail is specified in the reports than is required for Rule 26(a)(2)(C) disclosure but the Court finds there is sufficient summarization of the information to ameliorate any prejudice resulting from Defendants' failure to strictly comply with Rule 26(a)(2)(C).

### C. *Moose Lodge Road Area Additional Investigation Report*

This report, though the narrative is sixty pages in length, also contains a detailed contents listing and importantly, a four-page discussion of the report's summary and conclusions. The report is not so prejudicial as to warrant striking it.

### D. *The Letter From Trudi Fisher Of Butler Snow*

In its opposition, Defendants describe this document instead as, "plume maps supporting MLRA additional investigation report." Doc. [#521] at 10872. However, as is obvious from review of the document itself, it is a three-page letter from outside counsel for Meritor, Trudi Fisher, to MDEQ asserting various of Meritor's positions and attaching the aforementioned plume maps. Given the brevity of the letter the undersigned finds that its inclusion in the designation is not so prejudicial as to warrant striking it.

*E. 2016 Data Work Summary*

This four and a half page narrative report to EPA/MDEQ, with approximately ten pages of data tables, adequately informs Plaintiffs of Peeples' opinions and the bases therefor on the subject matter thereof.

*F. AOC Investigative Report*

This relatively short narrative report (fourteen pages in length) to the EPA discloses the objectives of the work reported therein, the methods used and the results. Plaintiffs have not demonstrated prejudice or surprise sufficient to warrant prohibiting Peeples from testifying on any opinions identified or summarized therein.

*G. The Kirk and PCA Property Investigative Report and The Groundwater Monitoring Report Moose Lodge Rd. 2d Qtr. 2017*

These reports are substantially similar in format and length (twenty-five and fourteen pages, respectively) to many of the other reports discussed above, and to the extent opinions are set forth therein, Plaintiffs have not demonstrated sufficient prejudice to warrant prohibiting Peeples from testifying about them.

*H. The EQuIS Database*

This tremendous database (apparently comprising over 46 MB of data) is the definition of "document dump." Because Defendants have never undertaken to identify or summarize what information in this largess of data Peeples is offered to testify on, the designation is stricken as concerns the database. The prejudice to Plaintiffs if Peeples were permitted to "spring on" Plaintiffs at trial what his testimony about this database would be is self-evident.

*I. Data About Sodium Concentrations (15-18 On Exhibit F)*

Finally, because these documents (four pages in all) contain no narrative information, unless and until the documents can be demonstrated to have been referenced in one of the narrative

reports discussed above in such a fashion that whatever opinion Peeples purports to testify on concerning them can be discerned, the designation is insufficient and permitting it will deprive Plaintiffs of a fair opportunity to address Peeples's surprise opinion(s) about the documents at trial. Accordingly, the designation is stricken with respect to the subject matter of said reports.

 SO ORDERED, this Monday, April 2, 2018.

          /s/ Jane M. Virden<br>
          UNITED STATES MAGISTRATE JUDGE