IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**BRENDA J. COOPER, et al.**                                                                   **PLAINTIFFS**

**V.**                                                                            **NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., et al.**                                                                    **DEFENDANTS**

## ORDER

This case is before the Court on the defendants' motion to sever. Doc. #414.

### I
### Relevant Procedural History

On March 16, 2016, Brenda Cooper, Sylvia Caffey, Margaret Odems, Bernice Richardson, Dora Ward, Rosie Brady, Pearl Seldon, Betty Phillips, Alice Crumley, and Sylvia Cunningham filed a complaint in this Court against Rockwell International Corporation and Randall Division of Textron, Inc. Doc. #1. Approximately four months later, the plaintiffs filed an amended complaint against Meritor, Inc., Rockwell Automation Inc., The Boeing Company, and Textron, Inc. Doc. #43.

In the amended complaint, the plaintiffs, residents or former residents of Grenada County, Mississippi, seek to recover for injuries to their homes and property caused by a manufacturing plant located in Grenada, Mississippi. The plaintiffs allege that they "are residents or former residents of a neighborhood adjacent" to the manufacturing plant, specifically, the "Eastern Heights" neighborhood, and that the plant was operated by: (1) Rockwell International Corporation, the predecessor to Rockwell Automation, Inc., which itself is a predecessor to The Boeing Company, from 1965 until 1985; and (2) Randall Wheel Trim, a subsidiary of Textron, Inc., from 1985 until the present. Doc. #43 at 1–6, 9. The plaintiffs further allege that the plant, which was used to manufacture chrome-plated wheel covers, utilized numerous chemicals,

including hexavalent chromium, and trichloroethylene ("TCE"), and that these chemicals were illegally dumped into the environment, with the defendants concealing such disposal. The plaintiffs assert six claims arising from the allegedly wrongful acts: (1) Fraud and Fraudulent Concealment (Count I); (2) Civil Conspiracy (Count II); (3) Negligence (Count III); (4) Nuisance (Count IV); (5) Trespass (Count V); and (6) Intentional and/or Negligent Infliction of Emotional Distress (Count VI). Subsequently, the parties stipulated to the dismissal of Count I and Count II. Doc. #174.

On November 15, 2017, the defendants moved to sever the ten plaintiffs into nine separate actions, with the claims of Phillips and Crumley (asserted as joint representatives of Hildred Johnson) remaining together. Doc. #414. The plaintiffs responded in opposition to the motion on November 29, 2017, and the defendants replied on December 6, 2017. Doc. #435; Doc. #450. On April 5, 2018, the defendants moved to supplement their motion. Doc. #528. The plaintiffs did not respond to the motion to supplement within the time allowed.

## II
## Motion to Supplement

In their motion to supplement, the defendants assert that, due to delays by the plaintiffs, they only recently deposed Phillips and that the deposition:

> revealed (1) unique claims and corresponding defenses regarding ownership of the residence at issue (and discrete issues with … Plaintiff Alice Crumley, Ms. Phillips' sister), (2) a potential personal injury claim by Ms. Phillips, and (3) the failure to join necessary parties to resolve Ms. Phillips' case, resulting in potential incomplete relief.

Doc. #528 at 1–2. The defendants claim supplemental briefing is warranted to show how "[t]hese individualized issues raised by just one of the Plaintiffs' claims illustrate precisely why severance is appropriate." *Id*. at 2. In essence, the defendants seek leave to argue that all plaintiffs should be severed because Phillips should be severed. Because the law of severance, as set forth below,

2

does not support such an argument, the motion to supplement will be denied. The defendants may, however, raise their arguments related to Phillips' joinder in a separate motion to sever. Such motion must be filed within fourteen days of this order.

### III
### Analysis

Pursuant to Rule 20 of the Federal Rules of Civil Procedure:

Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R Civ. P. 20(a)(1). Notwithstanding this provision, Rule 21 grants a district court broad discretion to "sever *any* claim against a party." Fed. R. Civ. P. 21 (emphasis added); *see Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994) ("The trial court has broad discretion to sever issues to be tried before it.") (citing Rule 21).

