# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

| | |
|---|---|
| BRENDA J. COOPER, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>MERITOR, INC.,<br>ROCKWELL AUTOMATION, INC.,<br>THE BOEING COMPANY, and<br>TEXTRON, INC.,<br><br>*Defendants.*[†] | Judge Debra M. Brown<br>Magistrate Judge Jane M. Virden<br><br>Lead Case No. 4:16-cv-52<br><br>Consolidated with:<br>   *Sledge v. Meritor, Inc.*, No. 4:16-cv-53<br>   *Cooke v. Meritor, Inc.*, No. 4:16-cv-54<br>   *SRA Invests., LLC v. Meritor, Inc.*, No. 4:16-cv-55<br>   *Willis v. Meritor, Inc.*, No. 4:16-cv-56 |

## TEXTRON'S STATEMENT OF UNDISPUTED MATERIAL FACTS
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### I.     Rockwell's Ownership and Operation of the Facility

1. The Grenada Stamping and Assembly Facility (the "Facility") is bordered to the north by the Eastern Heights residential neighborhood, to the east and south by vacant land, and to the west by Riverdale Creek and agricultural land. Ex. 1 (1997 VSI Report at I-1).

2. Rockwell International ("Rockwell") owned and operated the Facility from 1965 through July 1, 1985. *Id.*; Ex. 2 (D. O'Connor Dep. Tr. at 26:7-27:1; 28:6-8).

3. Rockwell used trichloroethylene ("TCE") and toluene in the Facility operations. Ex. 1 (VSI Report at II-12-13); Ex. 2 (D. O'Connor Dep. Tr. 56:12-56:12-57:7).

4. Buffing compound waste was generated from the buffing machines used to polish the wheel covers (hub caps) manufactured by the Facility. Ex. 1 (VSI Report at II-12).

---

[†]       In accordance with the Court's October 25, 2017 Order, ECF No. 351, Textron's Motion for Summary Judgment and this accompanying Statement of Undisputed Material Facts apply to the claims brought by the Plaintiffs in the *Cooper* case, No. 4:16-cv-52.

5. Meritor's Fed. R. Civ. P. 30(b)(6) witness, David O'Connor, testified that Rockwell used TCE in manufacturing operations from 1965 to 1985. Ex. 2 (D. O'Connor Dep. Tr. 56:12-56:12-57:7).

## II.    On-Site Waste Disposal and Moose Lodge Road Disposal Area

6. The Mississippi Department of Environmental Quality ("MDEQ") submitted a fact sheet describing the Moose Lodge Road Disposal Site as follows: "The Moose Lodge Road Disposal Site was first brought to the attention of MDEQ in 1993. According to company records, the Facility used the site to dispose of a buffing compound containing chlorinated solvents used to polish the wheel covers produced in the stamping operation in the 1960s." Ex. 3 (Jan. 2016 MDEQ Fact Sheet: Moose Lodge Road Disposal Site and Moose Lodge Road Area at 1).

7. O'Connor testified that after Rockwell took over the plant in 1965, "it was stockpiling its waste on what we call the onsite landfill" through 1966. Ex. 2 (D. O'Connor Dep. Tr. 168:1-21).

8. O'Connor testified that after 1966, "the plant staged the same materials at the buff compound disposal area off Moose Lodge Road at one specific location." *Id.* 168:1-21.

9. O'Connor testified that Rockwell disposed of "still bottoms, paint wastes" and "buff compound" "first at the on-site landfill, next for a short period of time in the buff compound disposal area, and then finally at the 16th Section landfill." *Id.* 92:24-94:2.

10. T&M Associates submitted a Moose Lodge Road Area Investigation Report to the MDEQ, which stated: "The BCDA [Buffing Compound Disposal Area] reportedly was used by the the facility for disposal of an unknown quantity of buffing compound between 1966 and 1967." Ex. 4 (MTOR-00-0000003 at 11).

