# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**BRENDA J. COOPER, et al.**                                          **PLAINTIFFS**

**V.**                                                        **NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., et al.**                                            **DEFENDANTS**

## ORDER

These consolidated actions are before the Court for consideration of "Defendant Meritor Inc.'s Objections to Magistrate Judge's Ruling (Dkt. #484) and Appeal to the District Court." Doc. #498.

## I
## Factual and Procedural History

### A. Complaint and Consolidation

On March 16, 2016, Brenda Cooper, Sylvia Caffey, Margaret Odems, Bernice Richardson, Dora Ward, Rosie Brady, Pearl Seldon, Betty Phillips, Alice Crumley, and Sylvia Cunningham filed a complaint in this Court against Rockwell International Corporation and the Randall Division of Textron, Inc. Doc. #1. On June 30, 2016, the case was consolidated with four member cases: No. 4:16-cv-53, No. 4:16-cv-54, No. 4:16-cv-55, and No. 4:16-cv-56. Doc. #41. The day after consolidation, the plaintiffs filed an amended complaint against Meritor, Inc., Rockwell Automation Inc., The Boeing Company, and Textron, Inc. Doc. #43.

In the amended complaint, the plaintiffs, residents or former residents of Grenada County, Mississippi, seek to recover for injuries to their homes and property caused by a manufacturing plant located in Grenada, Mississippi. The plaintiffs allege that they "are residents or former residents of a neighborhood adjacent" to the manufacturing plant, specifically the "Eastern

Heights" neighborhood, and that the plant was operated by: (1) Rockwell International Corporation, the predecessor to Rockwell Automation, Inc., which itself is a predecessor to The Boeing Company, from 1965 until 1985; and (2) Randall Wheel Trim, a subsidiary of Textron, Inc., from 1985 until the present. Doc. #43 at 1–6, 9. The plaintiffs further allege that the plant, which was used to manufacture chrome-plated wheel covers, utilized numerous chemicals, including hexavalent chromium and trichloroethylene ("TCE"), and that these chemicals were illegally placed into the environment, including the air and groundwater, with the defendants concealing such disposal. The plaintiffs assert six claims arising from the allegedly wrongful acts: (1) Fraud and Fraudulent Concealment (Count I); (2) Civil Conspiracy (Count II); (3) Negligence (Count III); (4) Nuisance (Count IV); (5) Trespass (Count V); and (6) Intentional and/or Negligent Infliction of Emotional Distress (Count VI). Subsequently, the parties stipulated to the dismissal of Count I and Count II. Doc. #174.

### B. Initial Discovery

On August 19, 2016, United States Magistrate Judge Jane M. Virden issued a case management order which set: (1) the discovery deadline as November 29, 2017; (2) the amendment deadline as October 20, 2016; (3) the plaintiffs' expert designation deadline as April 28, 2017; (4) the defendants' expert designation deadline as July 28, 2017; and (4) the dispositive motions deadline as December 29, 2017. Doc. #83. Later, Judge Virden, acting on motion of the defendants, extended the defendants' expert designation deadline until August 18, 2017. Doc. #263.

On June 21, 2017, the plaintiffs issued a subpoena to T&M Associates, Inc., an environmental firm which has contracted with Meritor for a number of years. Doc. #498-4. The subpoena sought seven categories of documents:

1. All documents you provided to Textron, Meritor, Arvin Meritor, Rockwell Automation and Boeing Automation and any of their agents or attorneys between January 1, 2015 and the date of your response.

2. All documents you have in your possession that relate to environmental investigations, studies, testing, planning or similar work performed at or in the vicinity of the Grenada Plant, specifically including the Eastern Heights neighborhood and any known or suspected waste disposal areas located along or near Moose Lodge Road.

3. All correspondence, including electronic mail or other electronic communications of any sort, that you have concerning environmental investigations, studies, testing, planning or similar work performed at or in the vicinity of the Grenada Plant, between you and the following:

Phillip Sykes
Trudy Fisher
Lea Ann Smith
William Smith
Peter Farrell
Barber Boone
James Palmer
Any person with the firm Butler Snow
Any person with the firm Balch Bingham
Any person with the firm Kirkland Ellis

4. All correspondence in connection with this subpoena.

5. All correspondence between you (including anyone on your behalf) and the US EPA related in any way to the Grenada Plant, known or suspected waste disposal sites along Moose Lodge Road, or the Eastern Heights subdivision in Grenada County, Mississippi.

