## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

| | |
|---|---|
| BRENDA J. COOPER, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> MERITOR, INC., <br> ROCKWELL AUTOMATION, INC., <br> THE BOEING COMPANY, and <br> TEXTRON, INC., <br><br> *Defendants.*† | Judge Debra M. Brown <br> Magistrate Judge Jane M. Virden <br><br> Lead Case No. 4:16-cv-52 <br><br> Consolidated with: <br>    *Sledge v. Meritor, Inc.*, No. 4:16-cv-53 <br>    *Cooke v. Meritor, Inc.*, No. 4:16-cv-54 <br>    *SRA Invests., LLC v. Meritor, Inc.*, No. 4:16-cv-55 <br>    *Willis v. Meritor, Inc.*, No. 4:16-cv-56 |

## REPLY IN SUPPORT OF
## TEXTRON'S MOTION FOR SUMMARY JUDGMENT

---

†   In accordance with the Court's October 25, 2017 Order, ECF No. 351, this reply and the accompanying motion for summary judgment apply to the claims brought by the Plaintiffs in the *Cooper* case, No. 4:16-cv-52.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.      Plaintiffs Fail To Create A Disputed Issue Of Material Fact As To Causation. ................. 2

      A.     Plaintiffs Have No Admissible Evidence That Textron Caused Contamination Of Their Properties Via Air Emissions Or Vapor Intrusion. ......... 3

      B.     Plaintiffs Have No Admissible Evidence That Textron Caused Contamination Of Their Properties Via Groundwater. ........................................... 4

            1.     Arsenic And Lead .................................................................................... 5

            2.     Hexavalent Chromium And TCE ............................................................. 5

            3.     BTEX ....................................................................................................... 8

II.     Each Of Plaintiffs' Claims Suffers From Claim-Specific Defects. .................................... 9

      A.     All Plaintiffs' Emotional Distress Claims Fail. ......................................................... 9

      B.     All Plaintiffs' Nuisance Claims Fail. ...................................................................... 10

III.    Plaintiffs' Damages Theories Fail Under Mississippi Law. ............................................. 11

      A.     Plaintiffs Agree That They Cannot Seek Remediation And Replacement Costs. .......................................................................................................... 11

      B.     Plaintiffs Do Not Present Any Evidence To Support The Need For Relocation. ............................................................................................... 11

      C.     Plaintiffs Cannot Satisfy Their Burden Of Presenting Clear And Convincing Evidence To Support Their Punitive Damages Claim Against Textron. ............... 12

CONCLUSION .................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. Allstate Prop. & Cas. Ins. Co.*,
No. 4:14-cv-00064-DMB, 2015 WL 1292220 (N.D. Miss. Mar. 23, 2015)...........................12

*Anthony v. Chevron USA Inc.*,
284 F.3d 578 (5th Cir. 2002) ........................................................................................ 3, 4

*Barfield v. Madison Cty.*,
212 F.3d 269 (5th Cir. 2000) ........................................................................................5, 12

*Board of Sup'rs of Clarke County v. Mississippi Lumber Co.*,
31 So. 905 (Miss. 1902)......................................................................................................8

*Bradfield v. Schwartz*,
936 So. 2d 931 (Miss. 2006)...............................................................................................12

*Bradley v. Armstrong Rubber Co.*,
130 F.3d 168 (5th Cir. 1997) ..............................................................................................8

*Cayne v. Wash. Trust Bank*,
No. 2:12-cv-00584, 2015 WL 7185433 (D. Idaho Nov. 13, 2015) .......................................13

*Cimino v. Raymark Indus., Inc.*,
151 F.3d 297 (5th Cir. 1998) ..............................................................................................12

*Collins v. City of Newton*,
No. 2017-CA-00137-SCT, 2018 WL 1193549 (Miss. Mar. 8, 2018) ...................................13

*De Franceschi v. BAC Home Loans Serv., L.P.*,
477 F. App'x 200 (5th Cir. 2012) ........................................................................................5

*Ivory v. IBM Corp.*,
983 N.Y.S.2d 110 (N.Y. App. Div. 2014) ............................................................................8

*Jones v. City of Hattiesburg*,
228 So. 3d 816 (Miss. Ct. App. 2017) .................................................................................10

*Parmenter v. J & B Enters., Inc.*,
99 So. 3d 207 (Miss. Ct. App. 2012) ....................................................................................5

*Perez Librado v. M.S. Carriers, Inc.*,
No. 3:02-cv-2095-D, 2004 WL 1490304 (N.D. Tex. June 30, 2004)...................................13

*Riverbend Utils., Inc. v. Miss. Env'tl Quality Permit Bd.*,
130 So. 3d 1096 (Miss. 2014)..................................................................................... 8

*State Farm Mut. Auto Ins. Co. v. Campbell*,
538 U.S. 408 (2003)................................................................................................. 13

**Statutes, Rules, And Regulations**

Miss. Code § 11-1-65................................................................................................... 12

