UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRENDA J. COOPER, ET AL.                                    PLAINTIFFS

versus                                         Civil Action No. 4:16cv52-DMB-JMV

MERITOR, INC., ET AL.                                       DEFENDANTS

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT
ON AFFIRMATIVE DEFENSE
OF APPORTIONMENT OF FAULT TO NON-PARTIES**

COME NOW Plaintiffs in the above-styled and numbered action and file this Supplemental Memorandum in support of their Motion for Partial Summary Judgment [Doc. 546] on the Affirmative Defenses plead by Defendants Meritor, Inc.; Rockwell Automation, Inc.; The Boeing Company; and Textron, Inc. which seek an Apportionment of Fault to persons or entities not joined in this action ("Non-Parties").

**Introduction**

In the Court's June 4, 2018 Order [Doc. 732], which denied Plaintiffs' motion for a continuance of the briefing period, the Court observed that Plaintiffs may move to supplement their briefing to the extent that supplementation is warranted by documents received from T&M Associates after the dispositive motion deadline, pursuant to Plaintiffs' motion to compel such production. Now, having had the opportunity to review the compelled documents, Plaintiffs file this Supplemental Memorandum to address the facts contained therein, and reasonable inferences arising therefrom, which implicate the issue of apportionment of fault.

Defendants' *Miss. Code Ann.* § 85-5-7 defense seeks to apportion fault for the contamination in the Eastern Heights neighborhood to non-parties and places the "origin" of such contamination squarely in issue. The compelled documents demonstrate that the Defendants conducted Compound Specific Isotope Analysis ("CSIA"), also known as "chemical fingerprinting," to determine the origin of the contamination in the Eastern Heights neighborhood, *i.e.,* whether the neighborhood contamination is attributable to Rockwell International Corporation ("Rockwell") or operation of the Grenada Manufacturing facility. However, under a claim of "consultant privilege" pursuant to Fed.R.Civ.P. 26(b)(4)(D), the Defendants have refused to produce the results of CSIA testing in this action and have, allegedly, withheld such test results from expert(s) who Defendants offer to testify that non-parties are allegedly responsible for contamination of the Eastern Heights neighborhood.

Rest assured, if the CSIA test results had been favorable to the Defendants' section 85-5-7 defense, then the Defendants would have produced the CSIA results, and their experts would be testifying about those results. Hence, the Court may draw a reasonable inference that the Defendants cannot chemically distinguish the contamination in Eastern Heights from contamination sources which are attributable to the Defendants. And, at a minimum, Defendants' alleged withholding of the CSIA test results from its testifying expert(s) undercuts the validity of the expert-based conclusions on which the Defendants rely for their section 85-5-7 defense, since Defendants possess no factual information establishing that any non-party caused or contributed to contamination in the Eastern Heights neighborhood.[1]

---

[1] *See, Ex. "1,"* page 96 of Transcript, Feb. 1, 2018 hearing on Plaintiffs' motion to compel (recognition by U.S. Magistrate Judge Jane N. Virden that James Peeples, who expresses "origin" opinions, may be cross-examined on the alleged fact that he has not reviewed CSIA test

## What is CSIA?

Compound Specific Isotope Analysis is an analytical method by which the ratio of stable isotopes contained in dissolved organic contaminants, such as chlorinated solvents, may be measured. *Ex. "2,"* EPA, *A Guide for Assessing Biodegradation and Source Identification of Organic Ground Water Contaminants using Compound Specific Isotope Analysis,* Dec. 2008, p. xi. Chemical spills may have isotopic "signatures" that can be used to associate a plume of contamination in ground water with a particular spill. *Id.* That is, CSIA may be used "to associate plumes of contaminants in ground water with their sources." *Id.*

"CSIA has been used successfully at a variety of sites to distinguish between contaminant releases which occurred at different times and places at complex spill sites. This knowledge can be used to identify the parties that were responsible for the contamination, and CSIA has been accepted as one line of evidence in litigation." *Id.* at 2 (citations omitted). Thus, "[i]sotope analysis is especially useful when there are multiple sources of the same ground water contaminants." *Id.* at 41.

## Facts Supplementing Plaintiffs' Motion

At the February 1, 2018 motion to compel hearing in this matter, Meritor's counsel attempted to minimize the role of James Peeples and T&M Associates in the CSIA work, likening T&M Associates to a vendor which only drew groundwater samples. *Ex. "1,"* Transcript Feb. 1, 2018, p. 90, 100 (on-the-record representations by Meritor counsel Timothy J. Coughlin that T&M Associates merely "stuck a straw in a can of soda pop and pulled it out ... [t]hat's all they

---

results).

3

did."). This mischaracterized, if not misrepresented, the level of involvement of T&M Associates and James Peeples in the CSIA work.

It appears that Mr. Peeples, not some consulting expert, originated the idea for CSIA testing as a means to compare the plumes in and outside of the Eastern Heights neighborhood. Mr. Peeples' handwritten note of May 16, 2017 states "[a]sk about CSIA for the EH vs Z04 plume." *Ex. "3,"* Peeples' note May 16, 2017 (T&M-ESI-1001517).

After that date, CSIA testing remained a topic of interest for the Defendants, as evidenced by Mr. Peeples' notes of a June 16, 2017 meeting at the Thompson Hine law firm with Ramjit Machado,[2] Laurie LaPat,[3] and attorneys or representatives for the Defendants. Mr. Peeples' June 16, 2017 note mentions "isotope ratio," questions whether "the residential plume [is] significantly different than the facility plume," and resolves to "[l]ook for locations to discuss [with] Lori [sic]." *Ex. "4,"* Peeples' note June 16, 2017 (T&M-ESI-1001533).

