IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

BRENDA J. COOPER, et al.                                                                    PLAINTIFFS

V.                                                                           NO. 4:16-CV-52-DMB-JMV

MERITOR, INC., et al.                                                                       DEFENDANTS

**ORDER**

Before the Court in these consolidated cases is "Defendants Meritor Inc., The Boeing Company, and Rockwell Automation, Inc.'s Motion in Limine to Exclude Tetra Tech's Final Expanded Site Inspection Report, Revision 1." Doc. #706.

**I**
**Relevant Background**

These consolidated cases involve claims for property damage arising from decades of operation of a manufacturing facility ("Facility") in Grenada, Mississippi. The plaintiffs, all property owners or former property owners of land in Grenada's Eastern Heights subdivision, allege that the defendants negligently operated the Facility and that such negligence resulted in the contamination of Eastern Heights.

On July 3, 2017, Meritor, Inc., provided to the plaintiffs "Defendant Meritor, Inc.'s Seventh Supplement to its Initial Disclosures," which included an April 2017 "Final Expanded Site Inspection Report, Revision 1" prepared by Tetra Tech, Inc. According to the report, Tetra Tech was retained by the United States Environmental Protection Agency ("EPA") "to conduct an expanded site inspection (ESI)" at the Grenada facility site, and "[t]he primary objective of an ESI

is to evaluate whether a site has the potential to be included on the National Priorities List."[1] Doc. #618-2 at § 1.0. Information gathered during an ESI is used to generate a "preliminary Hazard Ranking System (HRS) score," which the EPA uses as "the primary criterion … to decide whether a site should be placed on the NPL." *Id*. This process involves, among other things, the evaluation of "current site conditions," "observed releases to the ground water," "surface water migration pathways," and "target populations for the ground water and surface water migration pathways." *Id*.

Of relevance here, the Tetra Tech Report includes an analysis of sampling conducted in and around the Eastern Heights neighborhood. The plaintiffs have relied on this document in numerous briefs related to dispositive and expert motions.

On May 29, 2018, Meritor, the Boeing Company, and Rockwell Automation, Inc. ("Meritor Defendants") filed a motion to exclude the Tetra Tech Report. Doc. #706. The plaintiffs responded in opposition to the motion on June 8, 2018. Doc. #734. The Meritor Defendants replied on June 15, 2018. Doc. #743.

## II
## Analysis

The Meritor Defendants argue that the Tetra Tech Report is inadmissible because "it does not meet the [Federal Rule of Evidence] 803(8) test for trustworthiness" and because "the unverified opinions of an EPA contractor" may create a "prejudicial effect … in these proceedings."[2] Doc. #707 at 4.

---

[1] Sites placed on the EPA's Superfund National Priorities List are "eligible for Federally funded remedial action." Doc. #734-2 at 2.

[2] Although less than clear, the Meritor Defendants also appear to argue that the use of the report, which Meritor itself disclosed, after the discovery and expert deadlines is somehow improper because they have not been given an opportunity to cross-examine the authors of the report. The Court is unaware of any authority which would support this position.

There is no dispute that the Tetra Tech Report is hearsay and thus inadmissible unless the plaintiffs can show that it falls under one of Rule 803's enumerated exceptions. *See United States v. Reed*, 908 F.3d 102, 120 (5th Cir. 2018) (proponent of evidence had burden to establish hearsay exception). There is also no dispute that the only exception relevant here is Rule 803(8), the exception governing the admissibility of public records.[3]

Rule 803(8) provides:

A record or statement of a public office [is not excludable under the rule against hearsay] if:

(A) it sets out:

(i) the office's activities;
(ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Under this rule, a proponent of a document must show that the document (1) was "prepared by a public office;" and (2) "set[] out information as specified in the Rule." Advisory Committee Note to Fed. R. Evid. 803(8). Once this is done, "the burden is on the opponent to show that the source of information or other circumstances indicate a lack of trustworthiness." *Id*.

