# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

**BRENDA J. COOPER, et al.**                                                                      **PLAINTIFFS**

**V.**                                                                  **NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., et al.**                                                            **DEFENDANTS**

## ORDER

Before the Court in these consolidated cases is the "Motion of Defendants Meritor Inc., The Boeing Company, and Rockwell Automation, Inc. to Exclude the Opinions and Testimony of Howard Herring." Doc. #542.

## I
## Relevant Background

These consolidated cases involve claims for property damage arising from decades of operation of a manufacturing facility ("Facility") in Grenada, Mississippi, by Meritor, Inc., the Boeing Company, Rockwell Automation, Inc., and Textron, Inc. The plaintiffs, all property owners or former property owners of land in Grenada's Eastern Heights subdivision ("Subdivision"), assert that the defendants negligently operated the Facility and that the negligence resulted in the contamination of Eastern Heights. The plaintiffs' amended complaint, which asserts claims for fraud, civil conspiracy, negligence, nuisance, and infliction of emotional distress, seeks recovery for, among other things, relocation costs. Doc. #43 at ¶ 76.

During discovery, the plaintiffs disclosed the expert report of Howard Herring, which estimates the relocation cost for forty-three homes in the Subdivision, including eight homes

owned by the plaintiffs.[1]  Doc. #542-1 at 3.  On May 7, 2018, Meritor, Boeing, and Rockwell ("Meritor Defendants") filed a motion to exclude Herring's opinions.  Doc. #542.  Textron joined the motion two days later.  Doc. #577.  The plaintiffs responded in opposition to the motion on May 18, 2018.  Doc. #614.   The Meritor Defendants replied on May 25, 2018.  Doc. #689.

## II
## Standard Governing Admissibility of Expert Opinions

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

A "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 896 F.3d 607, 625 (5th Cir. 2018).  "As long as there are sufficient indicia that an individual will provide a reliable opinion on a subject, a district court may qualify that individual as an expert." *Id*. (quotation marks omitted).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (internal alterations and quotation marks omitted).  "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v.*

---

[1] Herring did not include relocation costs for plaintiffs Alice Crumley and Betty Phillips who do not reside in the Subdivision.  *See* Doc. #543 at 1 n.1.

*Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal alterations and quotation marks omitted).

When evaluating reliability, *Daubert* dictates that trial courts should consider: (1) "the extent to which a given technique can be tested;" (2) "whether the technique is subject to peer review and publication; (3) "any known potential rate of error, the existence and maintenance of standards governing operation of the technique; and (4) "whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion*, 171 F.3d 308, 311–12 (5th Cir. 1999)).

In addition to the specific factors enumerated in *Daubert*, the Advisory Committee's Note to the 2000 Amendment to Rule 702 states that the following five "factors remain relevant to the determination of the reliability of expert testimony:"

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment (quotation marks and citations omitted).

Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

**III**
**Analysis**

Herring generated his report by utilizing "the same methodology that is generally accepted and typically followed to compute relocation assistance costs under the Uniform Relocation Assistance and Real Property Acquisitions Policies Act of 1970." Doc. #542-1 at 34. In drafting the report, Herring assumed the forty-three property-owning plaintiffs in these consolidated cases would be forced to relocate, and ultimately concluded each of them would need to construct a new home because there are only twelve comparable homes for sale in the Grenada area. *See id*. at 5, 17–18. Herring calculated the cost of the new homes by assuming standardized costs for each home of (1) $30,000 to purchase a lot; (2) $12,500 for landscaping and driveway costs; (3) $110 per square foot for construction of heated and cooled areas; (4) $55 per square foot for construction of non-heated and non-cooled areas; and (5) $6,350 for moving and incidentals. *Id*. at 17–20. Herring then determined the relocation expenses by taking the difference between the appraised unimpaired cost of the plaintiffs' homes (as determined by the plaintiffs' expert Dixie Clay) and the square footage cost of a new home, and then adding $48,850 for the lot, landscaping, driveway, and moving and incidentals costs. *Id*.

The Meritor Defendants argue Herring's report should be excluded because his opinions are irrelevant, prejudicial, and unreliable. Although the Meritor Defendants advance many arguments in support of these contentions, the Court need only address the most salient one—that Herring relied on a methodology irrelevant under Mississippi law.

In addition to its reliability requirements, "Rule 702 … requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotation marks omitted). Accordingly, expert testimony on damages not recoverable under law is properly excluded. *See, e.g*, *Kinnison v. City of San Antonio*, No. 08-cv-421, 2009 WL 3768442, at *3 (W.D. Tex. Nov. 5, 2009) ("If Plaintiff's expert testified on a measure of damages barred as a matter of law, then his testimony would be irrelevant and not of assistance to the trier of fact.").

