IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**BRENDA J. COOPER, et al.**                                                                                                       **PLAINTIFFS**

**V.**                                                                                                                      **NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., et al.**                                                                                                        **DEFENDANTS**

## ORDER

Before the Court in these consolidated cases is the "Motion of Defendants Meritor Inc., The Boeing Company, and Rockwell Automation, Inc. to Exclude the Opinions and Testimony of Michael Nicar." Doc. #548.

## I
## Background

These consolidated cases involve claims for property damage arising from decades of operation of a manufacturing facility ("Facility") in Grenada, Mississippi, by Meritor, Inc., the Boeing Company, Rockwell Automation, Inc., and Textron, Inc. The plaintiffs, all property owners or former property owners of land in Grenada's Eastern Heights subdivision ("Subdivision"), assert that the defendants negligently operated the Facility and that the negligence resulted in the contamination of Eastern Heights. The plaintiffs' amended complaint, which asserts claims for fraud, civil conspiracy, negligence, nuisance, and infliction of emotional distress, seeks recovery for numerous damages, including, of relevance here, "[e]motional distress secondary to Defendants' breach of duties resulting from Plaintiffs' fear of illness from exposure to contaminants released by Defendants, worry regarding Plaintiffs' property damage, resulting from Plaintiffs' distress related to impairment of their property values, and resulting from the stress of inconvenience and upheaval necessary for relocation." Doc. #43 at ¶ 77.

During discovery, the plaintiffs disclosed the expert report of Michael (Rusty) Nicar which "discusses and summarizes the adverse health effects that living in the vicinity of the Eastern Heights neighborhood presents to its residents, due to chemical exposure." Doc. #584-1 at 2. The report includes the conclusion:

> The Eastern Heights neighborhood has been contaminated with multiple organic chemicals and heavy metals, which are toxic to human health. Several chemicals that have been released into the vicinity of the industrial facility cause cancer. The chemical contamination was the result of years of industrial activity at the former Rockwell International/Randall Textron Plant facility in Grenada. Years of operation, waste disposal, and environmental emissions have left the residents in Eastern Heights exposed to hazardous chemicals in their air, soil, and water. Living indoors cannot protect the residents, rather, living indoors increases their exposure. The chemicals found by analysis can get into the body through air, soil and water. The residents have no way to escape or avoid these dangerous chemicals, except by moving away from this residential area. With respect to cancer, no amount or level can be considered safe (as per WHO).
>
> Some people that have been living in Eastern Heights could already have cancer and not be aware, from exposure to these chemicals. Some could have an illness or injury that will be with them for their life, and not yet be aware. These people will require medical monitoring for life, so that early diagnosis can help save their life and improve their quality of life. The specific exposure, that is, what chemicals are present, is not yet fully known. Further, it could change over time. Since many chemicals are present and subject to structure change, new chemicals will be forming in the soil. Hopefully, these new chemicals will be degradation products and harmless. However, some could be toxic and carcinogenic.

*Id*. at 7.

On May 8, 2018, Meritor, Boeing, and Rockwell ("Meritor Defendants") filed a motion to exclude the opinions offered by Nicar. Doc. #548. Textron joined the motion one day later. Doc. #582. The plaintiffs responded in opposition to the motion on May 18, 2018. Doc. #613. The Meritor Defendants replied on May 24, 2018. Doc. #688.

## II
## Standard Governing Admissibility of Expert Opinions

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 896 F.3d 607, 625 (5th Cir. 2018). "As long as there are sufficient indicia that an individual will provide a reliable opinion on a subject, a district court may qualify that individual as an expert." *Id.* (quotation marks omitted).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (internal alterations and quotation marks omitted). "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal alterations and quotation marks omitted).

When evaluating reliability, *Daubert* dictates that trial courts should consider: (1) "the extent to which a given technique can be tested;" (2) "whether the technique is subject to peer review and publication; (3) "any known potential rate of error, the existence and maintenance of standards governing operation of the technique; and (4) "whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id.* Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then

ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion*, 171 F.3d 308, 311–12 (5th Cir. 1999)).

In addition to the specific factors enumerated in *Daubert*, the Advisory Committee's Note to the 2000 Amendment to Rule 702 states that the following five "factors remain relevant to the determination of the reliability of expert testimony:"

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment (quotation marks and citations omitted).

Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

### III
### Analysis

In substance, Nicar's report involves three categories of opinions: (1) the presence and source of contaminants in the Subdivision, (2) the exposure of Subdivision residents to the contaminants, and (3) the health effects of the contaminants discussed in the report. The defendants seek exclusion of all such opinions.

### A. Subdivision-Specific Opinions

As quoted above, Nicar's report contains numerous opinions regarding both the presence of contaminants in the Subdivision and the source of such contaminants. The Meritor Defendants argue that "Nicar has no knowledge or evidence that there are, in fact, contaminants in the Subdivision, let alone on or under Plaintiffs' properties …." Doc. #549 at 6. They further contend that Nicar based his opinions on contamination in the Subdivision (as well as the related opinions as to source of such contaminants and the potential exposure of Subdivision residents) on a since-withdrawn report of Paul Rosenfeld. *Id*. at 5–7. The plaintiffs do not dispute that Nicar lacks knowledge regarding Subdivision-specific issues or that he relied on the withdrawn report. Rather, the plaintiffs argue that Nicar properly and "primarily relied on a live and reliable expert report prepared by Dr. James Brinkman et al to determine what toxic chemicals the plaintiffs were exposed to …." Doc. #613 at 12.

As this Court explained in its order addressing the Brinkman report, an expert may not parrot another expert's opinion when the subject relates to an issue in the case and is not a cut-and-dried procedure. *See* Doc. #850 at 35 (citing *Dura v. Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002)). The issues discussed by Nicar—the existence, exposure and source of contamination on the plaintiffs' properties in the Subdivision—are both related to issues in this case and, as the massive number of pages of briefing on the subjects suggest, are not cut and dried. Accordingly, to the extent Nicar's report parrots the opinions of other experts, his repetition of such opinions will be excluded.

### B. Health Effects of Contaminants

The Meritor Defendants argue Nicar's opinions regarding the health effects of the contaminants discussed in his report should be excluded because Nicar is unqualified to discuss

5

them, because his methods were unreliable, and because the opinions are irrelevant and unhelpful. The Meritor Defendants also seek exclusion of these opinions as unduly prejudicial.

1. **Qualifications**

Generally, "it is an abuse of discretion for a trial court to exclude expert testimony solely on the ground that the witness is not qualified to render an opinion because the witness lacks expertise in specialized areas that are directly pertinent to the issues in question, if the witness has educational experiential qualifications in a general field related to the subject matter of the issue in question." 4 WEINSTEIN'S FEDERAL EVIDENCE § 702.04.

After earning his Bachelor of Science in Environmental Science from Lamar University, Nicar completed three post-graduate degrees: a Master of Science from Lamar University in 1975; a Master of Science in Environmental Science with an emphasis on toxicology[1] from the University of Texas at Dallas in 1976; and a Ph.D. in Environmental Science from the University of Texas at Dallas in 1981. Doc. #548-1 at 2; Doc. #613-3. In 2002, he earned a certification in epidemiology from the Centers for Disease Control. Doc. #613-2 at 164–65. In the more than thirty-five years since completing his Ph.D., Nicar has held numerous academic and private positions in the field of toxicology and related research. *See* Doc. #613-3. Nicar's work is focused on laboratory work and testing samples for various substances, including drugs and toxins. *See* Doc. #548-1 at 2–3; Doc. #548-2 at 39–41. He has performed no specific studies, written no articles, and reviewed no articles, on the chemicals at issue in this action. *See* Doc. #548-2 at 34–36, 42–44.

Given his experience, the Meritor Defendants argue Nicar is unqualified to offer opinions on the impact of the relevant chemicals because he "is not a degreed epidemiologist or

---
[1] Doc. #613-2 at 38.

toxicologist" and because his "experience working in laboratories and pathology departments … does not make him qualified to opine on epidemiological issues and risk involving chemicals that he has never studied." Doc. #549 at 3, 14–15. The plaintiffs do not squarely address the Meritor Defendants' arguments but contend generally that Nicar's extensive experience qualifies him as an expert on the health risks of the various chemicals here. Doc. #613 at 2–4.

As an initial matter, notwithstanding the Meritor Defendants' argument to the contrary, there can be no serious dispute that Nicar is a well-qualified toxicologist both by education and experience. Not only did his coursework focus on toxicology but he has worked as a toxicologist for more than three decades. However, Nicar's status as a toxicologist does not, standing alone, render him qualified to testify on all matters related to toxic substances. *See generally Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[S]imply because a doctor has a medical degree does not make him qualified to opine on all medical subjects."). Rather, the Court must gauge whether Nicar's "qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2003).