The authority to sever extends to claims properly joined under Rule 20. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).[1] Accordingly, a court resolving a motion to sever must answer two questions: (1) whether joinder was proper under Rule 20; and (2) whether severance is warranted under Rule 21. *Id.*

---

[1] *See also Alexander v. Edgewood Mgmt. Corp.*, 321 F.R.D. 460, 465 (D.D.C. 2017) ("Regardless of the matter's satisfaction of Rule 20(a)'s requirements, the Court still could order severance upon a sufficient showing of prejudice to the defendant, delay, or potential for jury confusion."); *Rhodes v. Target Corp.*, 313 F.R.D. 656, 659 (M.D. Fla. 2016) ("[T]he Court finds that, even if Plaintiffs satisfy the technical requirements for permissive joinder, severance of their claims is warranted because keeping the claims together does not foster the purposes of joinder."); *E. Cornell Malone Corp. v. Sisters of the Holy Family, St. Mary's Acad. of the Holy Family*, 922 F.Supp.2d 550, 561 (E.D. La. 2013) ("[C]ourts may sever claims even where the requirements of Rule 20(a) … have been satisfied."); *Next Phase Distrib., Inc. v. John Does 1–27*, 284 F.R.D. 165, 168 (S.D.N.Y. 2012) ("Even if the requirements of permissive joinder are met, courts maintain the discretion to sever defendants ….").

## A. Joinder under Rule 20

The Fifth Circuit has observed:

> Courts have described Rule 20 as creating a two-prong test, allowing joinder of plaintiffs when (1) their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and when (2) there is at least one common question of law or fact linking all claims. Generally, as long as both prongs of the test are met, permissive joinder of plaintiffs is at the option of the plaintiffs.

*Id.* (citations, internal quotation marks, and alteration omitted).

### 1. Same transaction or occurrence

While the Fifth Circuit appears to have not expressly addressed Rule 20's transaction or occurrence standard, it applies a "logical relationship" test to Rule 13(a)'s requirement that a compulsory counterclaim "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Montgomery Elevator Co. v. Bldg. Eng'g Servs. Co., Inc.*, 730 F.2d 377, 380 (5th Cir. 1984). Consistent with this approach, "[t]he district courts in the Fifth Circuit have used the 'logical relationship' analysis in determining whether the factual situation constitutes a transaction, occurrence, or serious of transactions or occurrences for purposes of Rule 20." *Coll v. Abaco Operating LLC*, No. 2:08-cv-345, 2009 WL 2857821, at *2 (E.D. Tex. Sept. 1, 2009) (collecting cases). Insofar as "[t]he logical-relationship test employed under Rule 13(a) seems consistent with the philosophy underlying the passage in Rule 20 that allows joinder of parties whenever the claims arise out of 'the same series of transactions or occurrences,'" *Hodges v. Coldwell Banker Real Estate Corp.*, No. 4:05-cv-168, 2007 WL 1200118, at *2 (N.D. Miss. Apr. 19, 2007), this Court will follow the lead of the other courts in this Circuit and apply the logical relationship test here.

"The logical relation test is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Nat'l Liab. & Fire Ins. Co. v. R & R Marine,*

*Inc.*, 756 F.3d 825, 835 (5th Cir. 2014). "While using the 'logical relationship' concept, [the Fifth] Circuit gives weight to whether the claim[s at issue] share an 'aggregate of operative facts.'" *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir. 1998). Operative facts are "those relating directly to the … claims" in an action. *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F.Supp.2d 184, 190 (D.D.C. 2013); *see Wyandot Nation of Kan. v. United States*, 115 Fed. Cl. 595, 598 (2014) ("[F]acts are operative if they are relevant to establishing a claim.").

In seeking severance, the defendants rely on *Hamilton v. Burlington Northern Santa Fe Railway Co.*,[2] an unpublished case with similar facts from the Western District of Texas; and a line of cases from district courts rejecting consolidation of civil actions brought against insurers in the wake of Hurricane Katrina. Doc. #415 at 16–18. In opposing severance, the plaintiffs do not rely on specific authority but argue generally, "the Plaintiffs and the claims they advance are both logically and legally related. They all arise out of, flow from and relate back to the activities of the Defendants, which Plaintiffs allege resulted in the contamination of their properties by constituents of concern used at the Grenada Facility." Doc. #435 at 5.