11. Textron did not dispose of waste along Moose Lodge Road, and all disposal of waste in the Moose Lodge Road Area happened before Textron acquired the plant. Ex. 5 (G. Simpson Dep. Tr. at 119:23-120:8); Ex. 6 (All Plaintiffs' Responses to RFA Nos. 8-10).

12. Plaintiffs "have no evidence of Textron employees hauling away paint sludge from the Grenada Manufacturing [F]acility at any time from 1985 to 1999." Ex. 6 (All Plaintiffs' Responses to RFA No. 8).

13. Plaintiffs "have no evidence of Textron employees hauling away materials from the Grenada Manufacturing Facility's TCE recovery stills at any time from 1985 to 1999." *Id.* at RFA No. 9.

14. Plaintiffs "have no evidence of Textron employees hauling away buffing compound waste from the Grenada Manufacturing Facility at any time from 1985 to 1999." *Id.* at RFA No. 10.

### III. Rockwell's Storage of TCE and Toluene

15. In the late 1970s, thousands of gallons of TCE leaked into the ground from storage and/or piping at the Facility. *See e.g.*, Ex. 7 (ICE-019002); Ex. 8 (S. Martin 2017 Dep. Tr. 65:11-22); Ex. 5 (G. Simpson Dep. Tr. 98:20-99:6).

16. Rockwell stored toluene in a 2,000-gallon underground storage tank located near the southeast corner of the main manufacturing building. Ex. 9 (T&M Annual Monitoring Report for 2014 at 1-6).

17. Phil Backlund, the then-Director of Facilities Administration for Rockwell, testified that the the original underground toluene tank was removed "because apparently it sprung a leak." Ex. 10 (P. Backlund (Redacted) Dep. Tr. 669:4-25).

18. The original toluene underground storage tank leaked into the ground during Rockwell's ownership and was replaced in 1982. *See* Ex. 11 (M. Williams (Redacted) Dep. Tr. 101-02); Ex. 12 (S. Martin 1995 Dep Tr. 179); Ex. 13 (G. Boyd Dep. Tr. 54).

### IV. Textron's Ownership and Operation of the Facility

19. Randall Wheel Trim, Inc. (a Textron subsidiary) acquired the Facility from Rockwell on July 1, 1985. Ex. 14 (1985 Purchase & Sale Agreement).

20. At the time Randall took over operations at the plant, it used a licensed disposal vendor to dispose of all hazardous waste. Ex. 5 (G. Simpson Dep. Tr. 33:12-17; 70:14-19; 72:6-25); Ex. 6 (All Plaintiffs' Responses to RFA Nos. 11-12).

21. At the time Randall took over operations of the plant, it did not know about the leak from a TCE storage tank or any piping associated with that tank. Ex. 5 (G. Simpson Dep. Tr. 99:7-12); Ex. 14 (Schedule IX to 1985 Purchase and Sale Agreement).

22. At the time Randall took over operations of the plant, it did not know about the leak from a toluene tank or associated piping. Ex. 5 (G. Simpson Dep. Tr. 99:13-18); Ex. 14 (Schedule IX to 1985 Purchase and Sale Agreement).

23. Plaintiffs have admitted that "the Facility ceased purchasing TCE in substantial quantities for use as a solvent in the paint department in or about 1992." Ex. 6 (All Plaintiffs' Responses to RFA No. 13).

24. Plaintiffs have admitted "that from 1985 to 1999 the Grenada Manufacturing Facility used a third-party waste disposal company to dispose of buffing compound waste from the facility." *Id.* at RFA No. 12.

25. In a March 7, 1990 letter to Textron's Sayles Martin, the EPA wrote: "Please congratulate your staff for making significant strides in improving the Randall-Textron self-monitoring program. The current program was well organized and efficiently carried out by your environmental staff." Ex. 15 (3/7/1990 EPA Letter (ICE-018984)).

26. No regulatory agency has ordered or directed Textron to conduct remediation or corrective action in the Eastern Heights neighborhood. Ex. 5 (G. Simpson Dep. Tr. 134:17-21).