6. All correspondence between you (including anyone on your behalf) and the MS DEQ related in any way to the Grenada Plant, known or suspected waste disposal sites along Moose Lodge Road, or the Eastern Heights subdivision in Grenada County, Mississippi.

7. Any reports prepared, whether in final or draft form, related to contamination originating from the Grenada Plant or any known or suspected waste disposal sites along Moose Lodge Road, along with supporting testing materials.

*Id*. at 8.

Following service of the subpoena, Meritor provided the plaintiffs with an index of potentially responsive documents. Then, the plaintiffs and Meritor engaged in a meet-and-confer process for production. This process resulted in the production of approximately 550,000 pages of material and a preliminary privilege log.

### C. Designation of James Peeples

On August 18, 2017, Meritor, Boeing, and Rockwell, served their joint experts designation. Doc. #511-1. The document provided, in relevant part:

> **B. EXPERTS NOT SPECIFICALLY RETAINED PURSUANT TO RULE 26(a)(2)(C) AND RETAINED PURSUANT TO RULE 26(a)(2)(B)**
>
> Defendants identify the following expert, pursuant to Rule 26(a)(2)(C) and 26(a)(2)(B), in each of the above-styled cases:
>
> James Peeples, PE
> Vice President, Senior Technical Environmental Engineer
> T&M Associates, Inc.
> 4675 Lakehurst Court, Suite 250
> Columbus, Ohio 43016
>
> Exhibit F contains a copy of Mr. Peeples' Curriculum Vitae and list of reports, including all opinions, analysis, sources and references contained therein, which have previously been submitted to the United States Environmental Protection Agency and/or the Mississippi Department of Environmental Quality and previously produced to all parties, upon which Mr. Peeples will rely and testify. The materials reflect the subject matter on which Mr. Peeples will testify. All of the opinions Mr. Peeples may testify to will be expressed to a reasonable degree of scientific, technical, and/or engineering certainty. Mr. Peeples' hourly rate for expert testimony is $300.

*Id*. at 3.

Exhibit F to the designation listed the following eighteen documents:

1. Corrective Measures Pre-Design Investigation Results, Feb. 21, 2008 (MTOR-EPA-0010647–10835)

2. Annual Monitoring Report, Calendar Year 2011, Grenada Manufacturing, LLC (GRENADA 049780–050389)

4

3. 2012 Annual Monitoring Report, Grenada Manufacturing, LLC (GRENADA 007684–f008906)

4. Annual Monitoring Report, Calendar Year 2013, Grenada Manufacturing, LLC (GRENADA 053281–054003)

5. Annual Monitoring Report, Calendar Year 2014, Grenada Manufacturing, LLC (GRENADA 054004–055174)

6. Moose Lodge Road Area Additional Investigation Report, Comprehensive Study Area Groundwater Evaluation (MTOR-00-0000003–0002565)

7. April 29, 2016, Trudy Fisher, Butler Snow Letter to Mississippi Department of Environmental Quality (MTOR-02-0002593–0002603)

8. 2016 Data Gap Work Summary (MTOR-02-0002579–0002592)

9. Annual Monitoring Report, Calendar Year 2015, Grenada Manufacturing, LLC (TM024825)(MTOR-02-0018705–0019376)

10. 2016 Annual Monitoring Report, Grenada Manufacturing, LLC Facility (MTOR-02-0019377–0020392)

11. AOC A Investigation Report, Grenada Manufacturing, LLC Facility (MTOR-02-0005439–0005943)

12. Kirk and PCA Properties Investigation Report (MTOR-02-0009153–0010915)

13. Groundwater Monitoring Report, 2nd Quarter 2017, Moose Lodge Road Area (MTOR-02-0016919–0017202)

14. T&M Environmental Quality Information System (EQuIS) database (DATABASE)

15. Sodium Concentrations Data – Deep Zone, figure (MTOR-02-0016917)

16. Sodium Concentrations Data – Shallow Zone, figure (MTOR-02-0016918)

17. Potassium Concentrations Data – Deep Zone, figure (MTOR-02-0016914)

18. Potassium Concentrations Data – Shallow Zone, figure (MTOR-02-0016915)

*Id*. at Ex. F. According to representations of the plaintiffs' counsel, Meritor provided copies of the enumerated documents, which included over 9,000 "pages of testing reports, analysis, logs,

and other information, as well as … 46 megabytes of information contained in the EQUiS Database." Doc. #511 at 2 n.1.