Miss. Code § 51-3-1....................................................................................................... 7

**Other Authorities**

Compl., *Mississippi ex rel. Hood v. Meritor, Inc.*, No. 17-cv-84 PL (Miss. Ch.
Ct., Grenada Cty., Apr. 7, 2017)................................................................................ 8

Mississippi's Resp. in Opp'n to Defs.' Mots. for J. on the Pleadings, *Mississippi
v. Tennessee*, No. 220143 (U.S. Apr. 6, 2016)............................................................ 7

Richard J. McLaughlin, "Mississippi" in 6 *Water and Water Rights* (Robert E.
Beck, Ed., 1991 ed., repl. Vol. 2005) ........................................................................ 7

**INTRODUCTION**

Plaintiffs' theories about contamination on their properties have morphed each time that Defendants point out the flaws. But one thing remains constant: Plaintiffs lack admissible evidence showing contamination on each of their properties and connecting that contamination to *Textron*. Plaintiffs' opposition tries to obscure that defect by raising a host of irrelevant facts to make it seem as though there are factual disputes here. Plaintiffs go so far as to primarily rely on previously undisclosed expert opinions and liability theories in brand-new affidavits and on inadmissible hearsay in the hope that the Court will be too overwhelmed to sort out whether Plaintiffs have presented admissible evidence to support their actual legal claims against Textron.

The issue is not simply whether there is contamination beneath a portion of the neighborhood or the Facility; there is. The critical point is that Textron is liable for contamination of Plaintiffs' properties if—and only if—*Textron* released contaminants into the environment and *those same contaminants* actually migrated onto each Plaintiff's property. While Plaintiffs' brief puts up a lot of smoke and mirrors, it does not establish a factual dispute on this critical issue. Plaintiffs concede that Textron did not dispose of waste anywhere off site and that their only theory against Textron stems from contamination at the Facility. But Plaintiffs have no admissible evidence connecting Textron's operation of the Facility from 1985 to 1999 to the contaminants on Plaintiffs' properties:

- Plaintiffs cannot show that Textron's air emissions at the Facility over twenty-five years ago caused TCE to migrate onto Plaintiffs' properties. Plaintiffs withdrew their only air-emissions expert—leaving unrebutted Defendants' expert's conclusion that historical TCE emissions would have evaporated within weeks of their release.

- Plaintiffs cannot show that contamination in the groundwater under the Facility (from leaks, spills, and on-site disposal by Rockwell) has ever moved into the Eastern Heights neighborhood. Plaintiffs' own experts concede that it does not.

- Plaintiffs cannot show that groundwater contamination has moved upward onto their properties through vapor intrusion. Plaintiffs "do not rely on vapor intrusion," Opp'n 11, Doc. No. 654, and their only vapor-intrusion expert has repudiated his opinions three times in this case.

Because of Plaintiffs' lack of competent proof, Plaintiffs felt the need to rely primarily on inadmissible hearsay and on four new, untimely expert affidavits with never-before-seen theories and opinions about purported arsenic, lead, chromium, TCE, and BTEX contamination in some groundwater samples. Putting aside that those untimely affidavits must be disregarded, *see* Defs.' Mem. in Supp. of Mot. to Strike, Doc. No. 701, none of them save Plaintiffs' claims against *Textron*. Plaintiffs still have no admissible evidence that *Textron* is responsible for any of these contaminants in groundwater under Plaintiffs' properties, and Plaintiffs' own experts agree that there is no data showing that groundwater under the Facility ever moved north under Plaintiffs' properties. The most that these brand-new expert opinions purport to show is that TCE and chromium are present in the groundwater beneath some of the neighborhood—not *on* Plaintiffs' properties. Under Mississippi law, the State owns the groundwater—as the State has explained to the U.S. Supreme Court and as Plaintiffs' counsel has explained in a parallel action filed against Defendants on behalf of the State. The fact that Mississippi may grant a permit to a resident to use groundwater or surface water does not mean the resident owns the water—and there is no dispute that Plaintiffs here do not even use the groundwater. Thus, no claim lies for solely groundwater contamination.

In short, Textron is entitled to judgment as a matter of law on all of Plaintiffs' claims.

## ARGUMENT[1]

### I.    Plaintiffs Fail To Create A Disputed Issue Of Material Fact As To Causation.

Plaintiffs' response boils down to the following argument: there are some contaminants in some of the groundwater under the Facility; there are some (different) contaminants in some of the groundwater under the Eastern Heights neighborhood; therefore, the Facility's groundwater *must* have caused the contamination in the neighborhood. This is a flawed syllogism. Missing from

---

[1]    Plaintiffs rely on a background section and did not submit a numbered statement of additional facts for Textron to respond to. Textron thus responds to the facts asserted by Plaintiffs where appropriate in this Argument section.