Probably due to the impending expert designation deadline, CSIA activities proceeded at a brisk pace after June 16, 2017. On June 27, 2017, Mr. Peeples received a table of wells which Ms. LaPat proposed be sampled for CSIA analysis as well as the "sampling protocol for collection and shipping of the groundwater samples for CSIA analyses.". *Ex. "5,"* Email June 27, 2017 (T&M-ESI-1076466); *Ex. "6,"* Email June 27, 2017 (T&M-ESI-1076469). Late on June 27,

---

[2] Ramjit Machado, an employee of Ramboll Environ, is designated as a testifying expert on behalf of the Defendants in this action.

[3] Laurie LaPat, who is also an employee of Ramboll Environ, is the alleged consulting expert retained by Defendants in this matter who received the results of the CSIA testing. Defendants have not designated Ms. LaPat to testify in this matter, even though they retained her firm Ramboll Environ and her co-employee Ramjit Machado for testimonial purposes. *Ex. "1,"* Transcript, p. 91.

4

2017 Mr. Peeples received word that "Meritor has approved the CSIA sampling as proposed," accompanied by expressions of gratitude from the lawyers at Thompson Hine for his efforts in connection with the CSIA testing. *Ex. "7,"* Email June 27, 2017 (T&M-ESI-1076481) ("Thank you for all your efforts, Jim."); *Ex. "8,"* Email June 28, 2017 (T&M-ESI-1076484) ("Jim - beyond a huge thanks for managing this fire drill. We are all very grateful.").

Further, Mr. Peeples' communications make it clear that T&M Associates billed for the CSIA work which T&M handled directly without involving any subcontractors. *Ex. "9,"* Email June 28, 2017 (T&M-ESI-1076490) ("The approval noted below by Joel was for $24,000 for the sampling effort that the group will be completing tomorrow. We do not have any subs other than equipment ... The laboratory is run through Ramboll ... let's just go ahead and set up a task for this if that is feasible ...").

Participants in the CSIA sampling included T&M Associates' employees Scott Blanchard, Becky Chavez, and Cindy Jacobsen; and Tamara House-Knight, an employee of Ramboll Environ. *Ex. "10,"* Email June 28, 2017 (T&M-ESI-1076491). That sampling was conducted at wells in and outside the Eastern Heights neighborhood on June 29, 2017. *Ex. "11,"* Groundwater Sampling Field Data log (T&M-ESI-1076594 to 1076609); *Ex. "12,"* Chain of Custody Record (T&M-ESI-1076634). T&M Associates promptly shipped the groundwater samples collected at the Grenada site *via* federal express to a laboratory located at the University of Oklahoma. *Ex. "13,"* Email July 21, 2017 (T&M-ESI-1076622).

On July 7, 2017, Laurie LaPat provided Mr. Peeples with a spreadsheet detailing "Wells Sampled for Compound Specific Isotope Analyses." *Ex. "14,"* Email and Spreadsheet, July 7,

5

2017 (T&M-ESI-1076562).  As indicated on the spreadsheet, sixteen (16) wells having the following location descriptions were sampled for CSIA analyses:

| "Plume Location Areas" | Number of Wells |
|---|---|
| "Facility Source" | 2 |
| "Facility Downgradient of Source" | 1 |
| "Further Downgradiant of Facility" | 1 |
| "Residential" | 4 |
| "Northern Upgradient" | 4 |
| "East Moose Lodge Road Area" | 2 |
| "Buffing Compound Disposal Area" | 2 |

*Ex. "14,"* Email and Spreadsheet, July 7, 2017.

Remarkably, despite the significant involvement of James Peeples and T&M Associates in postulating CSIA testing and conducting CSIA sampling, Mr. Peeples contends that he has not been provided any data or analysis relating to such testing.  Doc. 498-3, Affidavit of James Peeples.  Yet, Mr. Peeples does not hesitate to express an opinion that contamination in the Eastern Heights neighborhood is attributable to a source other than Rockwell or the Grenada Manufacturing facility.

## Conclusion

Plaintiffs respectfully submit that their Motion for Partial Summary Judgment on the issue of apportionment of fault to non-parties should be supplemented with the facts presented in this Supplemental Memorandum, and all reasonable inferences which may arise therefrom.

DATED this the 15th day of June, 2018.

Respectfully submitted by,

/s/ *William Liston*

**W. LAWRENCE DEAS** (MB #100227)
**WILLIAM LISTON** (MB #8482)
LISTON & DEAS PLLC
Post Office Box 14127
Jackson, MS 39216
Tel. (601) 981-1636
Fax. (601) 982-0371
william@listondeas.com
lawrence@listondeas.com

**MARQUETTE WOLF** (MB #104996)
**BEN TAYLOR**
**CHARLES BENNETT**
**TED LYON**
TED B. LYON & ASSOCIATES, P.C.
18601 LBJ Freeway, Suite 525
Mesquite, Texas 75150
Tel. (972) 279-6571
Fax. (972) 279-3021
mwolf@tedlyon.com

**STEVEN H. FUNDERBURG** (MB #9959)
FUNDERBURG SESSUMS & PETERSON PLLC
Post Office Box 13960
Jackson, MS 39236-3960
Tel. (601) 355-5200
Fax. (601) 355-5400
sfunderburg@fsplawfirm.com

**ALAN D. LANCASTER**
P.O. Box 645
Winona, MS 38967
Tel. (601) 283-2132
dlancaster@listonlancaster.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

This is to certify that I, William Liston, served a true and correct copy of the above and foregoing document on all counsel of record by transmitting the same *via* electronic mail and/or by filing the same with the ECF system established by the Court, which sent a copy of the same to all counsel of record.

This the 15th day of June,, 2018.

/s/ *William Liston*
William Liston