The plaintiffs argue that the Tetra Tech Report falls under Rule 803(8)(A)(iii)'s exception for "factual findings from a legally authorized investigation." Doc. #734 at 5–6. The Meritor Defendants submit that the exception does not apply because the Tetra Tech Report (1) was

---

[3] In a footnote, the plaintiffs ask the Court to take judicial notice of the report. Doc. #734 at 10 n.6. Federal Rule of Evidence 201(b) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it … is generally known within the trial court's territorial jurisdiction; or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." For the reasons below, the Court concludes that the facts contained in the Tetra Tech Report are subject to reasonable dispute and, therefore, are not amenable to judicial notice.

3

prepared by an outside consultant, (2) represents preliminary findings, and (3) lacks indicia of trustworthiness. Doc. #707 at 3.

The Fifth Circuit has not clearly addressed the standards for determining whether a document is "prepared by a public office" within the meaning of Rule 803(8). It has, however, twice admitted under Rule 803(8) reports prepared by non-governmental entities.

First, in *United States v. Central Gulf Lines, Inc.*, 747 F.2d 315 (5th Cir. 1984) ("*Central Gulf I*"), the Fifth Circuit affirmed the admission of cargo survey reports and a shortlanding certificate prepared by an independent surveyor under the matters observed[4] provision of Rule 803(8). It held that to be admitted under the matters observed exception, "first, the person making the record observed the matters contained in the record firsthand pursuant to a duty imposed by law; second, the record is prepared pursuant to a duty imposed by law; and third, the documents and surrounding circumstances indicate trustworthiness." *Id*. at 319. The Fifth Circuit then held:

> To satisfy the first element … the record sought to be admitted must be made from matters within the personal knowledge of the public official making the record or his agent or someone with a duty to report the matter to a public official. Rule 803(8) does not require a public official to make the record.

*Id*. Applying these standards, the Fifth Circuit concluded the survey reports and shortlanding certificates fell under the matters observed exception. *Id*.

Eight years after *Central Gulf I*, the Fifth Circuit considered the admissibility of survey reports and quarantine certificates prepared by independent surveyors under the "factual findings"

---

[4] At the time *Central Gulf I* was decided, Rule 803(8) exempted from the rule against hearsay:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

provision of Rule 803(8).  *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 626–27 (5th Cir. 1992) ("*Central Gulf II*").  Noting "no significant difference between Rules 803(8)(B) and 803(8)(C)," the Fifth Circuit utilized the matters observed three-requirement test set forth in *Central Gulf I* to admit the reports and certificates.  *Id*. at 626 & n.10.

Notably, while both *Central Gulf I* and *Central Gulf II* considered non-governmentally-produced records, neither opinion squarely addressed what makes a report public within the meaning of Rule 803(8).  From the results of these decisions, it can be fairly presumed that a non-governmental report is public when the person preparing the report (1) personally observed the matters set forth in the report; and (2) had a duty to report the matters to a public official.  While this test is useful, it does not cover the vast majority of investigative reports, which "[a]s the name indicates, … embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge, required under most hearsay exceptions."  2 MCCORMICK ON EVID. § 296 n.16 and accompanying text (7th ed.) (collecting cases).

Case law on the public nature of third-party reports prepared without personal knowledge is limited.  District courts in the Second Circuit have taken a narrow view of the public nature of third-party reports by holding that reports prepared by non-governmental entities, even those authorized by law, do not fall within the public records hearsay exception.  *See Ricciuti v. N.Y.C. Transit Auth.*, 754 F.Supp. 980, 985 (S.D.N.Y. 1990) ("While this entity's services were requested by a public office or agency, the St. Germain Group is not a public office or agency itself …."), *judgment vacated on other grounds*, 941 F.2d 119 (2d Cir. 1991); *Watts v. City of Hartford*, No. 3:00-CV-681, 2004 WL 717132, at *4 n.9 (D. Conn. Mar. 31, 2004) ("Plaintiff contends that the study satisfies the public records exception under Rule 803(8), but the fact that the City

5

commissioned Buracker, pursuant to a municipal ordinance, to perform the study does not render the consulting group a 'public agency.'").