Generally, under Mississippi law, where a plaintiff seeks to recover for pollution to his land, "the measure of damages of the owner of the land is the diminution of the market value of the property if the injury is of a permanent nature, or the diminution in the rental or usable value if the injury is of a temporary nature." *City of Oxford v. Spears*, 87 So.2d 914, 916 (Miss. 1956). Alternatively, when "the property may be restored to its former condition at a cost less than the value determined by the diminution of the value of the land, the cost of restoration of the property, plus compensation for the loss of its use, may be the measure of damages." *Sys. Fuels, Inc. v. Barnes*, 363 So.2d 747, 749 (Miss. 1978). In addition, the plaintiff may:

> recover such special damages as he may be able to prove. These special or incidental damages are elements of damage separate, distinct, and independent of the depreciation of the value of the property or of the depreciation of the rental or usable value of the property. Included in the category of special or incidental damages are annoyance, discomfort, inconvenience, and sickness. There may be others.

*Spears*, 87 So.2d at 916. (citation omitted). Special damages however must be reasonable and, like all forms of compensatory damages in Mississippi, may not result in unjust enrichment of the plaintiff. *See City of Jackson v. Filtrol Corp.*, 624 F.2d 1384, 1390 (5th Cir. 1980) ("[T]he City will be entitled to recover the costs of protecting the interceptor sewer line if it can show that those

5

costs were incurred as a direct result of the escape of Filtrol's acid into the City's right-of-way. Of course, the City will have to show that the costs it incurred were reasonable …."); *Wall v. Swilley*, 562 So.2d 1252, 1258 (Miss. 1990) ("Where, as here, the evidence partakes of valuation testimony as well as cost of repair testimony, the Court must be careful to assure that the plaintiff obtains no double recovery or unjust enrichment.").

The plaintiffs argue the costs for the new homes are recoverable as flowing from the defendants' alleged wrongful acts because:

> Plaintiffs' properties have been contaminated with known carcinogens that pose serious harm to the well-being of the residents of Eastern Heights. Plaintiffs cannot continue to safely remain in these residences. Further, due to the safety hazards and the reputation associated with the properties in Eastern Heights, the Plaintiffs' properties have been rendered effectively worthless. Due to the shortage of available replacement dwellings, the only option to make the residents of Eastern Heights whole is to construct new homes for each. While it is true that residents will receive newer homes of better quality, and higher value, than their old homes, this is the only way the plaintiffs can be made whole.

Doc. #614 at 16.

While this Court has not found Mississippi authority directly addressing the plaintiffs' arguments, the Mississippi Court of Appeals, in a contract action, has affirmed an award of damages based on the "forced … purchase [of] a replacement home at a greater price than the price required under the contract for the original home" where the plaintiff introduced expert testimony "reflecting the difference between the cost of the home contracted for and the cost of the replacement home, *after deducting the additional costs of higher value items in the replacement home.*" *Coastal Devs., Inc. v. Dedeaux*, 114 So.3d 764, 767 (Miss. Ct. App. 2013) (emphasis added). In light of this authority and Mississippi's general proscription against windfall recovery, and assuming without deciding that a plaintiff in a trespass or nuisance action may be able to recover costs associated with the compelled purchase of a replacement home, the Court concludes

that any such recovery must involve a deduction of higher value items in the proposed replacement home.

As explained above, Herring utilized a methodology derived from the Uniform Relocation Assistance and Real Property Acquisitions Policies Act of 1970 ("URA"), a statute with stated purposes of "establish[ing] a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance" and "ensur[ing] that such persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on such persons." 42 U.S.C. § 4621(b). Herring testified he had never before used the URA methodology for determining costs associated with environmental contamination and only did so because "[w]e were asked to do it by the client, and that's what we did." Doc. #542-2 at 160.

Herring's methodology, which is derived from a statute designed to compensate property owners for the loss of title of their properties (a circumstance not involved here), involved no deduction or consideration of higher value items. To the contrary, Herring's methodology actually produces higher awards for property owners whose property values are *less than* the values of their proposed replacement homes. *See* Doc. #542-1 at 19. This methodology would produce a measure of damages unrecoverable under Mississippi law. Accordingly, the opinions associated with it are excluded as irrelevant and unreliable for the specific purposes offered.[2]

---

[2] Herring's methodology of utilizing the URA to determine replacement damages would likely also be excludable generally as unreliable because there is no indication it represents a reliable methodology for determining relocation costs under the circumstances, and because Herring testified he only utilized it at the direction of counsel. *See Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 408 (6th Cir. 2006) ("We have been suspicious of methodologies created for the purpose of litigation, because 'expert witnesses are not necessarily always unbiased scientists.'").

7

**IV**
**Conclusion**

The Meritor Defendants' motion to exclude [542], joined by Textron [577], is **GRANTED**.

**SO ORDERED**, this 11th day of February, 2019.

                                              **/s/Debra M. Brown**
                                              **UNITED STATES DISTRICT JUDGE**