In his report, Nicar opines on the general health risks associated with the chemicals trichloroethylene ("TCE"), toluene, benzene, vinyl chloride, and chromium VI. "Toxicology is the science of poisons," and the field is "primarily concerned with identifying and understanding the adverse effects of external chemical and physical agents on biological systems." *Coene v. 3M Co.*, 303 F.R.D. 32, 55 (W.D.N.Y. Sept. 11, 2014) (quotation marks omitted) Accordingly, "toxicology training generally qualifies [an expert] to testify on the toxicity of a given agent." *Medalen v. Tiger Drylac U.S.A., Inc.*, 269 F.Supp.2d 1118, 1129 (D. Minn. 2003). Given this case law, and Nicar's experience and education in toxicology, the Court concludes that, notwithstanding

7

his general lack of experience with the chemicals mentioned in his report, Nicar is qualified to opine on the general toxicity of such chemicals.

## 2. Reliability

The Meritor Defendants argue Nicar's opinions are unreliable because he failed to conduct a dose-response inquiry for any of the chemicals mentioned in his report and that such an inquiry is a prerequisite for a causation opinion. Doc. #549 at 20–21. The plaintiffs respond that a dose-response relationship is only required "where proving medical causation was required under the plaintiffs' claims" and that "in nuisance cases based on claims of environmental contamination … experts are routinely permitted to testify to potential dangers to human health and safety associated with alleged contamination." Doc. #613 at 12–13.

While, as explained below, the plaintiffs are correct that toxicity may be relevant to nuisance claims, the plaintiffs cite no authority, and this Court is aware of none, which ties the reliability of an expert's opinion to the elements of a plaintiff's case. To the contrary, the reliability of an expert's opinion depends on the methods the expert utilized to reach the relevant opinions. *Bazany*, 507 F.3d at 318. In this regard, Nicar has offered a general causation opinion that the various chemicals discussed have the capacity to cause adverse health effects. *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012) ("General causation is whether a substance is capable of causing a particular injury or condition in the general population …."). Thus, the Court must decide whether Nicar employed reliable methods to reach his general causation conclusion.

With regard to general causation, the Fifth Circuit has observed that "[s]cientific knowledge of the harmful level of exposure to a chemical" is a "minimal fact" necessary for establishing causation. *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 199 (5th Cir. 1996). Here, Nicar testified that, but for his belief there was no minimal level of exposure for cancer risks arising from

benzene and TCE, he was unaware of the minimal level of exposure for any health effect referenced in his report. *See* Doc. #548-2 at 83–85. In the absence of opinions on threshold exposure levels, Nicar's opinion is unreliable to the extent it renders a general causation opinion as to any chemical effect other than the carcinogenic effects of TCE and benzene.

### 3. Relevance and Helpfulness

The Meritor Defendants argue that "[w]ithout determining a dose-response relationship, Nicar's opinions [on the health effects of the chemicals] are nothing more than irrelevant, general statements that there is a possible risk that the chemicals of interest may cause a disease, at some level, at some point, somewhere." Doc.# 549 at 10. The plaintiffs respond that the toxicity of the chemicals has created fear of future injury and, therefore, is relevant to their claims for emotional distress. Doc. #613 at 5–7. The plaintiffs also contend that the chemicals' toxicity is relevant to their nuisance claims because "the presence of dangerous chemicals … has affected the plaintiffs' private use and enjoyment of their land, and thus plaintiffs' potential damages" and is relevant to their trespass claims "because the presence of dangerous chemicals … has damaged the plaintiffs' property and affected the property value." *Id*. at 8–9.

The Mississippi Supreme Court[2] has held that an "award of damages for emotional distress allegedly caused by a fear of future illness" may be recoverable but that "manifestation of physical illness or scientific support for the emotional injury is required …." *Paz v. Brush Engineered Materials, Inc.*, 949 So.2d 1, 5 (Miss. 2007) (discussing *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So.2d 648 (Miss. 1995)). Under this standard, "if one is to recover for emotional distress

---

[2] There is no dispute that the law of the forum state, in this case Mississippi, governs the substantive issues in this diversity case. *Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018).

9

predicated on potential future illness there must be substantial proof of exposure and medical evidence that would indicate possible future illness."[3] *Ferguson*, 662 So.2d at 658.