As an initial matter, this Court finds the Katrina line of cases inapplicable to the facts at issue here. Each Katrina case relied on by the defendants involved insurance claims against defendant insurers. The various courts held that the hurricane itself could not qualify as a common occurrence under Rule 20 because "the storm was vastly different in its effect depending on the specific geographic location of each particular home." *Vaz v. Allstate Prop. & Cas. Co.*, No. 1:06-cv-481, 2006 WL 2583733, at *1 (S.D. Miss. Sep. 6, 2006). In essence, the courts concluded that while the hurricane was a common fact, the actions did not arise from the same occurrence because the results of the storm differed from plaintiff to plaintiff. These conclusions are of little value in

---

[2] No. 08-ca-132, 2008 WL 8148619 (W.D. Tex. Aug. 8, 2008).

5

deciding the instant motion to sever because the plaintiffs here do not seek to join their actions by pointing to a single occurrence (such as a hurricane). Rather, the plaintiffs base their claims on the defendants' continued operation of the Grenada plant over numerous years.[3]

The plaintiffs' arguments for joinder in this action are like those considered by the district court in *Fisher v. Ciba Specialty Chems. Corp.*, 245 F.R.D. 539 (S.D. Ala. 2007). In *Fisher*, five individual property owners sued the past and current owners of a chemical manufacturing facility located near the subject properties. *Id*. at 540. The *Fisher* defendants moved to sever on various grounds, including the contention that the claims did not arise from the same transaction or occurrence. *Id*. at 542. The district court rejected the defendants' argument, finding the transaction or occurrence requirement was satisfied by the aggregate of at least five operative facts: (1) the creation of the alleged pollutant; (2) the migration of the alleged pollutant; (3) the characteristics and impacts of the pollutants; (4) the impact of the pollutants on property values; (5) the defendants' statements to the public; (6) alleged manipulation of the government on the part of the defendants; and (7) an alleged conspiracy involving the defendants to avoid cleaning up the contamination. *Id*. at 542 & n.4.

Here, as in *Fisher*, the Court finds the plaintiffs' claims share an aggregate of operative facts. These facts include: (1) the creation of the alleged pollutant, including any acts of alleged negligence on the part of the defendants; (2) the migration of the alleged pollutant; (3) the characteristics and impacts of the pollutants; and (4) the impact of the pollutants on property values. While, as the defendants point out, there will be differences in the plaintiffs' proof (such as the levels of contamination, the specific migration paths, and the ultimate impact on the plaintiffs' properties), the defendants point to no authority, and this Court is aware of none, which

---

[3] *See* Doc. #43 at ¶¶ 1–4.

stands for the proposition that these differences preclude joinder under Rule 20. Indeed, unlike the requirements for class action certification under Rule 23, Rule 20 includes "no predomination [of facts and law] prerequisite for joinder …." *Fisher*, 245 F.R.D. at 542. Accordingly, the Court concludes that the claims are logically related and, therefore, arise from the same transaction, occurrence, or series of transactions.[4] *See Ford v. Murphy Oil U.S.A., Inc.*, 750 F.Supp. 766, 773 (E.D. La. 1990) ("Chemcat's motion to sever the claims asserted against it must fail. Plaintiffs' claims against the four corporate defendants involve common questions of fact or law and all arise out of the same series of occurrences—the emissions.").

### 2. Common questions

"Rule 20's second prong … does not require that every question of law or fact arising in the action be shared among the parties. Rather, the rule permits party joinder whenever there will be at least one common question of law or fact." *Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d 1315, 1323 (S.D. Miss. 2003) (emphasis, quotation marks, and alterations omitted) (quoting 7 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1653 (3d ed. 2002.)).

The Court concludes that the operative facts described above also satisfy Rule 20's second prong. Accordingly, joinder under Rule 20 was proper.

### B. Severance under Rule 21

As explained above, Rule 21 provides district courts with discretion to sever claims. A district court may exercise this discretion if an action "is misjoined or might otherwise cause delay or prejudice." *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995). In applying

---

[4] In reaching this conclusion, the Court rejects as unpersuasive the *Hamilton* decision relied on by the defendants. In *Hamilton*, the district court granted a motion to sever claims brought by property owners against past and current owners of a wood treatment plant. 2008 WL 8148619, at *1. However, in granting the motion, the court did not reference or rely on Rule 20 standards. Rather, the court appeared to rely on an order from a previous case which dealt with pleading standards.