## V.    Remedial Investigations and Orders

27. EPA inspectors took notes of their January 31, 1989 inspection of the Facility in a Site Inspection Report, which stated: "Dumping of wastes took place from 1961-1967 . . . disposal areas could be best described as open dumps or piles of waste" and "[a]djacent to the second disposal area, are +50 drums scattered through the wooded, swampy area.  Some of the drums are full of partially dried sludge, some partially empty. Ex. 16 (TEX_MDEQ_005943 at 51-52).

28. In their Report of the 1989 Facility investigation, the EPA found that contamination in the soil and groundwater at the Facility "is a direct result of the improper disposal practices and lack of containment structures used by Rockwell during the time period 1961-1967."  *Id.* (TEX_MDEQ_005943 at Section 5.0).

29. The Eckenfelder Report identified the on-site landfill, toluene storage area, and TCE storage area as the "most significant sources of constituents of interest."  Ex. 17 (1994 Remedial Investigation Report at ES-12).

## VI.    Areas of Contaminant Plumes

30. The T&M Associates Moose Lodge Road Additional Investigation Report prepared for the MDEQ described the "Facility CVOC [Chlorinated Volatile Organic Compound] Plume" as follows: "The largest source of CVOC mass for these plumes is AOC [Area of Concern] A, where a known release of TCE occurred . . . ."  Ex. 18 (T&M MLRA Report at 4-1).

31. The T&M Associates Moose Lodge Road Additional Investigation Report identified a plume beneath the Eastern Heights neighborhood as follows: "the neighborhood plume includes some CVOCs in the shallow and deep portions of the Upper Aquifer."  *Id.* at 4-3.

32. The T&M Associates Moose Lodge Road Additional Investigation Report described evidence supporting the "firm conclusion that CVOC [Chlorinated Volatile Organic Compound] transport in groundwater from the facility to the neighborhood has not occurred and will not occur in the absence of major changes to the Study Area flow system."  *Id.* at 4-5.

33. The T&M Associates Moose Lodge Road Additional Investigation Report described the Shaley Clay Aquitard ("SCA") as follows:  "The SCA beneath the Upper Aquifer acts as a low-permeability barrier separating the Upper and Lower Aquifers in the Study Area . . . . the SCA is considered to be consistently present throughout the area."  *Id.* at 3-14.

34. Plaintiffs' proffered groundwater experts (James Brinkman, David Jenkins, and Scott Simonton) stated in their expert report that "under present conditions groundwater flow is not expected to cross from" the Facility to the Eastern Heights neighborhood.  Ex. 19 (Groundwater Report at 7).

35. Brinkman testified that groundwater underneath the Facility "flows first to the northwest, and it flows to Riverdale Creek." Ex. 20 (J. Brinkman Dep. Tr. 210:17-20).

36. Brinkman testified that he did not evaluate the permeability of the soils beneath the equalization lagoon before it was remediated. *Id.* at 212:10-12.

37. Brinkman testified that he was not sure of any modeling that has been performed that simulates the flow of groundwater from the Facility north into the Eastern Heights neighborhood. *Id.* at 213:8-13.

38. Brinkman testified there was no detection of TCE, DCE, or vinyl chloride in the drinking water from the City of Grenada wells. *Id.* at 218:5-12.

39. Simonton, testified that he was not aware of any table that supports the statement in his report that says groundwater flow direction has varied over time and at times has flowed from the facility toward the neighborhood, and he relied on a table that concerned groundwater flow from the MLRA. Ex. 21 (S. Simonton Dep. Tr. 249:4-250:1-6).

40. Simonton testified that he was not aware of of any Eastern Heights property owner that is using groundwater from the upper aquifer. *Id.* at 212:6-8.

41. Jenkins testified that he has not seen any data that would suggest that the groundwater flow direction is from the Facility north into the Eastern Heights neighborhood. Ex. 22 (D. Jenkins Dep. Tr. 72:10-14).

42. Jenkins testified that there is modeling that he could have performed to evaluate whether groundwater has moved from the facility north into the Eastern Heights neighborhood. *Id.* at 72:25-73:5.