### D. December 18–19 Correspondence

On December 18, 2017, counsel for the plaintiffs sent an e-mail to counsel for Meritor asking Meritor to clarify what it "intended regarding Mr. Peeples' disclosure." Doc. #498-2 at 5. The next day, counsel for Meritor responded:

> Mr. Peeples is a 26(a)(2)(C) witness as to the opinions contained in documents 1-5 identified in Exhibit F to Meritor's disclosure. The summary of his opinion to be offered regarding document 1 is provided logically in the section entitled "Executive Summary." The summary of his opinion to be offered regarding documents 2-4 is already included in the identified document in the one page "Summary of Findings" found in each short document. Please note that these documents also provide data and facts upon which opinions identified below may be based.
>
> Mr. Peeples is a 26(a)(2)(B) witness as to the opinions contained in documents 6-18 identified in Exhibit F of Meritor's disclosure, as explained below. Each specifically identified report contains the opinions that Mr. Peeples will testify to, as well as the basis for the opinions and the facts and data upon which the opinions are based. While some of the reports are extensive, the majority of the documents are data tables and appendices of raw data. There are far fewer pages that contain the text of his reports. Also identified as Document 14 in Exhibit F is the EQuIS database, which provides the underlying data and support for all of the reports and which was produced to Plaintiffs in August.

*Id*. at 3–4. In the same e-mail exchange, Meritor learned that the plaintiffs were in possession of certain potentially privileged documents. *Id*. at 4.

On December 20, 2017, Meritor, acting pursuant to Federal Rule of Evidence 502, sent the plaintiffs a claw-back letter regarding certain documents inadvertently produced in the T&M disclosure. Doc. #498-7. Sometime later, Meritor provided two privilege logs to the plaintiffs, which assert privilege over numerous documents related to Peeples' work with T&M concerning the Grenada Plant. *See* Doc. #468-1; Doc. #468-2.

The first privilege log, which deals primarily with handwritten notes prepared by Peeples, originally asserted privilege over eighty-one documents numbered 2–82. Doc. #468-1. The second privilege log, which relates to environmental samples taken, prepared, or reviewed by Peeples, originally asserted privilege over forty-seven documents numbered 2–48. Doc. #468-2. The plaintiffs sequestered the challenged documents and, on January 2, 2018, moved to compel production of some of the allegedly privileged documents. Doc. #466.

Ultimately, the motion came before Judge Virden for consideration of three categories of documents: (1) approximately fifty handwritten notes prepared by Peeples memorializing conversations with numerous persons, including counsel for the defendants; (2) four documents related to groundwater testing performed by Peeples at the direction of Lori LaPratt, Meritor's consulting expert; and (3) fifteen documents related to vapor intrusion sampling performed by Peeples inside the Grenada Plant. On February 7, 2018, Judge Virden ordered production of all the documents. Doc. #484.

On February 26, 2018, Meritor appealed Judge Virden's order. Doc. #498. The plaintiffs responded to the appeal on March 8, 2018. Doc. #511.

**II**
**Standard**

"A party may serve and file objections to the order [of a magistrate judge] within 14 days after being served with a copy. … The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see* L.U. Civ. R. 72(a)(1)(B) ("No ruling of a magistrate judge … will be reversed, vacated, or modified on appeal unless the district judge determines that the magistrate judge's findings of fact are clearly erroneous, or that the magistrate judge's ruling is clearly erroneous or contrary to law.").

# III
# Analysis

In its objections, Meritor argues Judge Virden erred in ordering disclosure as to all three categories of documents under Federal Rule of Civil Procedure 26.

## A. Federal Rule 26

Federal Rule of Civil Procedure 26 governs discovery in federal court. With regard to experts, Rule 26(a)(2)(A) requires that "a party must disclose … the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," Rule 26(a)(2)(B) mandates that the disclosure be accompanied by an expert report. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

In the event a report is not required, the disclosure must identify "the subject matter on which the witness is expected to present evidence … and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)–(ii).

Notwithstanding the disclosure provisions of Rule 26(a), Rule 26(b)(3)(A), with limited exceptions, protects from disclosure "documents and tangible things that are prepared in anticipation of litigation or for trial …." In the rare instances where disclosure of such materials is warranted, Rule 26(b)(3)(B) requires that the Court "protect against disclosure of the mental

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." These protections are extended to expert disclosures by Rule 26(b)(4), which provides, in relevant part:

> (B) … Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
>
> (C) … Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>     (i) relate to compensation for the expert's study or testimony;
>     (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>     (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.
>
> (D) *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:
>     (i) as provided in Rule 35(b); or
>     (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4).