Plaintiffs' response is any admissible evidence connecting the contamination in those two locations—or any evidence connecting that contamination to *Textron*. Assertions and assumptions are not enough to defeat summary judgment. *E.g.*, *Anthony v. Chevron USA Inc.*, 284 F.3d 578, 588-89 (5th Cir. 2002) (affirming summary judgment for lack of causation in water and soil contamination case where the plaintiffs' experts merely "locat[ed] all of the sites [of contamination] near [the defendant]'s operations" and pointed to the "proximity of [the defendant's operations] and the contamination," which "is insufficient").

### A. Plaintiffs Have No Admissible Evidence That Textron Caused Contamination Of Their Properties Via Air Emissions Or Vapor Intrusion.

Plaintiffs cannot rely on their complaint's theories of air emissions or vapor intrusion to show causation because they have disavowed these theories and their only experts on these topics.

Plaintiffs flawed theory that historic air emissions of TCE from the Facility migrated onto Plaintiffs' properties came to a halt when Plaintiffs withdrew their only expert on air modeling and emissions because of fundamental flaws in his analysis. *See* Textron's Mem. in Supp. of Mot. for Summ. J. ("Mem.") at 19, Doc. No. 592. As Plaintiffs do not dispute, that leaves the opinions of Defendants' expert Ranjit Machado unrebutted and thus the only record evidence on air emissions is Machado's conclusion that any TCE emitted from the Facility between 1985 and 1999 "would have quickly been diluted" and ultimately "eliminated from the air within weeks of its release" because "the half-life of TCE in the atmosphere is approximately 7 days." Machado Rpt. at 33 (Ex. 48 to Textron's Mot. for Summ. J.).[2] Thus, any TCE emitted into the air by Textron would have been long gone and not present on any Plaintiff's property. *Id.*

---

[2]   The only evidence Plaintiffs cite is an internal Textron audit report from 1989 that simply provides data about the estimated *volume* of Textron's annual air emissions (which were also disclosed to regulators). *See* Opp'n 6. (citing ERM Audit Report (Ex. 3 to Opp'n)). That report does not and cannot show that air emissions from more than twenty-five years ago migrated onto Plaintiffs' properties today. The unrebutted evidence is to the contrary.

Plaintiffs previously offered vapor-intrusion opinions from James Fineis, which claimed that alleged contamination moved from groundwater up through the soil into Plaintiffs' properties. *See also* Fourth Am. Compl. ¶¶ 33-34, Doc. No. 43; Opp'n 11. Plaintiffs have now abandoned that theory: in their words, "Plaintiffs do not rely on vapor intrusion to show that their properties are contaminated." Opp'n 11 (emphasis omitted). And Fineis, their only vapor-intrusion expert, has now repudiated his written report's vapor-intrusion opinions for the third time in this case in a brand-new affidavit. *See* Aff. of J. Fineis at 3, ECF No. 626-2. Plaintiffs thus have not and cannot show that their properties were contaminated via air emissions or vapor intrusion.

**B.       Plaintiffs Have No Admissible Evidence That Textron Caused Contamination Of Their Properties Via Groundwater.**

Because Plaintiffs have admitted that Textron did not dispose of contaminants on their properties and have no evidence of air emissions or vapor intrusion, the only potential pathway for contamination is groundwater. Critically, it is not enough for Plaintiffs to say that some groundwater is contaminated. To survive summary judgment, Plaintiffs need evidence that Textron contaminated the groundwater and that the *same contaminants* moved into the neighborhood and onto these Plaintiffs' nine properties. *See, e.g.*, *Anthony*, 284 F.3d at 588-89 (causation requires proof that the contaminants on the plaintiff's property "originated" from the specific defendant's conduct).

Plaintiffs do not dispute that Textron did not dispose of any hazardous waste off-site in the Moose Lodge Road Area. *See, e.g.*, Textron's Reply in Supp. of Statement of Undisputed Facts, Doc. No. 709 ("Reply SOF") ¶ 11. Thus, the only potential source of contamination that Plaintiffs try to attribute to Textron is the operation of the Facility itself, during Textron's ownership from 1985 to 1999.[3] To this end, Plaintiffs point to five alleged contaminants: arsenic, lead, TCE,

---

[3]     Plaintiffs assert, for the first time, that Textron knew of and fraudulently concealed *Rockwell's* TCE and toluene leaks from regulators. That theory is not properly part of this case at all because Plaintiffs dismissed their fraudulent

hexavalent chromium, and BTEX. But Plaintiffs have not presented any evidence that Textron caused releases of any of those contaminants into the groundwater and that the contaminated groundwater from the Facility flowed north onto these Plaintiffs' nine properties.

### 1.      *Arsenic And Lead*

To start, the Court should disregard any theories based on arsenic and lead contamination. This is yet another new theory based on previously undisclosed expert opinions in new affidavits that Plaintiffs have submitted in response to Textron's summary judgment and *Daubert* motions. *See* Defs.' Mem. in Supp. of Mot. to Strike at 1, 7, 10-12, Doc. No. 701. Regardless, Plaintiffs offer no evidence that Textron used or released arsenic or lead into the groundwater during Textron's ownership. Plaintiffs' new expert affidavits do not opine that Textron's operation of the Facility caused any arsenic or lead contamination on Plaintiffs' properties. Thus, arsenic and lead cannot be attributed to Textron and cannot be a basis for denying summary judgment.