The Seventh Circuit has taken a slightly broader view of the exception, holding that to be deemed a public record or report, an investigative report must have been prepared by "the equivalent of government investigators." *United States v. Blackburn*, 992 F.2d 666, 672 (7th Cir. 1993). According to the Seventh Circuit, "a private company that conducts tests independently with its own equipment and prepares reports by itself based on those tests, even if at the instance of a governmental agency," is not the equivalent of a government investigator. *Id*. Largely consistent with the Seventh Circuit's view, a district judge in Rhode Island has held that a non-governmental report procured by a public agency may be admissible under Rule 803(8) if the agency "closely managed" the investigation. *United States v. Davis*, 826 F.Supp. 617, 621 (D.R.I. 1993).

In considering these approaches, this Court notes that the hearsay exception for public records is grounded on the "assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Advisory Committee Note to Fed. R. Evid. 803(8). This assumption, necessarily, is undermined when the person or entity preparing the report is not a public official. Given this, the Court, like the Seventh Circuit, concludes that a non-governmental report should be admissible under Rule 803(8) only when it has been prepared by "the equivalent of government investigators." This Court further concludes that this standard may be met when a public agency closely manages the relevant investigation. Having reached these conclusions, the question becomes: what rises to the level of a closely managed investigation?

In *Davis*, an EPA contractor report was held admissible under Rule 803(8) when:

> the EPA remained in charge of and closely involved with the Remedial Investigation at the Davis Site. EPA appointed the Remedial Project Manager ("RPM") for the Site as the primary contact between EPA and its contractor. EPA selected CDM in accordance with its requirements regarding the qualifications for Remedial Investigations. The field work and analysis were performed at the direction and under the guidance of EPA; proposed work plans were reviewed for conformity with EPA methodology and standards. This review included making sure that the contractor followed EPA's quality assurance/quality control guidelines for sampling and chemical analysis. EPA remained in close contact with its contractors during the remedial investigation, and required its contractors to submit regular reports concerning the project. Finally, EPA reviewed prior drafts of the RI Report for technical accuracy and compliance with the 1985 NCP, requiring all necessary changes and additions to ensure the report's accuracy.

826 F.Supp. at 621–22.

While the closely managed inquiry is necessarily fact specific, this Court believes that the factors considered in *Davis*, which related to an EPA site inspection similar to the one at issue here, are appropriate in this case. Accordingly, the Court will consider the admissibility of the Tetra Tech Report under the framework of *Davis*.

Here, there is no evidence of how the EPA selected Tetra Tech to conduct the ESI and whether such selection was in accordance with relevant requirements. Nevertheless, Tetra Tech was required to operate under a detailed EPA-approved quality assurance plan, which included numerous requirements regarding the collection and testing of materials. *See* Doc. #734-5. However, there is no evidence that the EPA remained in "close contact" with Tetra Tech or otherwise required Tetra Tech to "submit regular reports concerning the project." Indeed, the quality assurance plan governing the project made clear that "[f]ield and laboratory audits will not be conducted for this project." *Id*. at § 3.1. Finally, pursuant to the plan, any report submitted to the EPA would be subjected to a multi-level and detailed review. *Id*. In sum, while it appears the EPA maintained significant oversight at the beginning and late stages of Tetra Tech's investigation, there is no evidence of EPA involvement during the crucial middle stage. Under

these circumstances, the Court concludes that Tetra Tech was not the equivalent of a governmental investigator and that, therefore, its report may not be deemed a public record.[5] Accordingly, the motion to exclude will be granted.

### III
### Conclusion

"Defendants Meritor Inc., The Boeing Company, and Rockwell Automation, Inc.'s Motion in Limine to Exclude Tetra Tech's Final Expanded Site Inspection Report, Revision 1" [706] is **GRANTED**.

**SO ORDERED**, this 11th day of February, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[5] Having reached this conclusion, the Court declines to address the Meritor Defendants' remaining arguments for exclusion.