Mississippi courts have also considered the health effects of chemicals to be relevant to the issue of damages in trespass and nuisance actions. For example, in *Phillips v. Davis Timber Co., Inc.*, the Mississippi Supreme Court held in a trespass action that the presence of toxins at lethal levels could require restoration damages. 468 So.2d 72, 79 (Miss. 1985). Similarly, in *Hollingsworth v. Hercules, Inc.*, a trespass and nuisance action, United States District Judge Keith Starrett allowed an expert to testify "regarding the risk of illness from exposure to contaminants at various concentrations" because "according to Plaintiffs' own testimony and their expert appraisals, the human health risks of exposure to the alleged contaminants is relevant to the value of Plaintiffs' properties …." No. 2:15-cv-113, 2017 WL 27976, at *1–2 (S.D. Miss. Jan. 3, 2017). Additionally, while the plaintiffs have not cited a case for the proposition, the Court assumes without deciding that the presence of toxic chemicals would be relevant to a plaintiff's nuisance claim so long as the toxicity would constitute a nuisance under Mississippi law by interfering with the plaintiff's "interest in the use and enjoyment of his property." *See generally Biglane v. Under the Hill Corp.*, 949 So.2d 9, 14 (Miss. 2007) (discussing elements of nuisance action).

Thus, the health risks associated with contamination on a plaintiff's property is likely relevant under Mississippi law to show emotional distress related to exposure, loss of property value based on contamination, and interference of enjoyment with property. However, it does not necessarily follow from this conclusion that Nicar's general opinions on the contaminant's health

---

[3] While this Court has not found Mississippi authority establishing a threshold for possibility in this context, other courts have employed standards ranging from requiring evidence showing the illness is "more likely than not" to evidence showing a reasonable or "rational" fear of the evidence. *See, e.g., Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 817 (Cal. 1993) (applying more likely than not standard for negligence claims and "reasonable fear" standard for claims based on malice); *Prato v. Vigliotta*, 253 A.D.2d 746, 748 (N.Y. Ct. App. 1998) (plaintiff must show "rational basis" for fear). The Court need not reach the proper threshold for possibility here.

effects would be relevant or helpful in this case. To the contrary, because "there are safe exposures levels of many substances normally considered 'dangerous,' … *to say that a chemical agent is capable of causing a disease … without some reference to a particular dose, would be incoherent*." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 342 F.Supp.3d. 791, 799–800 (E.D. Tenn. 2018) (emphasis added).

Nicar's report does not opine on the threshold at which concentrations of the relevant chemicals become hazardous or whether such concentrations exist in the Subdivision, much less on the plaintiffs' specific properties. Nicar has simply opined that the various chemicals discussed have varying health risks at various concentrations. While Nicar testified that there was no safe concentration for TCE or benzene with respect to cancer, he testified that due to the proliferation of benzene, all Americans are exposed to the contaminant and that the only way to differentiate the risks associated with everyday exposure from the risks of contamination on a given property would be to consider the nature of the dose. *Id*. at 193–94. Nicar made a similar statement with respect to TCE. *See id*. at 137–38. Given this, the Court concludes that Nicar's opinions have absolutely no relation to the health risks associated with the contaminants allegedly located in the Subdivision. Accordingly, while health risks associated with contamination on the plaintiffs' properties may be relevant, Nicar's opinion would neither make the existence of health risks more likely nor assist the jury in making such a determination. For these reasons, his opinions on health risks must be excluded.

### 4. Prejudice

Rule 403 of the Federal Rules of Evidence provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

"[O]nly unfair prejudice, substantially outweighing probative value ... permits exclusion of relevant matter under Rule 403." *United States v. Barnes*, 803 F.3d 209, 221 (5th Cir. 2015). Because "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it[,] … the judge in weighing possible prejudice against probative force under Rule 403 … exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

The Court has concluded that Nicar's opinions regarding the potential health effects of the contaminants have no probative value. Furthermore, the Meritor Defendants argue, and this Court agrees, that general statements of health effects of contamination without quantifying the actual risk of such effects occurring would substantially prejudice the defendants. Even if the opinions had marginal probative value, such value would be substantially outweighed by the prejudice associated with the evidence. Accordingly, Nicar's opinions are also properly excluded under Rule 403.

### IV
### Conclusion

The Meritor Defendants' motion to exclude [548], joined by Textron [582], is **GRANTED**. **SO ORDERED**, this 11th day of February, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**