7

this discretion, district courts in the Fifth Circuit "have settled on a standard which accords with that used in other circuits." *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014). Under such standard, courts consider five factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Id*.

### 1. Factor 1 (same transaction or occurrence) and Factor 2 (common questions of law or fact)

This Court has already concluded that the claims arise from the same transaction or occurrence and that they present numerous common questions of law and fact. Accordingly, the Court concludes that the first two factors, which incorporate Rule 20's proper joinder inquiry, weigh against severance.

### 2. Factor 3 (settlement or judicial economy facilitated)

The plaintiffs argue the motion to sever "should be denied because nine separate trials would be inefficient, would monopolize this Court's schedule, and would pose the risk of inconsistent results." Doc. #435 at 3. In this regard, the plaintiffs estimate that severance "would result in at least seven hundred and two (702) separate testimonial events before this Court (as opposed to approximately 80 [if severance was denied])." *Id*. The defendants respond that these estimates, which rely on potential rather than likely witnesses, are greatly exaggerated and that "efficiency is not the paramount value in applying Civil Rules 20 and 21; a fair trial is." Doc. #450 at 4–5.

The defendants are correct that a court may sever claims to avoid prejudice even when doing so would be inefficient. *Applewhite*, 67 F.3d at 574. However, this fact does not preclude

consideration of efficiency in deciding whether to sever. Furthermore, while it may be likely that the plaintiffs overestimate the *degree* of inefficiency of separate trials, there can be no serious dispute that, given the overlapping issues discussed above, a single trial would be more efficient than nine separate trials. Accordingly, the third factor weighs against severance.

### 3. Factor 4 (prejudice avoided)

The defendants argue continued joinder would prejudice their right to a fair trial due to: (1) differences in the strength of the plaintiffs' cases with regard to claims of vapor intrusion and purported trespass; (2) differences in the size, age, location, and condition of the various properties; (3) the individualized determinations necessary for damages arising from interference with the use and enjoyment of properties; and (4) the applicability of the statute of limitations to some claims. Essentially, the defendants argue they will suffer prejudice because the plaintiffs' cases are of varying strength and involve plaintiff-specific issues.

In *Fisher*, the district court addressed nearly identical arguments, ultimately concluding:

> Defendants also maintain that a joint trial would be 'extremely prejudicial' to them. This objection is apparently threefold, to-wit: (a) a multiplicity of plaintiff-specific facts will confuse the jury; (b) to the extent that one plaintiff's claims are stronger than the others', evidence as to that plaintiff may unfairly taint the jury as to the other plaintiffs' claims; and (c) consolidation for trial will allow plaintiffs to 'bolster their individually weak cases by a suggestion that contamination is widespread.' None of these considerations are persuasive. As an initial matter, the risk of jury confusion in determining which facts attach to which plaintiffs appears minimal. Federal juries are routinely asked to parse facts that are relevant to particular claims or particular parties, and are able to do so without difficulty so long as counsel presents the evidence in a cogent, orderly fashion that makes clear which evidence attaches to which particular claims or defenses. Furthermore, defendants' 'taint' argument disregards the ready availability of limiting instructions (should counsel draft and propose same) designed specifically to circumscribe the uses for which particular evidence may be considered, as well as pattern charges stressing that the claims and defenses of each party must be considered separately and independently from those of each other party. There is no reason to believe that a jury would be unwilling or unable to follow such instructions in this case; therefore, defendants' protestations of prejudice are misplaced.

*Fisher*, 245 F.R.D. at 543–44 (alterations, record citations, and footnotes omitted).

This Court agrees that a proper presentation of evidence, paired with proper instructions, will eliminate any prejudice that may arise from any differences in the relevant claims. Accordingly, the Court concludes that this factor weighs against severance.

### 4. Factor 5 (different witnesses and documentary proof)

Neither party appears to have directly addressed the final factor. However, it appears to this Court that the claims would involve significant overlap in witnesses and documentary proof. Accordingly, the Court concludes that the final factor weighs against severance.

### 5. Balancing

In sum, all relevant factors weigh against severance. Accordingly, the defendants' motion to sever will be denied.

## IV
## Conclusion

For the reasons above, the defendants' motion to sever [414] and motion to supplement [528] are **DENIED**.

**SO ORDERED**, this 24th day of April, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**