43. Jenkins testified that he did not perform any modeling to determine whether before the equalization lagoon was remediated, groundwater could have flowed from the Facility north into the Eastern Heights neighborhood. *Id.* at 72:15-24.

44. Jenkins testified that he did not try to collect any additional data to input into a model to predict what the historical groundwater flow patterns were in the Eastern Heights neighborhood. *Id.* at 76:20-25.

45. Jenkins testified that he was not asked to perform modeling to determine whether the groundwater ever flowed north from the Facility toward the Eastern Heights neighborhood, before the equalization lagoon was remediated. *Id.* at 78-9-14.

46. Jenkins testified that he did not attempt to determine whether there was any contamination in the lower aquifer. *Id.* at 137:23-138:5.

47. Jenkins testified that he is not aware of any data collected by the City of Grenada or any other government entity suggesting that there is contamination from the Facility in the regional aquifer. *Id.* at 140:7-11.

## VII.  Testing of Plaintiffs' Properties

48. BTEX refers to the chemicals benzene, toluene, ethyl benzene, and xylene, which naturally occur in crude oil and petroleum products such as gasoline.  *See e.g.*, Ex. 21 (S. Simonton Dep. Tr. 83:1-5).

49. Brady.  Plaintiffs' experts tested the groundwater and sub-slab soil gas of Plaintiff Brady's property at 153 Tallahoma Drive.  The groundwater test detected TCE, but had no detections for BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23)[‡]; Ex. 24 (GCAL Report # 216071312 at 7, 27-29).  The sub-slab soil gas test detected TCE and one or more BTEX constituents.  Plaintiffs' experts did not test the soil gas, indoor air, or outdoor air at 153 Tallahoma Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).[§]

50. Caffey.  Plaintiffs' experts tested the groundwater and soil gas of Plaintiff Caffey's property at 137 Tallahoma Drive.  The groundwater test showed non-detects for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 26 (GCAL Report # 216071409 at 15).  The soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE.  Plaintiffs' experts did not test the sub-slab soil gas, indoor air, or outdoor air at 137 Tallahoma Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

51. Crumley and Phillips.  Plaintiffs' experts tested the groundwater, soil gas, and background air of Plaintiffs Crumley and Phillips' property at 176 Lyon Drive.  The groundwater test showed a non-detect for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 27 (GCAL Report # 216071505 at 6).  The soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE.  Plaintiffs' experts did not test the sub-slab soil gas or indoor air at 176 Lyon Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

52. Cunningham.  Plaintiffs' experts tested the sub-slab soil gas and background air of Plaintiff Cunningham's property at 155 Tallahoma Drive.  The groundwater test detected TCE, but showed a non-detect for BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 28 (GCAL Report # 216071408 at 6, 10-12).  The sub-slab soil gas test showed non-detects for TCE and BTEX.  Plaintiffs' experts did not test the soil gas or indoor air at 155 Tallahoma Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

53. Cooper.  Plaintiffs' experts tested the soil gas of Plaintiff Cooper's property at 117 Tallahoma Drive.  The groundwater test showed non-detects for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 27 (GCAL Report # 216071505 at 12-14).  The soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE.  Plaintiffs'

---

[‡]      The plaintiffs in the *Cooper* action correspond with lot numbers 34 (Crumley/Phillips); 40 (Seldon); 79 (Cunningham); 93 (Caffey); 94 (Odems); 98 (Richardson); 100 (Ward); 101 (Brady); and 107 (Cooper) in this chart. The chart mistakenly lists the address for lot 79 as 98 Lyon Drive, but it should be 155 Tallahoma Dr.