The Advisory Committee's notes to Rule 26(b)(4) make clear that "[t]he rule does not itself protect communications between counsel and other expert witnesses, such as those for whom disclosure is required under Rule 26(a)(2)(C)." Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment. However, "[t]he rule does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine." *Id*.

## B. Handwritten Notes

There is no dispute that the first category of documents – Peeples' handwritten notes – reflect conversations with Meritor's counsel. There is also no dispute that these documents would

9

be protected if Peeples were only a reporting witness, and would not be protected if he were only a non-reporting witness. Rather, the dispute centers on the legal impact of Peeples' dual designation.

In dealing with Peeples' dual designation, Judge Virden concluded that "if a party designates an expert as a non-retained/ non-reporting expert, he will be subject to the rules applicable to a non-reporter even if the expert is purportedly designated, at the same time, as a retained/reporting expert on the very same matters." Doc. #484 at 12. Because Judge Virden concluded that Peeples was dually designated as a retained and non-retained expert as to the same universe of opinions, she found that none of the challenged documents were privileged under the protections afforded to retained/reporting experts.[1]

Meritor submits that Judge Virden erred in concluding that Peeples was simultaneously dually designated as to the same opinions. Meritor further argues that "[d]esignating an expert as both a retained reporting expert and a non-reporting expert – as to different opinions in different timeframes – does not strip communications with a party's attorney of protection from discovery." Doc. #498 at 18. Meritor's arguments raise two distinct issues: (1) the legal impact of an expert's dual designation as a reporting and non-reporting witness, and (2) the scope of Peeples' dual designation.

---

[11] Judge Virden also concluded that even if the reporting expert designation controlled, "a great deal of Peeples' notes contain facts or other data that were considered by Peeples—as evidenced by the fact he wrote them—and relate to matters upon which, according to the vast reaching designation, he will testify about. As a consequence they would be discoverable under Fed. R. Civ. P. 26(b)(4)(C)." Doc. #484 at 14. Meritor argues that Judge Virden "assumed that merely because Mr. Peeples made handwritten notes, they necessarily contained facts or data provided to him and he necessarily considered and/or relied on every one of them as a communication from counsel in 'forming the opinions to be expressed.' But nothing makes that syllogism necessarily or logically true, even if 'relating' to matters (Order at 14) were the legal test (it is not)." Doc. #498 at 14–15. Because this Court concludes that the reporting expert protections do not prevent discovery in this case, it declines to address Judge Virden's conclusion regarding the discoverability of the documents under the reporting expert rule.

### 1. Impact of dual designation

"While the Fifth Circuit has not directly addressed [the] issue, other circuits have held someone may be a witness not required to produce a report as to portions of his testimony and simultaneously deemed a retained or specially employed expert who is subject to Rule 26(a)(2)(B) as to other portions." *LaShip, LLC v. Hayward Baker, Inc.*, 296 F.R.D. 475, 480 (E.D. La. 2013). Accordingly, a witness may be designated as a Rule 26(a)(2)(B) retained reporting expert on certain issues, and a Rule 26(a)(2)(C) non-reporting expert for other issues. *See id.* at 481–82.

To this Court's knowledge, no court has considered the discovery implications of a 26(a)(2)(B) and 26(a)(2)(C) dual designation such as the one at issue here. However, when an expert has been designated as both a testifying expert and a consulting expert, courts have held that the privilege afforded to consulting experts under Rule 26(b)(4)(D)[2] "applies only to those materials generated or considered *uniquely* in the expert's role as a consultant." *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-cv-915, 2017 WL 6328149, at *2 (D. Del. Dec. 11, 2017) (emphasis added and internal quotation marks omitted) (collecting cases). Under such circumstances, "a court should order disclosure when there is at least an ambiguity as to whether" a document would be discoverable based on the expert's designation as a testifying expert. *Id*. Put differently, where an expert has been dually designated as consulting and testifying, a party is entitled to discover any documents they would be entitled to *because of the testifying expert designation*, even if such documents would ordinarily be shielded from discovery under Rule 26(b)(4)(D)'s protections for consulting experts. *See id.* at *3 ("Since the information considered by Mr. Hansen for his consulting role included … information relevant to the current case, it is

---

[2] Rule 26(b)(4)(D) provides: "Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."