### 2.      *Hexavalent Chromium And TCE*

Plaintiffs make only one attempt to attribute chromium and TCE contamination to Textron: Textron's closure of the equalization lagoon. Again, the Court should disregard any theories about chromium because Plaintiffs' only basis for the alleged presence of chromium in the groundwater

---

concealment claim and cannot resurrect it now. *See* Joint Stipulation of Dismissal without Prejudice, ECF No. 174; *see also De Franceschi v. BAC Home Loans Serv., L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (district courts properly "disregard claims or *theories* of liability not present in the complaint and raised first in a motion opposing summary judgment" (emphasis added)). And that theory is legally baseless. Plaintiffs do not cite any admissible evidence that Textron actually knew of the contamination that Rockwell had left behind or that Textron failed to promptly report it to regulators when it was discovered. Instead, Plaintiffs base their fraudulent concealment theory solely on the assertion that knowledge by a few *Rockwell* employees of *Rockwell's* contamination is somehow imputed to Textron because those employees stayed on after Textron's purchase of the facility. *See* Opp'n 7. Plaintiffs' novel imputation theory that one employer is legally responsible for actions taken by an employee while he worked for *a different* employer is wrong as a matter of law. Plaintiffs do not cite any authority for that theory, and for good reason: it contradicts black-letter Mississippi law that "[a]n 'employer is responsible for the torts of its employee only when the torts are "committed within the scope of the employment.'" *Parmenter v. J & B Enters., Inc.*, 99 So. 3d 207, 215-17 (Miss. Ct. App. 2012); *Barfield v. Madison Cty.*, 212 F.3d 269, 272 (5th Cir. 2000) (district courts may not "expand state law beyond its presently existing boundaries" (citation omitted)). In any event, this fraudulent concealment, imputed knowledge theory would not cure the causation defects in their claims because there is no admissible evidence that groundwater under the facility has ever flowed towards and under Plaintiffs' properties. *See infra* pp. 6-7.

beneath their properties is their brand-new, untimely expert affidavits—which for the first time opined on the alleged presence of chromium in some groundwater (relying on a third-party written report by Arcadis). *See* Defs.' Mem. in Supp. of Mot. to Strike at 6-12, Doc. No. 701. Plaintiffs' theory is also factually unsupported on its face. For example, Plaintiffs present no admissible evidence that Textron deposited any TCE in the equalization lagoon.[4] But setting aside the lack of an admissible factual basis for this theory and even assuming that it were true, Textron is still entitled to summary judgment for two reasons.

First, even if TCE and hexavalent chromium entered the groundwater under the Facility (regardless of the on-site source), Plaintiffs have no evidence that groundwater under the Facility has ever moved north under their nine properties. As Plaintiffs do not dispute, their own groundwater experts have admitted that groundwater underneath the Facility moves west *away* from the neighborhood (not towards it), that under current conditions groundwater "is not expected to cross from" the Facility to the neighborhood, and that they had not seen any historical data to the contrary. *See* Mem. 11; Reply SOF ¶¶ 34-35, 37, 39, 41. The only admissible evidence that Plaintiffs cite are irrelevant maps showing groundwater flow from the off-site *Moose Lodge Road Area* to the neighborhood—not from the Facility to the neighborhood. *See* Opp'n 13; Textron's Reply Mem. in Supp. of Mot. to Exclude Testimony of Pls.' Groundwater Experts at 1, 3-4, Doc. No. 698.[5]

Plaintiffs try to undo their experts' admissions by submitting new affidavits with new

---

4    *See, e.g.*, Opp'n 3 ("The EQ Lagoon received process waters from the roll department, the boilers, the chrome-plating units, boil-off unit, butler wash, buff wash and buff basement, and stormwater. . . . These wastewaters included electroplating wastes that contained *hexavalent and trivalent chromium*.") (emphasis added).
5    The other evidence cited by Plaintiffs—an 86-page, third-party report by private contractor Tetra Tech—is not only inadmissible hearsay, *see* Reply SOF ¶ 33, but also does not show that contaminated groundwater has flowed from the facility into the neighborhood. It does not show, as Plaintiffs assert, that "concentration trends consistent with the transfer of contaminants via groundwater from the Facility to Eastern Heights." Opp'n 13. Rather, the Tetra Tech Report notes that there are contaminants in the groundwater beneath the Facility and some of the same contaminants in groundwater samples collected offsite. Tetra Tech Report at 26, Doc. No. 618-2. As the old adage goes, correlation does not equal causation—and the report does not show that groundwater is flowing north from the Facility. A third party's hearsay and assumptions are no substitute for admissible evidence.

opinions, such as Dr. Simonton's assertion that "[t]he concentrations at which the contaminants are found in the neighborhood decrease gradually and consistently as the distance from the Facility increases, supporting the conclusion that the Facility is the source of these contaminants." Simonton Aff. ¶ 12, Doc. No. 618-44. The Court should reject Plaintiffs' efforts to redo expert discovery with new opinions that are inconsistent with prior opinions. *See* Defs.' Mem. in Supp. of Mot. to Strike, Doc. No. 701. But Plaintiffs' need to add new and different opinions at this late stage underscores that Plaintiffs lack competent evidence to defeat summary judgment.