[§]      One can match the house IDs included in Fineis's tables to their corresponding property address using his Table 1.  As with the prior chart for groundwater, the plaintiffs in the *Cooper* action correspond with house IDs 34 (Crumley/Phillips); 40 (Seldon); 79 (Cunningham); 93 (Caffey); 94 (Odems); 98 (Richardson); 100 (Ward); 101 (Brady); and 107 (Cooper).

experts did not test the sub-slab soil gas, indoor air, or background air at 117 Tallahoma Drive for TCE or BTEX. Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

54. <u>Odomes.</u>  Plaintiffs' experts tested the groundwater and soil gas of Plaintiff Odomes' property at 139 Tallahoma Drive.  The groundwater test showed non-detects for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 24 (GCAL Report # 216071312 at 21-23).  The soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE.  Plaintiffs' experts did not test the sub-slab soil gas, indoor air, or background air at 139 Tallahoma Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

55. <u>Richardson.</u>  Plaintiffs' experts tested the soil gas of Plaintiff Richardson's property at 147 Tallahoma Drive.  The groundwater test showed non-detects for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 26 (GCAL Report # 216071409 at 11-12).  The soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE. Plaintiffs' experts did not test the sub-slab soil gas, indoor air, or background air for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

56. <u>Seldon.</u>  Plaintiffs' experts tested the groundwater and soil gas of Plaintiff Seldon's property at 164 Lyon Drive.  The groundwater test showed non-detects for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 27 (GCAL Report # 216071505 at 24-26).  The soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE. Plaintiffs' experts did not test the sub-slab soil gas, indoor air, or background air at 164 Lyon Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

57. <u>Ward.</u>  Plaintiffs' experts tested the sub-slab soil gas, indoor air, and background air of Plaintiff Ward's property at 151 Tallahoma Drive.  The groundwater test showed non-detects for TCE and BTEX.  *See* Ex. 23 (Plaintiffs' Review of the Data at 23); Ex. 24 (GCAL Report # 216071312 at 6, 25-27).  The sub-slab soil gas test detected one or more BTEX constituents, but showed a non-detect for TCE.  The indoor air test detected one or more BTEX constituents, but showed a non-detect for TCE.  The background air test detected one or more BTEX constituents, but showed a non-detect for TCE.  Plaintiffs' experts did not test the soil gas at 151 Tallahoma Drive for TCE or BTEX.  Ex. 25 (Fineis Rpt. App'x IV, Tables 2, 4, 6, 8).

## VIII.  Vapor Intrusion

58. In April 2016, the EPA released a Fact Sheet to the public regarding "EPA Sampling Activities in April and May 2016" which stated: "Based on results received to date, EPA has determined there is no immediate threat to public health." Ex. 29 (Apr. 2016 EPA Fact Sheet #4).

59. In August 2016, September 2016, and April 2017, the EPA released to the public three fact sheets titled "Sampling Results in Eastern Heights," which state that "[b]ased on results received to date, EPA has determined that there is no immediate threat to public health in the Eastern Heights neighborhood due to TCE." Ex. 30-32 (Aug. 2016 - Apr. 2017 EPA Fact Sheets ##5-6, 9).

60. In March 2017, the EPA reported the following results of its vapor intrusion testing conducted in November/December 2016 in the Eastern Heights neighborhood:

> In November/December 2016, EPA conducted a second round of vapor intrusion testing in [17 homes in the south and southeast area of the neighborhood]. TCE was detected in the indoor air of one resident at a level below the screening level. TCE was also detected in sub-slab air in two homes at levels far below the screening level. Consistent with previous results, EPA did not find that chemicals present in the groundwater were entering homes via vapor intrusion.

Ex. 33 (Mar. 2017 EPA Sampling Results at 2, https://www.epa.gov/grenadacleanup/sampling-results-eastern-heights-grenada-ms).

61. The EPA reported in its April 2017 Fact Sheet that "Consistent with previous results, EPA did not find that chemicals present in the groundwater were entering homes via vapor intrusion. An 8 to 12-foot silty clay layer underlies the neighborhood and appears to be preventing TCE vapors from coming up into the homes." Ex. 32 (Apr. 2017 EPA Fact Sheet #9 at 1).

62. Fineis testified that he was not able to form an opinion to a reasonable degree of scientific certainty that there is a completed pathway from background air to indoor air for each of the Plaintiffs homes. Ex. 34 (Fineis Dep. Tr. 143:16-20).