11

difficult, if not impossible, to believe that it did not inform the opinions in his testifying expert report …. Accordingly, Plaintiff must produce the documents it exchanged with Mr. Hansen in his consulting role."). Courts have applied this rule to prevent the asserted privilege from "interfer[ing] with the goal of the disclosure requirements, which is to allow an adversary to expose whatever weaknesses, unreliabilities, or biases might infect the opinions of testifying experts called by an adverse party." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 577 (S.D.N.Y. 2013) (alterations omitted).

This Court sees no reason to depart from the rule that where an expert has been dually designated, one designation does not act to shield otherwise discoverable material under the second designation. Accordingly, where, as here, an expert has been designated under both 26(a)(2)(B) and 26(a)(2)(C), the protections afforded to the witness by his designation under Rule 26(a)(2)(B) do not prohibit disclosure of material discoverable by reason of his designation under Rule 26(a)(2)(C). In such a situation, Rule 26(b)(4)'s protection of communications between a Rule 26(a)(2)(B) expert and an attorney will apply only to those communications made uniquely in the expert's role as a Rule 26(a)(2)(B) expert, that is, as a person "retained or specially employed to provide expert testimony in the case or … whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The burden of making such a showing rests on the party asserting the privilege. *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.*, 258 F.R.D. 149, 160 (S.D. Tex. 2009) ("The parties resisting discovery by asserting any privilege bear the burden of proof sufficient to substantiate their privilege claims and cannot rely merely on a blanket assertion of privilege.") (quotation marks omitted).

## 2. Scope of designation

Meritor argues it "never intended that [its August] designation be viewed as covering the exact same opinions for each designation. Indeed, that would have been illogical and absurd …. But if there were any ambiguity, Meritor cleared it up … the first time that Plaintiffs raised a question as to the designation …." Doc. #498 at 17.

In considering Meritor's argument, the Court begins by reiterating that the "purpose of the expert disclosure rule is to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (internal quotation marks omitted). Consistent with this purpose, courts look to what a party actually disclosed, not what the party intended to disclose. *See, e.g., Cole v. Janssen Pharm. Inc.*, No. 15-C-57, 2017 WL 4082591, at *1 (E.D. Wis. Aug. 29, 2017) (disclosure of wrong doctor as expert did not justify allowing disclosure of intended doctor after expert witness disclosure deadline had passed).

Here, the plain language of Meritor's August disclosure designated Peeples as a reporting and non-reporting expert on the "subject matter" of the eighteen identified documents in Exhibit F. While this designation may be "illogical and absurd," Meritor has offered no authority for the proposition that an "illogical and absurd" expert designation is invalid. In the absence of such authority or a valid re-designation[3] of Peeples, Meritor is bound by the clear language of its initial

---

[3] The plaintiffs argue that a re-designation of Peeples would not prevent disclosure here because "Meritor may not … reestablish privileges already abandoned." Doc. #511 at 11 (citing *CP Kelco U.S. Inc. v. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del. 2003). This, however, is the minority rule. *See Layman v. Junior Players Golf Acad., Inc.*, 314 F.R.D. 379, 383–84 (D.S.C. 2016) (collecting cases). Even assuming re-designation could re-establish a lost privilege (or revoke a waiver), such a rule would not protect Meritor here.

While Meritor's December e-mails may be read as an attempt to re-designate Peeples, they came well after the expert disclosure deadline, which is the deadline for re-designation. *See Dixon v. Legacy Transp. Sys., LLC*, No. 2:15-cv-

disclosure, which designated Peeples as a non-reporting expert on the same subject matter and opinions as he was designated as a reporting expert. In light of this dual designation, Meritor may prevent disclosure under Rule 26(b)(4)(C) only as to those documents generated or considered uniquely in Peeples' role as a retained expert. Meritor has made no attempt to make such a showing. Accordingly, Judge Virden did not err in overruling Meritor's assertion of 26(b)(4)(C) privilege.

### C. Groundwater Sampling

The second category of documents involves four groundwater sampling documents regarding samples taken, but not reviewed, by Peeples at the direction of LaPratt, Meritor's consulting expert.