Second, even *if* Plaintiffs' new expert opinions were considered and even *if* TCE and chromium entered the groundwater and moved north under Plaintiffs' properties, Plaintiffs have no evidence that these contaminants moved onto their properties from the groundwater. As Plaintiffs do not dispute, their own experts' testing shows that seven of their nine properties do not have any TCE, one has TCE only in groundwater, and one has TCE only in groundwater and sub-slab gas. And their new expert opinions still present no evidence that TCE or chromium in groundwater under their properties has ever migrated *onto* their properties, especially since Plaintiffs disclaim their only causal theory on that point (vapor intrusion). *See* Reply SOF ¶¶ 49-57; *supra* pp 3-4. Groundwater thus cannot be a conduit for TCE or chromium to have moved onto Plaintiffs' properties.

As a result, Plaintiffs advance a new, legally meritless theory that they have a property interest in the state-owned groundwater itself. The State of Mississippi indisputably owns the groundwater under Mississippi Code § 51-3-1. As the State of Mississippi has explained to the U.S. Supreme Court, this statutory provision means that "[b]oth surface water and groundwater are regarded as property of the State of Mississippi."[6] The State, represented by the same counsel as

---

[6] Mississippi's Resp. in Opp'n to Defs.' Mots. for J. on the Pleadings at 10, *Mississippi v. Tennessee*, No. 143 (U.S. Apr. 6, 2016) (brackets in original) (quoting Richard J. McLaughlin, "Mississippi" in 6 *Water and Water Rights*, 712 (Robert E. Beck, Ed., 1991 ed., repl. Vol. 2005)) (Ex. 51).

Plaintiffs here, has similarly reiterated its sovereign authority over the groundwater in a parallel action against Defendants.[7] Individual landowners thus do not have a property interest in groundwater except to the extent that they use the groundwater, *see* Mem. 12-13, and Plaintiffs have admitted that they do not use the groundwater beneath their properties, *see* Reply SOF ¶¶ 70-72.[8] Tellingly, a Mississippi landowner who wishes to use the groundwater beneath his property for a particular purpose must obtain permission *from the State* to do so via a groundwater withdrawal permit. *Riverbend Utils., Inc. v. Miss. Env'tl Quality Permit Bd.*, 130 So. 3d 1096, 1102-06 (Miss. 2014). Plaintiffs simply assume—without citing evidence—that contamination in the groundwater must entail contamination in the soil beneath their homes. There is no basis for that claim here.

### 3. BTEX

Plaintiffs' sole theory that Textron caused BTEX contamination on their properties is to point to leaks from an underground gasoline storage tank at the Facility. That theory, too, is factually unsupported because Plaintiffs do not cite any admissible evidence that this tank leaked *during Textron's ownership* of the Facility.[9] But again, even assuming that theory were true, Plaintiffs do

---

[7]  Compl. ¶ 1, *Mississippi ex rel. Hood v. Meritor, Inc.*, No. 17-cv-84 PL (Miss. Ch. Ct., Grenada Cty., Apr. 7, 2017) (Ex. 52).

[8]  Plaintiffs cite two cases purporting to show that Mississippi law gives them a freestanding property interest in contaminated groundwater, *see* Opp'n 10-11, but both only highlight the flaw in Plaintiffs' attempt to claim groundwater contamination. *Board of Sup'rs of Clarke County v. Mississippi Lumber Co.*, 31 So. 905 (Miss. 1902), *pre-dates*, by over half a century, the enactment of the Mississippi statute that places ownership of the groundwater in the State, *see* Mississippi Code § 51-3-1, and Mississippi's permit system for granting licenses to use the State's groundwater. *See* Ex. 51 (Mississippi's Resp. in Opp'n to Defs.' Mots. for J. on the Pleadings at 9-10) (explaining that "[i]n 1985 Mississippi codified the public trust over all waters in Mississippi in its 'Omnibus Water Rights Act,' which" included Miss. Code § 51-3-1). *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168 (5th Cir. 1997), did not involve claims of contaminated groundwater alone, but instead involved claims for contamination of the plaintiffs' "soil and water beneath their properties," with evidence that vapor intrusion was possible—and the Fifth Circuit *affirmed* judgment on that nuisance claim because, as here, any "contamination is below the surface of their land and cannot be seen, smelled, or otherwise sensed." *Id.* at 171. Plaintiffs also cite *Ivory v. IBM Corp.*, 983 N.Y.S.2d 110 (N.Y. App. Div. 2014), which not only involved claims for contamination of the plaintiffs' *soil* as in *Bradley*, but also explicitly rejected Plaintiffs' argument here: "[Plaintiffs] cannot support trespass claims based on contaminated groundwater, because groundwater does not belong to the owners of real property, but is a natural resource entrusted to the state by and for its citizens." *Id.* at 117 (citations omitted).