63. Fineis testified that if a chemical is found in the soil gas but not found in the sub-slab and not found in the house, then there is not a completed pathway for that chemical. *Id.* at 128:6-21.

64. Fineis testified that if a chemical is not found in the soil gas, is not found in the sub-slab, and is not in the ambient air, but it may be inside the house, there is not a completed pathway from the sub-slab. *Id.* at 128:6-21.

65. Fineis testified that he could not render an opinion to a reasonable degree of scientific or engineering certainty, of a completed pathway from the sub-slab to the indoor air for any home in the Eastern Heights neighborhood. *Id.* at 201:23-202:4.

66. Fineis testified that he could not testify that the vapor intrusion pathway from groundwater is complete for Plaintiffs' homes. *Id.* at 203:9-13.

67. Fineis testified that he could not testify that there is a completed vapor intrusion pathway from Plaintiffs' sub-slab gas. *Id.* at 203:20-204:6.

68. Fineis testified that he could not render an opinion that the pathway was complete from the soil gas to the sub-slab of Plaintiffs' homes. *Id.* at 184:14-25.

69. Fineis testified that he has done no source identification and could not testify that the Grenada manufacturing facility is the source of any subsurface contaminants or ambient air contamination that he detected during testing. *Id.* at 202:20-203:2.

IX.     **Plaintiffs' Use of Groundwater and Use of Their Properties**

70. Plaintiffs do not use the groundwater from beneath the Eastern Heights Neighborhood for water for drinking. Ex. 6 (All Plaintiffs' Responses to RFA No. 14).

71. The City of Grenada supplies the homes in the Eastern Heights Neighborhood with what is commonly referred to as "tap water," which Plaintiffs' may use, if they so desire, for drinking, bathing, or washing clothing. *Id.* at RFA No. 15.

72. Plaintiff Odomes testified that everybody in the Eastern Heights neighborhood is on City water and nobody has well water. Ex. 35 (M. Odomes Dep. Tr. 134:10-13).

73. Plaintiff Phillips testified that she had no plans to move back to the Eastern Heights neighborhood and hasn't had those plans for 20 years. Ex. 36 (B. Phillips Dep. Tr. 42:6-18).

74. Phillips testified none of her family members had any intention to live in her Eastern Heights house. *Id.* at 122:17-24.

75. Plaintiff Crumley testified that she has lived in Texas since 1986, and she has not lived in Mississippi since 1986. Ex. 37 (A. Crumley Dep. Tr. 8:9-11).

76. The EPA's September 2016 Fact Sheet stated: "Based on all the results received to date, EPA has determined that there is no immediate threat to public health and EPA is not considering temporary or permanent relocation of any of the Eastern Heights neighborhood residents." Ex. 31 (Sept. 2016 EPA Fact Sheet #6 at 2).

X.      **Emotional Distress**

77. One of Plaintiffs' proffered experts, Michael Nicar, testified that did no work to quantify any exposure or dose for any of the individual plaintiffs in this case. Ex. 38 (M. Nicar Dep. Tr. at 81:21-24).

78. Nicar testified that he did not perform a risk assessment for to any of the Plaintiffs in this case. *Id.* 64:12-14.

XI.     **Damages**

79. Plaintiffs' proffered expert, Dixie Clay, stated in her expert report that the diminution in value of all Plaintiffs' 49 properties amounts to $4,129,440, and the current value of Plaintiffs' properties is $0. Ex. 39 (Clay Report at 3, 11).

80. Plaintiffs' proffered expert, Howard Herring, stated in his expert report that the cost to replace Plaintiffs' Eastern Heights homes with newly constructed homes in a new neighborhood and to relocate to those homes is $5,487,195. Ex. 40 (Herring Report at 3, 20)

81. Brinkman, Simonton and Jenkins stated in their expert report that the cost to remediate contamination in the Eastern Heights neighborhood would be approximately $143 million. Ex. 19 (Groundwater Report at 19).