In her order, Judge Virden held that "Peeples, per his designation, will be opining, as a non-reporting expert, about origination of contamination in the Eastern Heights neighborhood. Thus, making the fact that he took samples relevant to that contamination, but chose not to learn the results, discoverable." Judge Virden further held that the "sampling work was not done by a consultant and thus is not protected under … [Rule] 26(b)(4)(D)." On appeal, Meritor argues that the documents are protected under Rule 26(b)(4)(C), Rule 26(b)(4)(D), and Rule 26(b)(3).

---

1359, 2017 WL 3927105, at *3 (D. Nev. Sept. 6, 2017) ("Allowing plaintiff to re-designate Berkabile as an initial expert would reward plaintiff's failure to comply with the Federal Rules of Civil Procedure and the court's discovery plan and scheduling order deadlines. It would allow plaintiff to have the benefit of Berkabile's testimony during her case in chief."); *Harvey Prop. Mgmt. Co., Inc. v. Travelers Indem. Co.*, No. 2:12-cv-1536, 2015 WL 13021507, at *2 (D. Ariz. June 24, 2015) (party could not re-designate expert after expert disclosure deadline); *Wann v. Gist*, No. 00-cv-101, 2001 WL 36102304, at *2 (D. Wyo. July 12, 2001) ("Allowing a party to continually redesignate the proposed testimony of an expert witness is contrary to both the Federal and Local Rules of Civil Procedure and the previous orders of this Court and makes a mockery of the deadlines which are imposed by the Court in order to assure finality."); *McCoy v. Kazi*, No. 08-7244, 2010 WL 11465179, at *5–6 (C.D Cal. Aug. 27, 2010) (same); *cf., Estate of Manship v. United States*, 240 F.R.D. 229, 236–38 (M.D. La. 2006) (permitting re-designation as consulting expert after expert designation deadline, but before exchange of witness lists, where expert had not issued report).

1. **Rule 26(b)(4)(C)**

Meritor argues that Peeples was a reporting expert and, therefore, subject to the protections of Rule 26(b)(4)(C), which prohibits the disclosure of communications between a party's attorney and a reporting expert.

As an initial matter, it appears the sampling documents involve communications between Peeples and Meritor's consulting expert, not Meritor's attorneys. While Rule 26(b)(4)(C) protects communications between an attorney and a consultant's employees,[4] it does not protect "communications between an expert witness and a consulting expert." *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 515–16 (N.D. Cal. 2012). To the extent the documents at issue relate to precisely such communications, they would not be entitled to privilege under 26(b)(4)(C).

Even if the groundwater samples may be deemed communications between Peeples and an attorney, they would still be subject to disclosure. Rule 26(b)(4)(C)(ii) exempts from protection documents the "expert considered in forming the opinions to be expressed." "For Rule 26 purposes, a testifying expert has considered data or information if the expert has read or reviewed the privileged materials before … formulating his or her opinion." *In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 248 F.R.D. 532, 537 (N.D. Ohio 2008) (quotation marks omitted) (collecting cases). Under this rule, "[m]aterials reviewed or generated by an expert must be disclosed, regardless of whether the expert actually relies on the material as a basis for his or her opinions," so long as the documents have some "relation to the expert's role as a witness." *Id*. at 537–38 (quotation marks and alterations omitted). "[A]ny ambiguity as to the role played by the

---

[4] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

expert when reviewing or generating documents should be resolved in favor of the party seeking discovery." *Id*. at 538.

There is no dispute that Peeples reviewed the groundwater documents and that the opinions to which he will testify relate, at least in part, to groundwater contamination. Accordingly, he "considered" these documents within the meaning of Rule 26 and, therefore, such documents are exempted from protection under Rule 26(b)(4)(C).

### 2. Rule 26(b)(4)(D)

Rule 26(b)(4)(D) protects "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Meritor appears to argue that because Peeples was asked to perform testing by a consulting expert, he is himself a consulting expert for the work he performed at the consultant's request. Judge Virden rejected this argument without discussion.

The plain language of Rule 26(b)(4)(D) grants protection to those experts "retained or specially employed by another party." In this case, Peeples was retained or employed by Meritor's consulting expert, not Meritor itself, to perform groundwater testing in anticipation of litigation or to prepare for trial. Accordingly, the question becomes whether a contractor hired or directed by a consulting expert is, for the purpose of Rule 26(b)(4)(D), a consulting expert himself. This question, in turn, would seem to depend on whether a consulting expert may be deemed an agent of the employing party. The parties have cited no authority, and the Court has found none, which directly addresses this issue.[5]

---

[5] At least one court has held that the Advisory Committee Notes to Rule 26(b)(4)(C) "foreclose the notion that consulting experts are afforded protection as 'agents' of a party or that party's attorney" under the communication rule. *Ecuador*, 280 F.R.D. at 515. Another court has held that a consulting expert is an agent of a party for the purpose of Rule 26(b)(3). *Cooper v. Meridian Yachts, Ltd.*, No. 06-61630, 2008 WL 2229552, at *4 (S.D. Fla. May 28, 2008).