[9]  The only admissible evidence Plaintiffs cite is the testimony of a former plant chemist at the facility, Garry Boyd, who testified only that a leaking unleaded gasoline tank was *removed* from the facility "sometime in '85." Boyd Dep.

not have any admissible evidence showing causation.  Plaintiffs claim that BTEX is present on some

of their properties, but they have no proof of how it ended up there given the undisputed fact that

there is no BTEX in any groundwater beneath their properties, *see* Reply SOF ¶¶ 49-57, and the

undisputed fact that groundwater does not and has never flowed from the Facility to under Plaintiffs'

nine properties, *see supra* pp. 6-7.  Plaintiffs' attempts to cite Defendants' experts to support this

theory only disproves it: Defendants' experts confirmed that there is no BTEX in the groundwater

under Plaintiffs' properties, *see* Reply SOF ¶¶ 49-57, and testified that any BTEX in the

neighborhood came from automobile exhaust—just as the EPA has also concluded.[10]

**II.      Each Of Plaintiffs' Claims Suffers From Claim-Specific Defects.**

> **A.      All Plaintiffs' Emotional Distress Claims Fail.**

Plaintiffs abandon their negligent infliction of emotional distress claim and concede that it

would require evidence of a future "injury that is medically cognizable. . . ." Opp'n 14.  Plaintiffs

offer no response to Textron's arguments that they lack such evidence.  *See* Mem. 17-18.

Instead, Plaintiffs defend only their claim for intentional infliction of emotional distress, but

Textron is entitled to summary judgment on this claim as well.  *See* Mem.  18 n.13.  Beyond the

fundamental problems with Plaintiffs' arguments described above (such as lack of admissible

evidence of causation), those arguments cannot support a claim for *intentional* infliction of emotional

distress.  The *most* that Plaintiffs' theories against Textron could hypothetically show is *negligence*

---

Tr. 137:17-20 (Ex. 10 to Opp'n). On its face, Boyd's testimony does not state that the leak occurred during Textron's period of ownership beginning on July 1, 1985, or whether the tank was even still in place as of that date. Plaintiffs' remaining evidence is inadmissible hearsay: emails from Meritor's private contractors Jim Peeples and Arcadis. Even if they were admissible against Textron, none of that evidence even purports to show that leaks from the underground gasoline tank—much less the *removal* of the tank—is the source of BTEX contamination in the neighborhood, especially when Plaintiffs have *no* BTEX in the groundwater beneath their properties.

[10]    *E.g.*, R. Machado Dep. Tr. 163:8-165:17, 167:11-168:13 (Ex. 53); Machado Rpt. at 19 (Ex. 48 to Textron's Mot. for Summ. J.); R. Powell Rpt. at 8 (Ex. 48 to Meritor's Summary Judgment Appendix); EPA Fact Sheet #9 (Ex. 32 to Textron's Mot. for Summ. J.) ("Chemicals related to gasoline, like benzene, xylenes, toluene, and 1,2,4-trimethylbenzene, were detected in the outdoor air in and around Eastern Heights.  These chemicals are common in the environment due to vehicle exhaust.").

in closing the equalization lagoon under an agreed order with the Mississippi Department of Environmental Quality or in removing a gasoline tank. Plaintiffs do not point to admissible evidence that Textron intentionally disposed of such contaminants anywhere—and thus cannot show that Textron "acted willfully or wantonly toward" Plaintiffs by engaging in conduct that was "outrageous in character." *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (Miss. Ct. App. 2017) (en banc).[11]

### B.      All Plaintiffs' Nuisance Claims Fail.[12]

Plaintiffs confirm that their nuisance claims are based solely on TCE "in the air" that is supposedly causing interference with Plaintiffs' use and enjoyment of their properties. *See* Opp'n 16. But Plaintiffs do not present any admissible evidence to contest their own expert's testing, which shows that there is *no* TCE in the background or indoor air of *any* Plaintiff's property.[13]  Plaintiffs merely cite the presence of TCE in the air *elsewhere* in Grenada—which cannot support *these Plaintiffs'* claims. Moreover, Plaintiffs offer no response on *causation*.[14]  Plaintiffs expressly abandon their vapor intrusion theory; their only vapor-intrusion expert has disclaimed any opinion that vapor intrusion is occurring at Plaintiffs' properties, *see supra* pp.3-4; and Plaintiffs have withdrawn their only air-emissions expert. Most importantly, Plaintiffs make no attempt to show how *Textron* caused any TCE in the air today, especially given Defendants' unrebutted expert evidence that historical TCE emissions would have evaporated from the air within weeks.[15]

---

[11]    Plaintiffs unsupported assertions that Textron supposedly "made no effort to ameliorate the danger to . . . its workers or the environment," Opp'n 14, has nothing to do with these Plaintiffs and thus cannot show that Textron "acted willfully or wantonly *toward*" *these* Plaintiffs. *Jones*, 228 So. 3d at 819 (emphasis added).