The Court has reviewed the text and the comments to Rule 26(b)(4) and has found nothing which suggests the rule was intended to alter traditional rules of agency which allow an agent to act on behalf of a principal. Accordingly, the Court is inclined to believe that a consulting expert may, under some circumstances, act as an agent in hiring a contractor to perform certain work in anticipation of litigation and that under such circumstances, the contractor would be deemed a consulting expert under Rule 26(b)(4)(D).

Here, Meritor has offered no evidence which would show a principal-agent relationship between it and its consulting expert. In the absence of such evidence, the Court cannot conclude that Peeples was a consulting expert based on his interaction with Meritor's consultant. Furthermore, even if Peeples could be deemed a consultant, privilege would only prevent disclosure to the extent the groundwater samples were "generated or considered *uniquely* in … [his] role as [a] consultant." *Ansell Healthcare*, 2017 WL 6328149, at *2 (D. Del. Dec. 11, 2017) (emphasis added). As explained above, the groundwater samples were not considered uniquely in Peeples' role as a consultant. Accordingly, they would not be protected under Rule 26(b)(4)(D).

### 3. Rule 26(b)(3)

Pursuant to Federal Rule 26(b)(3), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Meritor argues that "[e]ven if [Peeples is] considered solely as a non-report expert under Rule 26(a)(2)(C), the four groundwater sampling documents … were plainly prepared by or for another party or its representative 'in anticipation of litigation,' and are thus protected as trial preparation materials under Rule 26(b)(3). The documents are not ones relied upon by Mr. Peeples in forming any of his opinions." Doc. #498 at 25.

17

At least one circuit has held that "the protections of Rule 26(b)(4)(B) and (C) are the exclusive protections afforded to expert trial-preparation materials." *In re Application of the Republic of Ecuador v. For the Issuance of a Subpoena under 28 U.S.C. § 1782(a)*, 735 F.3d 1179, 1187 (10th Cir. 2013). Even circuits that have not gone so far have held that Rule 26(b)(3) does not prevent disclosure of "materials considered by a testifying expert, except the core opinion work-product of attorneys." *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1195 (11th Cir. 2013); *see also Republic of Ecuador v. Mackay*, 742 F.3d 860, 871 (9th Cir. 2014) ("Rule 26(b)(3) does not provide presumptive protection for all testifying expert materials as trial preparation materials."). Because Peeples, a testifying expert, considered (within the meaning of Rule 26) the groundwater documents, Rule 26(b)(3)'s protections do not apply.

### D. Vapor Intrusion Documents

Finally, Meritor argues that the documents relating to vapor intrusion inside the plant "have no bearing on the opinions and testimony [Peeples] will offer as either a specially-retained reporting expert under Rule 26(a)(2)(B), or a non-report expert under Rule 26(a)(2)(C)." Doc. #498 at 25. Meritor further argues that Peeples was acting as a consultant with respect to the vapor intrusion issues inside the facility and that, therefore, the vapor intrusion documents are protected under Rule 26(b)(3).

Judge Virden held that "[a]t best, for Meritor, there may be some ambiguity as to whether Peeples' designation relates to vapor intrusion testing at the facility, but under applicable law, that ambiguity is to be resolved in favor of disclosure." Doc. #484 at 15. The plaintiffs, for their part, argue there is no ambiguity insofar as numerous sections of the reports disclosed in Exhibit F of Peeples' disclosure contain references to the "Indoor Air" at the facility. This Court agrees with the plaintiffs.

Peeples' was designated as a testifying expert on the issues identified in Exhibit F of his disclosure. The indoor air at the facility was an issue identified in Exhibit F. Accordingly, insofar as the vapor intrusion documents were reviewed or generated by Peeples and relate to an issue on which Peeples will opine, disclosure was required. *Hinchee*, 741 F.3d at 1195.

## IV
## Conclusion

For the reasons above, Meritor's objections [498] are **OVERRULED**.

**SO ORDERED**, this 15th day of May, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**