[12]    Plaintiffs concede that Textron is entitled to summary judgment on the nuisance claims of Betty Phillips and Alice Crumley because they "are not residents of Eastern Heights" and thus have not experienced any interference with the use and enjoyment of their property. Opp'n 16 & n.2.

[13]    Although Plaintiffs say "Textron's contention that 'there is no TCE in the outdoor air' is simply inaccurate," Opp'n 15, what Textron *actually* said is that "there is no TCE in the outdoor air *on their properties*." Mem. 19 (emphasis added).

[14]    Plaintiffs' entire response (including the deposition testimony from Plaintiffs they cite) is focused on the different question whether there *is* interference with Plaintiffs' use and enjoyment of their properties, rather than the argument raised by Textron's motion: whether Textron's conduct has *caused* that interference.

[15]    Plaintiffs state that "Defendants' experts . . . have identified the EQ lagoon as the most likely source of soil gas

III.    **Plaintiffs' Damages Theories Fail Under Mississippi Law.**

A.      **Plaintiffs Agree That They Cannot Seek Remediation And Replacement Costs.**

Plaintiffs agree that Textron is entitled to summary judgment on any claims for remediation or replacement costs because those costs "exceed the value of the properties of the Plaintiffs" and thus that their "damages are limited to the value of their properties." Opp'n 16.

B.      **Plaintiffs Do Not Present Any Evidence To Support The Need For Relocation.**

Plaintiffs do not respond at all to the lack of any factual basis for relocation. *See* Mem. 21. Plaintiffs concede that "the burden rests with Plaintiffs to establish that they are entitled to be relocated," Opp'n 17, but then do not point to any evidence from which a jury could find that relocation is needed. To the contrary, Plaintiffs' opposition merely asserts that they are entitled to the costs of relocation "*should relocation be determined necessary*." Opp'n 17 (emphasis added). Plaintiffs are not entitled to have a jury determine whether relocation is necessary absent presenting some admissible evidence at this stage to support that claim. Because Plaintiffs make no attempt to shoulder that burden, Textron is entitled to summary judgment. Indeed, Plaintiffs do not offer any response to the evidence affirmatively showing that relocation is not necessary, including that nine of the ten Plaintiffs have no TCE on their properties at all, none of the Plaintiffs have any TCE in their indoor or outdoor air, and the EPA's findings that "there is no immediate threat to public health" and that none of the EPA guidelines support temporary or permanent relocation here. Mem. 21.[16]

---

contamination in the Eastern Heights area." Opp'n 15. But the only evidence they cite for this statement is a *third-party* report from *Meritor*'s private contractor T&M. *See* T&M Rpt. (Ex. 22 to Opp'n) ("This letter is provided by T&M Associates, Inc. (T&M) on behalf of Meritor, Inc. (Meritor) …."). That is not proof against Textron.

[16]    The Court thus need not reach Textron's separate argument that the law prohibits recovery of relocation costs on top of diminished value, which is the only argument to which Plaintiffs offer a response. Textron would also be entitled to summary judgment on this ground as well. Plaintiffs' sole response is to point to Mississippi law allowing a landowner to recover "special and incidental damages" that are "separate, distinct and independent of the depreciation of the value of the property," such as "annoyance, discomfort, inconvenience and sickness," and to simply assert, without explanation or authority, that relocation costs fit into this category. Opp'n 17 (emphasis and citation omitted). The type of relocation costs envisioned by Plaintiffs—costs to relocate to entirely new replacement properties—are not "separate, distinct and independent of the depreciation of the value" of Plaintiffs' properties. The

**C.** **Plaintiffs Cannot Satisfy Their Burden Of Presenting Clear And Convincing Evidence To Support Their Punitive Damages Claim Against Textron.**

Plaintiffs offer virtually no argument for punitive damages. Plaintiffs agree that they must present "clear and convincing evidence that [Textron] acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." *Abel v. Allstate Prop. & Cas. Ins. Co.*, No. 4:14-cv-00064-DMB, 2015 WL 1292220, at \*4 (N.D. Miss. Mar. 23, 2015) (Brown, J.) (quoting Miss. Code § 11-1-65(1)(a)). The Mississippi Supreme Court "has only allowed punitive damages where the facts are highly unusual and the cases extreme," and Plaintiffs have not come close to presenting clear and convincing evidence that this is one of those "extraordinary" cases. *Bradfield v. Schwartz*, 936 So. 2d 931, 936-37 (Miss. 2006).

Plaintiffs do not present any evidence that Textron acted with actual malice or fraud toward Plaintiffs. Plaintiffs' only argument is a single assertion that "the record is replete with evidence that Textron did, in fact, cause contamination during its ownership of the plant, and that its actions were intentional and done, at a minimum, without regard for the foreseeable harm to others that might occur as a consequence"—without citing any evidence.

That is wrong for the reasons explained above. *See supra* Part I. And that lack of evidence tying Textron's conduct or contamination at the Facility to Plaintiffs' properties looms even larger in the context of punitive damages. Under the Due Process Clause, conduct that is "independent from the acts upon which liability was premised[] may not serve as the basis for punitive damages," and punitive damages may be awarded *only* for defendant's "conduct that harms the plaintiff," not

---

entire reason that Plaintiffs claim relocation costs is *because* they believe their homes' values have no worth and are uninhabitable. Plaintiffs do not cite any authority from any jurisdiction, much less Mississippi precedent, permitting recovery of relocation costs on top of the diminished value of their properties. Absent such authority from Mississippi appellate courts, this Court may "not create innovative theories of recovery or defense" under state law, *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 314 (5th Cir. 1998) (citation omitted), or "expand state law beyond its presently existing boundaries," *Barfield*, 212 F.3d at 272 (citations omitted).

merely what Plaintiffs view as "unsavory" conduct or conduct that harms third parties. *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 422-23 (2003).[17] Thus, Plaintiffs' kitchen-sink approach of theories about fraudulent concealment (which was dismissed, *see supra* note 3), the equalization lagoon, BTEX in the groundwater under the Facility, lead and arsenic on their properties, and so on could not constitutionally serve as the basis for punitive damages.

Stripped of those theories, all that Plaintiffs could possibly be left with is their claim that Textron emitted TCE into the air over twenty-five years ago. Even if they had admissible evidence to create a genuine issue of material fact on those theories (which they do not, *see supra* pp.3-4), that theory does not show "willful, wanton or reckless" conduct required for punitive damages. Plaintiffs concede that "willful or wanton conduct" "requires *knowingly* and *intentionally* doing a thing or a wrongful act" and that "more than mere negligence" is required. Opp'n 18 (emphasis added) (quoting, *inter alia*, *Collins v. City of Newton*, No. 2017-CA-00137-SCT, 2018 WL 1193549, at *8 (Miss. Mar. 8, 2018)). Plaintiffs do not present any evidence that Textron knowingly or intentionally contaminated any groundwater. *See supra* note 3. And there is no basis for holding that Textron's emissions of TCE into the air in accordance with EPA regulations, which Textron reported to the EPA, is grounds for punitive damages. *See* Reply SOF ¶ 21.

## CONCLUSION

The Court should grant Textron's motion for summary judgment on all of Plaintiffs' claims.

---

[17]   *See, e.g.*, *Cayne v. Wash. Trust Bank*, No. 2:12-cv-00584, 2015 WL 7185433, at *2 (D. Idaho Nov. 13, 2015) (conduct cannot be used to support punitive damages if it "is not the act upon which liability in this case is premised"); *Perez Librado v. M.S. Carriers, Inc.*, No. 3:02-cv-2095-D, 2004 WL 1490304, at *5 n.9 (N.D. Tex. June 30, 2004) (no punitive damages based on the defendant's safety violations other than those "that arguably caused the accident").

Dated: May 30, 2018

Respectfully submitted,

COUNSEL FOR TEXTRON INC.

*/s/ William L. Smith*

WILLIAM L. SMITH (MB No. 7635)
WALTER H. BOONE (MB. No. 8651)
BALCH & BINGHAM LLP
Suite 1400
188 East Capitol Street
Jackson, MS  39201-2133
Tel:  (601) 965-8175
Fax:  (888) 506-8673
Email: bsmith@balch.com
Email: wboone@balch.com


BARRY E. FIELDS, P.C.  (*pro hac vice*)
KIRKLAND & ELLIS LLP
3000 North LaSalle
Chicago, IL  60654
Tel:  (312) 862-2081
Fax:  (312) 862-2200
Email: barry.fields@kirkland.com

PETER A. FARRELL (*pro hac vice*)
KIRKLAND & ELLIS LLP
665 Fifteenth Street, N.W.
Washington, DC  20005
Tel:  (202) 879-5959
Fax:  (202) 879-5200
Email:  peter.farrell@kirkland.com

14

## CERTIFICATE OF SERVICE

I, the undersigned counsel, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

This the 30th day of May, 2018.

/s/ William L. Smith
WILLIAM L. SMITH (MB No. 7635)
BALCH & BINGHAM LLP
Suite 1400
188 East Capitol Street
Jackson, MS  39201-2133
Tel:  (601) 965-8175
Fax:  (888) 506-8673
Email: bsmith@balch.com