**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**BRENDA J. COOPER, et al.**                                    **PLAINTIFFS**

**V.**                                                    **NO. 4:16-CV-52-DMB-JMV**

**MERITOR, INC., et al.**                                      **DEFENDANTS**

## ORDER

 This environmental case is before the Court on numerous motions in limine filed by the parties.

## I
## Procedural History

 On March 16, 2016, Brenda Cooper, Sylvia Caffey, Margaret Odems, Bernice Richardson, Dora Ward, Rosie Brady, Pearl Seldon, Betty Phillips, Alice Crumley, and Sylvia Cunningham filed a complaint in the United States District Court for the Northern District of Mississippi against Rockwell International Corporation and the Randall Division of Textron, Inc. Doc. #1. On June 30, 2016, United States Magistrate Judge Jane M. Virden consolidated the case with four member cases[1] for purposes of discovery and motion practice.[2] Doc. #41. The day after consolidation, the plaintiffs filed an amended complaint against Meritor, Inc., Rockwell Automation Inc., The Boeing Company, and Textron, Inc. Doc. #43.

 In the amended complaint, the plaintiffs, residents or former residents of the Eastern Heights neighborhood ("Subdivision") in Grenada, Mississippi, seek damages for injuries to their homes and property caused by the operation of a neighboring industrial facility ("Facility"). The

---

[1] *Sledge, et al. v Meritor, Inc., et al.*, No. 4:16-cv-53; *Cooke, et al.* v. *Meritor, Inc., et al.*, No. 4:16-cv-54; *SRA Investments, LLC, et al. v. Meritor, Inc., et al.*, No. 4:16-cv-55; *Willis, et al. v. Meritor, Inc., et al.*, No. 4:16-cv-56.

[2] The motions addressed in this order, however, were filed only in the lead case.

plaintiffs allege that the Facility was operated by (1) Rockwell International Corporation, the predecessor to Rockwell Automation, Inc., which itself is a predecessor to The Boeing Company, from 1965 until 1985; and (2) Randall Wheel Trim, a subsidiary of Textron, Inc., from 1985 until the present. Doc. #43 at 1–6, 9. The plaintiffs also allege that the Facility, which was used to manufacture chrome-plated wheel covers, utilized numerous chemicals, including hexavalent chromium and trichloroethylene ("TCE"), and that these chemicals were illegally dumped into the environment, including the air and groundwater, with the defendants concealing such disposal.

In preparation for trial, Meritor, Boeing, and Rockwell ("Meritor Defendants") filed eight motions in limine. Docs. #757, 759, 761, 765, 768, 770, 772, 774. Textron filed a single omnibus motion in limine, Doc. #763, as did the plaintiffs, Doc. #780. The briefing period for all motions in limine has concluded.

## II
## Motion in Limine Standard

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *Harkness v. Bauhaus U.S.A., Inc.*, No. 3:13-cv-00129, 2015 WL 631512, at *1 (N.D. Miss. Feb. 13, 2015).

"The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground …." *Leonard v. Stemtech Health Scis., Inc.*, 981 F.Supp.2d 273, 276 (D. Del. 2013). Accordingly, "the court may deny a motion in limine when it lacks the necessary specificity with respect to the evidence to be excluded." *Id.* In this regard, "[e]videntiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Id.*

### III
### Meritor Defendants' Motions in Limine

The Meritor Defendants filed nine separate motions in limine seeking to exclude, respectively: (1) references to evidence relating to punitive damages, Doc. #757; (2) references to the Environmental Protection Agency's National Priorities List, Doc. #759; (3) certain statements of residents and former residents of the Subdivision and of former workers at the Facility, Doc. #761; (4) the testimony of Shay Harris, Doc. #765; (5) undisclosed and unsupported expert opinions, Doc. #768; (6) various pieces of allegedly prejudicial evidence, Doc. #770; (7) the testimony of undisclosed witnesses, Doc. #772; (8) additional pieces of allegedly irrelevant evidence, Doc. #774; and (9) evidence related to "stigma," Doc. #776.

### A. Punitive Damages

The Meritor Defendants argue that "[t]he Mississippi Legislature has provided a substantive right to a bifurcated trial" and that "[b]ased on that right, evidence related to the punitive damages phase is not admissible during the liability phase of trial." Doc. #758 at 3. The Meritor Defendants thus seek exclusion from the liability and compensatory damages phase of trial "[a]ny evidence of the Defendants' alleged bad character, that the Defendants acted recklessly, were grossly negligent, acted in bad faith, or intentionally concealed facts from regulatory agencies …." *Id*. The plaintiffs do not dispute that punitive damages evidence is inadmissible during the liability and compensatory damages phase but contend that certain evidence related to punitive damages, such as "evidence that the Defendants acted recklessly, intentionally, or with gross negligence, or that the Defendants concealed certain facts relating to hazardous wastes" is properly admitted during the liability phase as "probative of the elements of the causes of action asserted by Plaintiffs." Doc. #782 at 5.

This Court has previously explained that the Mississippi state statute requiring bifurcation of a punitive damages phase does not compel bifurcation in federal court. *Dykes v. Cleveland Nursing & Rehab. Ctr.*, No. 4:15-cv-76, 2018 WL 2967627, at *2 (N.D. Miss. June 12, 2018). However, this Court, in the exercise of its discretion, has determined that trial in this case should be bifurcated into a liability and compensatory damages phase and a punitive damages phase. Where a district court has exercised its discretion to bifurcate a punitive damage phase, it follows that evidence relevant only to an award of punitive damages is irrelevant at other stages. *See, e.g.*, *Landrum v. Conseco Life Ins. Co.*, No. 1:12-cv-5, 2014 WL 28861, at *3 (S.D. Miss. Jan. 2, 2014). Of course, evidence otherwise relevant to liability or compensatory damages is not rendered inadmissible merely because it is also relevant to the issue of punitive damages. *Bossier v. State Farm Fire & Cas. Co.*, 2009 WL 3281128, at *1–2 (S.D. Miss. Oct. 9, 2009).

The Meritor Defendants appear to base their motion only on the erroneous assumption that "evidence related to punitive damages issues" should be excluded. Doc. #758 at 3. This argument includes no discussion of the potential relevance of such evidence to the plaintiffs' claims. This omission is particularly glaring where at least one of the plaintiffs' claims —intentional infliction of emotional distress—requires an inquiry into the egregiousness of a defendant's conduct. *See Speed v. Scott*, 787 So.2d 626, 630 (Miss. 2001) ("To justify a finding that [intentional infliction of emotional distress] has occurred, the defendant's conduct must be wanton and wilful and it would evoke outrage or revulsion."). Because the defendants have failed to show that any evidence related to the egregiousness of their conduct will not be admissible for any purpose, their motion in limine regarding punitive damages will be denied.

## B. EPA National Priorities List and Related Comments

The Meritor Defendants seek to exclude: (1) out-of-court statements by Franklin Hill, an Environmental Protection Agency ("EPA") Regional Superfund Director; and (2) evidence related to the Facility's proposed listing as an EPA Superfund site, also known as a listing on the National Priorities List ("NPL").

### 1. Hill statements

The Meritor Defendants argue that statements made by Hill criticizing the EPA's remediation efforts should be excluded as inadmissible hearsay and as unfairly prejudicial. Doc. #760 at 8–9. The plaintiffs respond that the probative value of the statements outweighs any unfair prejudice and that the statements, which were allegedly made at a community meeting in Hill's official capacity as director, are admissible under the public records exception to the hearsay rule. Doc. #787 at 4–5. The Meritor Defendants did not respond to this argument.

The Federal Rules of Evidence exempt from the rule against hearsay:

A record or statement of a public office if:

(A) it sets out:

    (i) the office's activities;
    (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
    (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

(B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

At common law, the public records exception applied only to written hearsay but rule 803(8) refers to "statements" as well as "records," and hence could be interpreted to allow the reception of oral statements. However, the advisory committee's note contains no indication of intent to broaden the exception in this respect, and its reference to "the unlikelihood that [the public official] will remember details independently of the record'

as a justification for the exception suggests that the committee was envisioning recorded hearsay."

Roger Park, *A Subject Matter Approach to Hearsay Reform*, 86 MICH. L. REV. 51, 122 n.79 (1987) (citations omitted). Consistent with this analysis, courts have held that Rule 803(8) does not apply to oral statements. *See Quiles v. Sikorsky*, 84 F.Supp.2d 154, 162 (D. Mass. 1999) ("[T]he government document exception is of no use here because Thach's statements relate what was told to him personally [by government officials], rather than reflecting government documents he has seen that are independently admissible."); *Little v. Commissioner*, T.C.M. 1996-270 (T.C. 1996) ("[W]e think the phrase a 'statement … by a public agency' does not include an oral statement by an individual agency employee; instead, we think it refers to a more formal, written document which was reviewed, approved, or subject to a clearance process of some sort that transforms it from a statement by an employee of an agency to a statement 'by' the agency."). The Court agrees with this authority and concludes that an oral statement of an agency representative does not qualify as a public record. Accordingly, the motion in limine will be granted with respect to Hill's public statements.

## 2. National Priorities List

The Meritor Defendants argue that evidence related to the Facility's listing on the NPL should be excluded under Federal Rule of Evidence 403 as unfairly prejudicial because "a site being listed on the NPL does not assign liability to a party. It does not even confirm that remediation is necessary."[3] Doc. #760 at 4–7. The plaintiffs respond that the "Final Support Document [listing the Facility] contains a number of statements and findings by the EPA that

---

[3] The Meritor Defendants also argue the evidence should be excluded because the listing was proposed, rather than final. Doc. #760 at 4–6. After the motion was filed, the listing was finalized. Doc. #819-2.

provide critical clarification on the [actual] positions that have been taken by the agency" and that "[t]hese statements and findings … relate directly to … pending matters."  Doc. # 858 at 3.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "[O]nly unfair prejudice, substantially outweighing probative value … permits exclusion of relevant matter under Rule 403." *United States v. Barnes*, 803 F.3d 209, 221 (5th Cir. 2015) (emphasis omitted).  In this regard, "Rule 403 is rarely appropriate as a basis of *pre-trial* exclusion, because a judge cannot ascertain potential relevance until that judge has a virtual surrogate for a trial record." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 747 (3d Cir. 1994).

In considering the parties' arguments, the Court acknowledges that the existence of a NPL listing should ordinarily be excluded in a toxic tort case "as inherently prejudicial and of marginal relevance." *O'Dell v. Hercules, Inc.*, 687 F.Supp. 450, 453–54 (E.D. Ark. 1988).  However, as argued by the plaintiffs, it is not the probative value of the listing itself that justifies admission but the *reasons* for the listing set forth in the Final Support Document.  These reasons, which include opinions on numerous issues relevant to this litigation independent of any liability determination, hold an indisputably high probative value in this action.[4]  This probative value far outweighs the risk of unfair prejudice, which this Court believes can be cured by a proper limiting instruction.

_____

[4] In a supplemental brief filed with the Court's leave, the Meritor Defendants argue that some of the opinions included in the Final Support Document are "noticeably qualified" with words like "may," "possibly," and "could."  Doc. #860 at 6.  While some opinions in the Final Support Document are qualified, many are not.  Because the probative value of the qualified opinions is necessarily reduced, limited redactions of the Final Support Document may be warranted.  The Court defers questions related to specific statements in the Final Report Document, including issues of redaction, for trial.

Accordingly, the motion in limine will be denied to the extent it seeks exclusion of evidence relating to the Facility's NPL listing.

## C. Former Statements

Citing the rule against hearsay, the Meritor Defendants move to exclude certain out-of-court statements made by residents and former residents of the Subdivision and by former employees of the Facility. Doc. #761. The plaintiffs respond that "[w]ith the exceptions o[f u]tilizing the … statements … at trial to establish the witness's recorded recollection under [Federal Rule of Evidence] 803 (5) or to impeach the witness, Plaintiffs will not offer into evidence the … statements or use the same at trial." Doc. #790 at 2.

There is no dispute that hearsay may be introduced for impeachment purposes. *See* Fed. R. Evid. 613. And, a former statement of a witness is admissible despite the rule against hearsay when it (1) "is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;" (2) "was made or adopted by the witness when the matter was fresh in the witness's memory;" and (3) "accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). The Meritor Defendants did not argue that the challenged statements would be inadmissible for impeachment purposes or as recorded recollections.[5] Accordingly, the motion in limine will be denied to the extent it seeks exclusion of the statements for such purposes.

## D. Testimony of Shay Harris

The Meritor Defendants seek exclusion of the trial testimony of Shay Harris, a paid advocate for the plaintiffs, on the grounds that Harris is biased and lacks personal knowledge about the case. Doc. #765.

---

[5] The plaintiffs are cautioned that "impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible." *Whitehurst v. Wright*, 592 F.2d 834, 839 (5th Cir. 1979).

As an initial matter, the Meritor Defendants cite no authority, and this Court is aware of none, which holds that the bias of a witness requires exclusion from trial. To the contrary, the weight of authority holds that the bias of a witness is properly considered by the factfinder. *See, e.g.*, *Dietz v. Consolidated Oil & Gas, Inc.*, 643 F.2d 1088, 1094 (5th Cir. 1981) ("[A]s an interested witness, it is for the jury to evaluate the credibility of his testimony."); *Jones v. Prod. Mgmt. Indus. L.L.C.*, No. 04-0102, 2006 WL 6899664, at *1 (E.D. La. July 21, 2006) ("As to plaintiff's complaint that Dr. Applebaum is biased or prejudiced in his medical practice, such information is grist for the cross examination mill."); *Lee v. City of Dallas*, No. 3:05-cv-0226, 2006 WL 8437466, at *4 (N.D. Tex. July 10, 2006) ("There is no legal basis that requires a court to exclude the testimony of an interested witness."). Accordingly, Harris' bias does not provide a basis for exclusion.

With regard to Harris' personal knowledge, the plaintiffs submit that "Harris has personal knowledge of the Eastern Heights subdivision, meetings with EPA personnel in Grenada County, Mississippi, interactions with the media concerning the Grenada Facility and the contamination associated with the Grenada Facility, information concerning the Plaintiffs' retention of their attorneys and other potentially relevant information." Doc. #785 at 3. They argue this knowledge is relevant to this case because the Meritor Defendants have "announc[ed] that they will attempt to question the Plaintiffs … about the details and circumstances of the retention of the Plaintiffs' attorneys and/or the suspension of attorney Reid Stanford." *Id*. at 3–4. More broadly, the plaintiffs argue that "it is currently unknown what role … Harris may play at the trial of this matter" and that "[t]he Defendants' motion is an obvious attempt to glean information about the Plaintiffs' trial strategy." *Id*. at 3.

The plaintiffs are correct that they are under no obligation to provide to the defendants a summary of Harris' testimony in order to defeat the motion in limine. To the contrary, and as quoted above, the movant seeking exclusion must show that the proffered evidence is inadmissible on all possible grounds. *Leonard*, 981 F.Supp.2d at 276. Here, the defendants have moved to exclude Harris from testifying on any possible subject relevant to this action. This Court is in no position to conclude that Harris, an investigator who has inquired into the issues surrounding this litigation, is unable to testify on any possible subject. Accordingly, the motion in limine will be denied. *See Bryant v. Trexler Trucking, Inc.*, No. 4:11-cv-02254, 2013 WL 643768, at *8 (D.S.C. Feb. 21, 2013) (allowing proffer at trial where motion and response were "unclear as to what other reason, if any, Plaintiff may call" a witness).

### E. Expert Testimony

The defendants seek to exclude from trial undisclosed expert opinions and "evidence of, testimony regarding, or reference to scientific issues unsupported by expert opinion." Doc. #769 at 10.

#### 1. Undisclosed opinion testimony

The Meritor Defendants argue the plaintiffs "should be precluded from referencing or introducing evidence related to the unsubstantiated, tardy opinion [that a] 'leaky gas tank' or anything else from the Facility [was] the source of any alleged BTEX on or in Plaintiffs' properties." Doc. #769 at 8. They contend that "[t]his new, speculative opinion was not in any expert report, nor was any supplement provided …." *Id*. The plaintiffs respond that the motion amounts to an untimely *Daubert* motion and is "premature or moot." Doc. #796 at 3–4, 8.

As an initial matter, the Meritor Defendants seek exclusion of the BTEX-related opinions as a discovery sanction under Federal Rule of Civil Procedure 37(c), *see* Doc. #769 at 7, not under

Federal Rule of Evidence 702 or under *Daubert*. Thus, the motion is not a *Daubert* motion and is not untimely. *See Isola USA Corp. v. Taiwan Union Tech. Corp.*, No. 2:12-cv-1361, 2015 WL 12555874, at *2 (D. Ariz. Aug. 13, 2015) (Rule 37 motion not *Daubert* motion); *see generally Dinenno v. Lucky Fin Water Sports, LLC*, No. 08-5903, 2011 WL 689584, at *3 n.8 (D.N.J. Feb. 17, 2011) (noting motion was not *Daubert* motion when it did "not attack [witness'] qualifications, methodology, or application of scientific principles to the facts of th[e] case").

With regard to the motion's timeliness, the plaintiffs argue the motion is "premature or moot until such time as the plaintiffs call any witness to address BTEX or attempt to offer any opinions regarding BTEX and the Court is able to consider such proffer in context." Doc. #796 at 8. While, generally "motions in limine should be narrowly tailored to address issues which will likely arise at trial,"[6] the plaintiffs cite no authority for the proposition that a court must wait until an actual proffer to rule on the admissibility of evidence. Such a rule would preclude the filing of motions in limine in their entirety. Rather, as quoted above, an in limine ruling may be appropriate when a movant shows that a piece of evidence is inadmissible on all possible grounds.

Rule 37 is clear that the failure to adequately disclose an expert opinion precludes admission of the opinion at trial "unless the failure [to disclose] was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Meritor Defendants seek exclusion of a broad class of opinions (undisclosed opinions related to BTEX from the Facility) but have failed to identify any specific opinion they are seeking to exclude. Without such identification, this Court is in no position to conclude whether the alleged failure to disclose was substantially justified or harmless. Because the Court is unable to make such a determination, the motion in limine will be denied in this regard.

---

[6] *Estate of Wilson v. Mariner Health Care, Inc.*, No. 2:07-cv-55, 2008 WL 5255819, at *1 (N.D. Miss. Dec. 16, 2008).

## 2. Unsupported opinions

The Meritor Defendants represent that they "believe that Plaintiffs may attempt to introduce evidence or testimony related to vapor intrusion …, alleged air contamination, and the source of any alleged chemical contamination on any Plaintiff's property." Doc. #769 at 9. They contend any evidence related to these issues "would be mere speculation" because the plaintiffs "withdrew their only air modelling expert" and the plaintiffs' "vapor intrusion expert, [James] Fineis, admitted in his sworn testimony that he could not opine on any vapor intrusion pathway for any Plaintiff's property, nor could he opine on the source of any alleged contamination underneath or in any Plaintiff's property." *Id.* Put differently, the Meritor Defendants seem to argue that because the plaintiffs lack the ability to establish causation with respect to air contamination or vapor intrusion (air contamination in buildings), all such evidence should be excluded.

The Meritor Defendants are correct that the plaintiffs withdrew their only air modeling expert. Furthermore, this Court recently excluded Fineis' opinions related to vapor intrusion. Doc. #850 at 73. While the lack of an air modeling expert and the exclusion of Fineis' opinions will undoubtedly present problems in the plaintiffs' case, the Meritor Defendants made no effort to support their conclusory assertion that the plaintiffs are unable to prove causation in the absence of such evidence, and the Court is disinclined to preclude a large portion of the plaintiffs' case based on a skeletal argument. Indeed, as discussed in more detail below, Mississippi law allows a plaintiff to show causation with regard to air contamination without the aid of expert testimony. Accordingly, the motion in limine will be denied.

## F. "Unfairly Prejudicial Evidence, Testimony and Arguments"

The Meritor Defendants seek exclusion of certain arguments and evidence as unfairly prejudicial.

### 1. "Criminal," "evil" or "similar phrases"

The Meritor Defendants argue that "religious and moral discussion" should be excluded from trial because it "will suggest to jurors that they apply a standard of judgment beyond that required by law and should not be permitted." Doc. #771 at 3–4. The plaintiffs respond that "[w]hether any words used in argument or otherwise at trial are prejudicial depends on the context in which they are used and the evidence to which such words refer. Therefore, a contemporaneous objection during trial is the better and more appropriate means to assuage the Defendants' concern." Doc. #793 at 2. The plaintiffs also argue that some evidence relates to alleged criminality of the defendants' conduct and that this evidence goes to the "perceived egregiousness of Defendants' conduct, which would be pertinent to the Plaintiffs' claim for intentional infliction of emotional distress." *Id*. at 3.

As discussed above, evidence (as distinct from argument) generally should not be excluded pre-trial as unduly prejudicial because Rule 403 balancing is more appropriate with an evidentiary record. Thus, to the extent the Meritor Defendants seek exclusion of evidence related to criminality, the Court will deny the motion in limine.

With regard to argument, it is axiomatic that "[t]he jury may not return a verdict based on personal interest, bias or prejudice and an argument asking it to do so is improper." *Caudle v. District of Columbia*, 707 F.3d 354, 359 (D.C. Cir. 2013). Thus, "attempts to appeal to a juror's bias or to prejudice a particular party, as well as statements made suggesting jurors apply a 'higher

authority' are inappropriate."[7]  *Whitfield v. Harris*, 474 F.Supp.2d 822, 823 (N.D. Miss. 2007).

However, not all references to religion are necessarily improper appeals.  *See generally United States v. Marron*, 658 F. App'x 692, 694 (5th Cir. 2016) ("The prosecutor's reference to the 'devil' was rhetorical rather than an improper religious reference or a targeted attack; the prosecutor did not directly refer to counsel or Marron or depict them as demonic but quoted a purported aphorism that the prosecutor believed to embody his argument that the jury should not be distracted by irrelevant issues.").

Given this authority, the Court does not believe that a wholesale ban on moral or religious words is appropriate.  Rather, the Court will decide the propriety of such references based on the context of their use.[8]  The motion in limine, therefore, will be denied in this respect.

### 2.  "Environmental justice"

The Meritor Defendants seek exclusion of evidence and testimony "as to the concept of 'environmental justice,'" which they contend is an "appeal to the personal interest and bias of a jury …."  Doc. #771 at 4.  The plaintiffs respond that "a request to the jury to render justice for the Plaintiffs in this environmental case, whether phrased as 'environmental justice' or not, does not constitute a prohibited Golden Rule argument."  Doc. #793 at 4.

A prohibited "Golden Rule" argument asks "jury members to put themselves in the shoes of the plaintiff and do unto him as they would have done unto them under similar circumstances."

---

[7] The plaintiffs cite Mississippi state law allowing references to religion in argument in Mississippi courts.  Doc. #793 at 3–4 (citing *Johnson v. State*, 416 So.2d 383, 391 (Miss. 1982)).  At least one federal decision in this state has cited the same authority for denying a motion in limine regarding such references.  *See Francois v. Colonial Freight Sys., Inc.*, No. 3:06-cv-434, 2007 WL 4564866, at *8 (S.D. Miss. Dec. 21, 2007).  However, federal law governs the propriety of arguments in diversity cases.  *See, e.g., Zeigler v. Seaboard Coast Line R. Co.*, 437 F.2d 80, 81 (5th Cir. 1971) ("The control by the trial court of counsel's conduct during an opening argument is a matter of trial procedure controlled by federal law in diversity cases."); *Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1228 (8th Cir. 1995) ("Although this is a diversity action, we conclude that questions concerning the permissible scope of the parties' closing arguments are procedural issues that are governed by federal law.").

[8] The Court cautions counsel that patently improper references will result in the risk of sanctions.

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 180 (5th Cir. 2005) (quotation marks omitted). While "there is no universally accepted definition of environmental justice," the "concept … involves a grassroots movement that fights for the equal treatment of citizens with respect to protections under environmental, health, energy, and land use regulations. In general, the movement questions environmental decisions of private industry and governmental bodies that have potentially serious equity implications …." Nicholas C. Christiansen, *Environmental Justice: Deciphering the Maze of a Private Right of Action*, 81 Miss. L.J. 843, 844–45 (2012) (footnote and quotation marks omitted). Put differently, the concept of environmental justice argues that decisions (whether public or private) resulted in unfair treatment to a group of people. This notion, which is the crux of the plaintiffs' case, in no way invokes the Golden Rule. Accordingly, the motion in limine will be denied to the extent it seeks exclusion of the term "environmental justice."

### 3. Other environmental sites

The Meritor Defendants "request that the Court prohibit Plaintiffs from introducing any evidence, arguing, referring to, or commenting on Flint, Michigan, Erin Brockovich, or any other environmental site" on the grounds that such evidence is irrelevant and unfairly prejudicial. Doc. #771 at 6. The plaintiffs, relying on state law, argue they should be "afforded wide latitude in … analogizing the evidence introduced in this action to other well-known instances of contamination, such as that involved in the popular *Erin Brockovich* movie …."[9] Doc. #793 at 5.

As explained above, state law does not govern the propriety of arguments in federal court. Accordingly, the Court gives no weight to plaintiffs' contention that references to other toxic tort

---

[9] The Court takes judicial notice of the fact that the *Erin Brockovich* movie is a well-known film depicting a toxic tort action in California. *See Weiss v. DreamWorks SKG*, No. 14-2890, 2015 WL 12711658, at *3–4 (C.D. Ca. Feb. 9, 2015) (taking judicial notice of content of films).

cases would be allowed under state law. Federal courts have generally excluded references to unrelated instances of similar conduct. *See, e.g., Gomez v. City of Chicago*, No. 13-C-05303, 2015 WL 13651138, at *9 (N.D. Ill. June 29, 2015) (in police misconduct case, excluding "evidence [and] arguments about other allegations of police misconduct"); *In re Homestore.com, Inc.*, No. 01-11115, 2011 WL 291176, at *12 (C.D. Cal. Jan. 25, 2011) (granting motion to "exclude evidence or references to unrelated corporate 'scandals', such as the Enron scandal or the Madoff scandal"). The Court sees no reason to depart from this general approach and, therefore, will grant the motion in limine in this regard.[10]

### 4. References to "hazardous waste"

The Meritor Defendants argue that the EPA did not codify the term "hazardous waste" until 1985 and that, therefore, the Court should exclude reference "to 'hazardous waste' as to the Facility's waste streams *before* the existence of regulatory definitions and requirements." Doc. #771 at 8. The plaintiffs and Textron object to this request. Doc. #800 at 1–4; Doc. #793 at 6–7. Textron argues that the phrase "hazardous waste" existed before 1985 and that if the motion in limine were granted "the jury would only hear that Textron produced 'hazardous waste,' when in fact the same chemicals were utilized, and the same waste produced, under both the Meritor Defendants' and Textron's ownership of the Facility." Doc. #800 at 1–2. The plaintiffs argue that "[i]t is of little consequence whether any federal regulation declared the … waste products to be hazardous, because the employees … had actual knowledge that the wastes were hazardous." Doc. #793 at 6.

---

[10] The plaintiffs argue that to the extent the "Defendants open the door to information about 'other sites'" by asserting a "state of the art" defense, introduction of such evidence may appropriate. Doc. #793 at 5. Should the defendants' present their case in such a way that evidence or argument to other sites becomes relevant, the plaintiffs may seek reconsideration of this ruling.

"[T]he fact that a term-of-art meaning exists does not preclude a common meaning of that phrase." *See Solely v. Wasserman*, No. 08-civ-9262, 2013 WL 3185555, at *7 (S.D.N.Y. June 21, 2013). Accordingly, when a term has both a legal and common meaning, pre-trial exclusion is inappropriate. *Id.* However, if at trial the common use of the term "appears to be confusing or unduly prejudicial, the Court may [exclude] or provide a limiting instruction." *Id.* Following this approach, since the term "hazardous waste" has both common and legal meanings, the Court will deny the Meritor Defendants' motion in limine.

### 5. Control, payment, or influence regarding EPA and MDEQ

The Meritor Defendants seek to exclude as unduly prejudicial evidence or argument that the defendants or their lawyers have exerted improper influence over the EPA and the MDEQ. Doc. #771 at 8–9. The plaintiffs respond that they will not offer evidence that the EPA or MDEQ have been paid but contend that, to the extent the defendants intend to offer evidence of EPA and MDEQ actions, the plaintiffs are entitled to call into question the motivation for such decisions. Doc. #793 at 7–9. The Court agrees with the plaintiffs.

It is axiomatic that evidence is admissible "if it tends to show bias [of a witness] in favor of or against a party." *United States v. Martinez*, 962 F.2d 1161, 1165 (5th Cir. 1992). Similarly, evidence of bias is admissible to call into question the bases for government action which is relevant to a claim or defense. *See, e.g.*, *Graham v. Bennett*, No. 04-2136, 2007 WL 781763, at *1 (C.D. Ill. Mar. 12, 2007) (evidence of bias of authors of government investigatory report admissible). To the extent the defendants rely on actions taken by the EPA or the MDEQ, such as the issuance of various reports, the plaintiffs are entitled to call into question the motivation for such actions.[11]

---

[11] Of course, the plaintiffs may not make arguments the facts do not support.

### 6.   Former employment of attorneys with MDEQ and EPA

The Meritor Defendants, citing unfair prejudice, seek exclusion of references that certain attorneys for Butler Snow—a firm representing the Meritor Defendants—formerly worked for the MDEQ or the EPA.  Doc. #771 at 10–11.  The plaintiffs respond that "[s]uch relationships are relevant, particularly on the issue of bias of the witnesses at trial, and it would be unfair to prevent Plaintiffs from establishing such biases."  Doc. #793 at 9.

This Court has concluded that the potential influence of the defendants and their counsel over the MDEQ and EPA represents a relevant issue for trial.  To the extent the former employment of certain attorneys for the Meritor Defendants establishes connections between the defendants and the MDEQ and the EPA, the probative value of such employment outweighs any unfair prejudice.  Accordingly, the motion in limine will be denied in this respect.

### 7.   Jimmy Palmer and Grenada Manufacturing

The Meritor Defendants seek to exclude, as unfairly prejudicial, references to or arguments that Grenada Manufacturing, LLC (the company responsible for remediation at the Facility), or its attorney, James (Jimmy) Palmer (a former attorney at Butler Snow, the EPA, and the MDEQ), were influenced or controlled by the defendants or their attorneys.  Doc. #771 at 11–12.  For the same reasons above, the Court concludes that, to the extent the plaintiffs are entitled to inquire into bias, they may inquire about any bias of Palmer and Grenada Manufacturing.  The motion in limine, therefore, will be denied.

### 8.   Other sites, litigation, or claims relating to the defendants

The Meritor Defendants seek exclusion of references "to any other sites, litigation, or claims relating to Defendants and environmental matters not related to the Grenada Manufacturing Facility."  Doc. #771 at 13.  The plaintiffs do not oppose this request insofar as it relates to litigation

or claims but contend that the motion should be denied to the extent it seeks exclusion of references to "other sites" because such references are appropriate for argument under Mississippi law and because they may be relevant to rebutting a "state of the art" defense. Doc. #793 at 11.

For the same reasons above, the Court concludes that references to other sites would be inappropriate under federal law. Additionally, the Court declines to decide the admissibility of such evidence based on a hypothetical defense. Accordingly, the motion in limine will be granted to the extent it seeks exclusion of references to other sites, litigation, claims, and environmental matters unrelated to the Facility.[12] *See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 994 (3d Cir. 1996) (affirming exclusion of "other site" evidence).

### 9. Negligent infliction of emotional distress

The Meritor Defendants seek exclusion of references to claims for negligent infliction of emotional distress. The plaintiffs do not oppose this request. Doc. #793 at 11–12. Accordingly, the motion will be granted in this regard.

### 10. Summary

The motion in limine premised on unfair prejudice will be granted in part and denied in part. The motion will be granted to the extent it seeks exclusion of evidence or argument related to other environmental sites and litigation and to the extent it seeks exclusion of references to claims for negligent infliction of emotional distress. The motion will be denied in all other respects.

### G. Undisclosed Witnesses

The Meritor Defendants seek exclusion of ten witnesses allegedly included in the plaintiffs' preliminary trial witness list but undisclosed in the plaintiffs' initial disclosures. Doc. #773 at 2–

---

[12] To the extent the defendants open the door to such evidence, the plaintiffs may seek reconsideration of this ruling.

4.  In the alternative, the Meritor Defendants seek a court order requiring that the undisclosed witnesses make themselves available for interviews. *Id*. at 4.  The plaintiffs respond that "[o]f the ten named witnesses, only three (3) actually appear on the witness list submitted by Plaintiffs — Gary Boyd, Mark Williams and Diane Seldon."  Doc. #797 at 1.  With regard to these three witnesses,[13] the plaintiffs argue exclusion is inappropriate because they had no duty to supplement as to Boyd and Williams, and because the failure to supplement as to Seldon was harmless. *Id*.

Of relevance here, Federal Rule of Civil Procedure 26(a)(1)(A)(i) provides:

> Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties: … the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

Pursuant to Federal Rule of Civil Procedure 26(e)(1):

> A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> (B) as ordered by the court.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  The burden of showing a disclosure requirement under Rule 26 rests with the party seeking exclusion. *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 242 (D. Nev. 2017).  If this

---

[13] All ten names identified by the Meritor Defendants appear on the proposed witness list submitted with the Meritor Defendants' motion. *See* Doc. #772-2.  The Court presumes the plaintiffs submitted a revised list omitting certain names.

burden is met, the burden of showing substantial justification or harmlessness rests with the offending party. *Agence France Presse v. Morel*, 293 F.R.D. 682, 685 (S.D.N.Y. 2013).

### 1. Boyd and Williams

The plaintiffs represent that they had no duty to supplement their initial disclosures with regard to Boyd and Williams because the transcripts of Boyd and Williams had been initially disclosed by Boeing, and "[t]he transcripts … are the <u>only</u> information, other than documents <u>produced to Plaintiffs by Defendants</u>, related to Mr. Boyd or Mr. Williams that have been made a part of the discovery record in this case." Doc. #797 at 2.

The initial disclosure requirements of Rule 26(a)(1), which require the disclosure of people *with discoverable information*, are distinct from the pretrial disclosure requirements of Rule 26(a)(3), which require the *disclosure of witnesses for trial*. *See* Fed. R. Civ. P. 26(a)(3). The Meritor Defendants appear to conflate these two rules by arguing that the plaintiffs were required to supplement their initial disclosures with every person they intended to call as a witness. Were this the rule, Rule 26(a)(3) would be meaningless. Rather, of relevance here, the plaintiffs were only required to supplement their initial disclosures to add those persons with discoverable information *who were not already known* to the defendants. There can be no serious argument that Boyd and Williams, persons actually disclosed by the defendants, fall into such a category. Accordingly, the Court concludes that the plaintiffs were under no duty to supplement their initial disclosures to add Boyd and Williams and that, therefore, exclusion of the two witnesses would be inappropriate.

### 2. Diane Seldon

On August 21, 2018, following the death of plaintiff Pearl Seldon, Judge Virden granted an unopposed motion to substitute Diane Seldon as a plaintiff in her role as administratrix of Pearl

Seldon's estate. Doc. #792. The plaintiffs appear to concede a Rule 26(a) violation with respect to Diane Seldon but argue that the failure was substantially justified or harmless

> given (1) her recent addition as a party as a result of her mother's death; (2) the importance of having her testimony available to the jury regarding her claims and the potential prejudice she would suffer if not permitted to testify; (3) the lack of any potential prejudice to defendants, who have already had a full opportunity to depose her.

Doc. #797 at 4.

In considering whether a Rule 26 violation is harmless, a court should consider four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Bailey v. Shell W. E&P Inc.*, 609 F.3d 710, 729 (5th Cir. 2010) (internal quotation marks omitted). Here, all four factors weigh in favor of a finding of harmlessness.

First, there is no question that the testimony of a party is important to that party's case. Second, insofar as it is undisputed that Diane was deposed, the Court sees no prejudice to the defendants. To the extent such prejudice exists, it was alleviated by the approximately eight-month continuance this Court granted after the Meritor Defendants filed this motion to exclude. Finally, the Court credits Diane's explanation that the failure to supplement was caused by the circumstances surrounding her substitution. Accordingly, the Court concludes that any failure to supplement with respect to Diane Seldon was harmless and that exclusion of her testimony is inappropriate. To the extent Diane has already been deposed, the Court sees no reason to order that she be made available to the defendants for interview.

## H. Irrelevant Evidence Challenges

The Meritor Defendants also seek to exclude fifteen categories of evidence as irrelevant or unfairly prejudicial.

### 1. "Reference to contamination 'of the neighborhood' or Subdivision as a whole, as opposed to Plaintiffs' specific properties"

The Meritor Defendants argue that references to contamination of the Eastern Heights subdivision as a whole is irrelevant or unduly prejudicial because each individual plaintiff must show contamination on his or her property. Doc. #775 at 19–21. The plaintiffs do not dispute that they are required to show contamination on their individual properties but argue that "[r]eferences … to the neighborhood as a whole are only necessary because a substantial portion of the evidence in this case … includes such references and contain language couched in such manner." Doc. #794 at 2–3.[14]

The Court agrees with the plaintiffs. While references to generalized contamination in Eastern Heights would not, standing alone, satisfy any of the plaintiffs' burdens in this case,[15] the standard for relevance is not whether a given piece of evidence is case dispositive. Rather, a piece of evidence is relevant so long as it makes a material fact "more or less probable than it would be without the evidence." Fed. R. Evid. 401. The Court is in no position to conclude that each and every reference to contamination in the Subdivision as a whole has no tendency, in context, to make a material fact more or less probable. Furthermore, insofar as the Court intends to properly instruct the jury on the elements of the plaintiffs' claims, the Court finds the risk of confusion of

---

[14] The plaintiffs also argue that the community-wide contamination is relevant to the extent it relates to the plaintiffs' damages model which is based on a remediation plan for the neighborhood as a whole. Doc. #794 at 4. However, this damages model has been rejected by the Court. *See* Doc. #853 at 7–9.

[15] *See Prescott v. Leaf River Forest Prods., Inc.*, 740 So.2d 301, 310 (Miss. 1999) ("Where a claimant alleges trespass as a result of chemical discharges, the burden lies with the claimant to prove an actual physical invasion of the subject property.").

such references to be minimal.  *See Dale v. Ala Acquisitions I, Inc.*, 398 F.Supp.2d 516, 522 (S.D. Miss. 2005) ("Appropriate instructions (as well as plaintiffs' counsel) should readily resolve any possible confusion.").  For these reasons, the motion in limine will be denied to the extent it seeks to exclude references to contamination or threats of contamination in the Subdivision as a whole.

## 2.  Waste outside Moose Lodge Road Area

The Meritor Defendants argue that evidence related to disposal of waste at locations geographically distant from the Moose Lodge Road Area ("MLRA")[16] is both irrelevant and unduly prejudicial.  Doc. #775 at 21–22.  The plaintiffs respond that such evidence is relevant "to establish the Defendants' habit and routine with regard to their waste disposal practices, including how the Defendants disposed of their solid waste; the volume of solid waste which the Defendants dumped; and most importantly, the types of solid waste that the Defendants dumped."  Doc. #794 at 5.  The Meritor Defendants contend that "the various sites, times and other circumstances are so disparate" as to preclude a finding of routine practice.  Doc. #775 at 22 n. 8.

> Under the Federal Rules of Evidence:
>
> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406.

> To obtain a Rule 406 inference of the routine practice of a business, a plaintiff must show a sufficient number of specific instances of conduct to support that inference. Evidence of the defendant's actions on only a few occasions or only in relation to the plaintiff are not enough; the plaintiff must show regularity over substantially all occasions or with substantially all other parties with whom the defendant has had similar business transactions.

---

[16] The Moose Lodge Road Area is a designation used in this litigation to refer to a large section of land to the west of the Subdivision and the Facility.  *See* Doc. #850 at 3.

*Mobil Exp. & Producing U.S., Inc. v. Cajun Constr. Servs., Inc.*, 45 F.3d 96, 99–100 (5th Cir. 1995) (citations and footnotes omitted). "[E]vidence of a routine practice is highly probative … and persuasive." *Id*. at 99 (footnote omitted).

In response to the motion in limine, the plaintiffs contend that "[n]umerous former employees have testified to the facility's routine waste disposal practices, including the types of wastes that the Defendants dumped at [other sites]" and that a manager at the plant testified that the Facility's disposal practices remained the same "from at least 1967 through 1980 …." Doc. #794 at 6. The plaintiffs argue such evidence is sufficient to establish routine with regard to the method of disposing of waste and the type of wastes it dumped. *Id*. at 6–7.

Beyond referring to the general categories of evidence, neither party devoted much effort to actually explaining how such categories, which ostensibly could cover decades of dumping, actually establish the evidentiary requirements of Rule 406. In light of this absence of argument, the Court declines to find that evidence of the Facility's dumping practices is per se inadmissible. However, even assuming such dumping would be admissible to show routine as to dumping practices, the *locations* of such dumping are irrelevant to such a determination. Accordingly, to the extent the dumping practices are admissible, the locations of such dumping are not. The motion in limine, therefore, will be granted to this limited extent.

### 3. Dumping in Subdivision

The Meritor Defendants seek to exclude evidence that the Facility dumped waste on the land "in the era before the residences there were constructed" on the ground that no such dumping occurred and that "Plaintiffs have no expert opinion evidence or testing that connects such … conduct to the alleged … contamination …." Doc. #775 at 5, 23. The Meritor Defendants argue that, in the absence of evidence establishing a connection, any evidence of dumping on Subdivision

land would be unfairly prejudicial. *Id.* The plaintiffs respond that evidence shows that the Facility dumped waste on future Subdivision land and:

> If the jury is entitled to consider the dumping of facility waste on the facility premises and along Moose Lodge Road, then they are entitled to consider the scientific and highly relevant evidence that the facility dumped waste in even closer proximity to Plaintiffs' properties. And, the probative value of such evidence in an action which alleges contamination through, in part, the Defendants' waste disposal practices substantially outweighs any prejudice which such evidence presents.

Doc. #794 at 8–9.

Mississippi law requires expert testimony where "scientific, technical, or other specialized knowledge" is needed "to assist the trier of fact to understand the evidence or determine a fact in issue." *Utz v. Running & Rolling Trucking, Inc.*, 32 So.3d 450, 464 (Miss. 2010). Under this standard, no expert is required to link a source of contamination to a plaintiff's property where the plaintiff can show a defendant was "the only entity in the vicinity of their property producing" a chemical and that the chemical "was actually on their property." *Ferguson*, 662 So.2d at 662 (discussing *Shutes v. Platte Chem. Co.*, 564 So.2d 1382 (Miss. 1990)). Otherwise, courts have generally held that the flow of contamination to a plaintiff's property requires expert testimony to explain. *See, e.g.*, *Ramsey v. Consol. Rail Corp.*, 111 F.Supp.2d 1030, 1038 (N.D. Ind. 2000).

While the Mississippi Supreme Court has been willing to disregard expert requirements in environmental cases where causation can be reasonably inferred, the evidence of alleged dumping is not entitled to such an inference. First, unlike in *Shutes*, the alleged contaminating activity (in this case, the dumping) necessarily occurred before the plaintiffs owned their properties. This time lapse calls into question issues of contaminant degradation that fall well beyond the ken of the average juror. Therefore, expert testimony establishing causation is required. In the absence of expert testimony linking the alleged dumping on the land that would become the Subdivision to contamination on the plaintiffs' individual properties at a much later date, the fact of such dumping

would not assist the jury in understanding or determining any issue. Put differently, without such expert evidence, evidence of dumping on the Subdivision land would be irrelevant. The plaintiffs have identified no expert testimony that would link dumping on the Subdivision land to actual contamination on the plaintiffs' properties. Accordingly, the alleged dumping on Subdivision land before the construction of the Subdivision is irrelevant and will be excluded.

### 4. References to contamination of Riverdale Creek and PRB

The Meritor Defendants argue that evidence of contamination of Riverdale Creek, which runs along the western border of the Facility, or the efficacy of the permeable reactive barrier ("PRB") between the Facility and the Creek, should be excluded because "evidence of any contamination of the creek cannot make any fact of consequence to the case more or less probable" and because there is no evidence linking the efficacy of the PRB to any contamination on the plaintiffs' properties. Doc. #775 at 24. The Meritor Defendants further argue references to such matters would create undue prejudice by "lead[ing] the jury to focus improperly on corporate behavior and invit[ing] the jury to punish Defendants even in the absence of any connection with damage …." *Id.*

#### a. Riverdale Creek

The plaintiffs argue that (1) because the defendants argue that contamination flows west from the Facility, the presence of contamination in the creek is relevant to the direction of the groundwater flow; and (2) there is contamination to the East of the Subdivision and that "[c]ontaminated groundwater, even if it traveled directly westward, would … necessarily flow under Eastern Heights on its way to Riverdale Creek, making the degree of contamination of the creek relevant to the contamination flowing through the neighborhood." Doc. #794 at 9–10. The plaintiffs also argue that the defendants have identified no prejudice from this evidence and that

because of the creek's importance in the area, "dozens, if not hundreds" of documents include references to its contamination. *Id*.

With regard to relevance, the plaintiffs have pointed to absolutely no evidence that groundwater to the east of the Subdivision would flow into the creek. While, as a matter of logic, the presence of contamination in the creek would tend to support the defendants' theory that groundwater flows west from the Facility, the degree to which the contamination supports such a theory is unknown and would necessarily depend on expert testimony which is wholly absent from the record. Under these circumstances, the Court finds the contamination in the creek to have no probative value and should be excluded. In reaching this conclusion, the Court notes that the inclusion of references to the creek in various documents have no bearing on the creek's relevance to this action. To the extent the references are properly excluded, they should be redacted for trial.

### b. Permeable Reactive Barrier

The plaintiffs, without citing any part of the record, argue that failures of the PRB resulted in "significant alterations in groundwater flow in the adjacent hydrological system" and that this topic "is essential" to cross-examination of the defendants' experts. Doc. #794 at 9, 10. The Meritor Defendants did not respond to this argument. In the absence of any response, the Court will accept the plaintiffs' representation and deny the motion in limine to the extent the plaintiffs will be entitled to cross-examine the defendants' experts on the impact of the PRB's failure on groundwater flow from the Facility.

### 5. Air and vapor intrusion

The Meritor Defendants seek to exclude references to air and vapor intrusion in the Subdivision on the ground that the plaintiffs lack the requisite expert testimony to link such contamination to the defendants. Doc. #775 at 25. The plaintiffs respond that under *Shutes*, expert

testimony is not required on the issue of air contamination under the facts of this case.  Doc. #794 at 11–12.

As explained above, a toxic tort plaintiff in Mississippi need not introduce expert causation testimony when she is able to show that her property is contaminated with certain chemicals, and the defendant is the only source of the chemicals in the area.  *Shutes*, 564 So.2d at 1384.  While both the actual contamination of the plaintiffs' properties and the possibility of potential sources of contamination will be vigorously litigated at trial, the Court cannot conclude as a matter of law that the plaintiffs will be unable to satisfy the two *Shutes* requirements as to air and vapor intrusion. Accordingly, evidence related to air contamination (including the existence of vapor intrusion into buildings), will not be excluded at this time.

### 6.  Remediation plan

The Meritor Defendants move to exclude reference to a remediation plan proposed by the plaintiffs' experts on the ground that the plan is irrelevant because it would never be adopted.  Doc. #775 at 25–26.  The Meritor Defendants also contend that any probative value is exceeded by the danger of unfair prejudice.  *Id*. at 26.  The plaintiffs argue that the remediation plan is relevant to the extent it was used by their appraiser experts under the Uniform Standards of Professional Appraisal Practice to calculate the diminution in value of the plaintiffs' properties.  Doc. #794 at 12–13.

This Court has excluded the expert testimony identified by the plaintiffs.  Doc. #853. Accordingly, in the absence of any additional argument for the relevance of the remediation plan, the Meritor Defendants' motion in limine will be granted.

### 7. Cost-allocation

The Meritor Defendants, citing irrelevance and unfair prejudice, seek exclusion of two cost-allocation agreements: (1) a 1996 agreement between Rockwell and Textron allocating costs of environmental remediation at the Facility; and (2) a 2005 agreement between ArvinMeritor and Textron regarding costs associated with the Facility. Doc. #775 at 10, 26. The Meritor Defendants argue that "[e]vidence of the now-concluded allocation of responsibility for remediation at the *Facility*," is irrelevant to the plaintiffs' claims premised on damage to the Subdivision. *Id.* The plaintiffs respond that the danger of prejudice is low and that the issue of apportionment of fault is relevant under Mississippi law, and that there is no danger of prejudice because the defendants admit the Facility and the neighborhood are contaminated. Doc. #794 at 14–15.

Except where multiple tortfeasors "consciously and deliberately pursue a common plan or design," Mississippi requires that liability be apportioned based on fault. Miss. Code Ann. § 85-5-7. Assuming a cost-allocation agreement could be relevant to the issue of apportionment of fault, the plaintiffs have offered no argument as to why a cost-allocation agreement governing remediation and costs at the Facility would be relevant to the issue of apportionment of fault for the claims at issue here. Furthermore, the Court finds the agreements to be unfairly prejudicial to the extent they suggest that the parties contemplated or believed they would be liable for the claims at issue here. Accordingly, to the extent the agreements hold any relevance, such value is outweighed by the prejudice associated with admission.

### 8. Facility's "Spill Prevention Control and Countermeasure Plan"

The Meritor Defendants seek exclusion of a "Spill Prevention Control and Countermeasure Plan" in place at the Facility which was first put in place in 1975 and then modified in 1981 and 1984. Doc. #775 at 11–12. The Meritor Defendants argue the plan did not relate to the chemicals

at issue here and is unfairly prejudicial. *Id*. at 27. The plaintiffs respond that the plan expressly identifies TCE and toluene, chemicals at issue in this action. Doc. #794 at 15–16. The Court agrees with the plaintiffs.

Mississippi law recognizes that a company's internal rules and policies may be relevant to determining the applicable standard of care in a negligence action. *Tanner v. Roseburg Forest Prods. S., Ltd. P'ship*, 185 So.3d 1062, 1065 (Miss. Ct. App. 2016) (citing *Crane Co. v. Kitzinger*, 860 So.2d 1196, 1200–01 (Miss. 2003)). To the extent the plan governed chemicals at issue here, it is relevant to the plaintiffs' negligence claims.

The plan provides specific guidance for "Oil Spill[s]" and includes a listing of "Possible Spill Sources," including "Underground Tolune Storage," and "Above Ground Trichloroethylene Storage Tanks." Doc. #774-15 at 4–5, 7. Thus, the plan clearly included TCE and toluene within its definition of "oil" and, therefore, governed the proper procedures for addressing spills. Accordingly, the plan is relevant. This relevance outweighs any risk of prejudice associated with admission of the evidence. Accordingly, pre-trial exclusion is inappropriate.

### 9. Death of Facility employee

The Meritor Defendants seek to exclude evidence and argument related to the death of a Facility employee which was attributed to TCE inhalation. Doc. #775 at 27–28. The plaintiffs do not oppose such exclusion. Doc. #794 at 16–17. Accordingly, the motion will be granted in this respect.

### 10. References to cancer and other illnesses

The Meritor Defendants move to exclude for lack of relevance and unfair prejudice references and evidence related to "cancer; the carcinogenic properties of any chemical; the risk of illness posed by chemicals; residents or former residents or other individuals who are ill or who

have been injured, or who have died." Doc. #775 at 13–14, 28–29. The plaintiffs respond that while they cannot recover for fear of future illness, the carcinogenic nature of the chemicals is relevant to their claims premised on diminution of value of their property and for intentional infliction of emotional distress. Doc. #794 at 17–19. In advancing their argument, the plaintiffs cite *King v. Cole's Poultry, LLC*, No. 1:14-cv-88, 2017 WL 532284 (N.D. Miss. Feb. 9, 2017), a recent opinion from United States District Judge Michael P. Mills. *Id.* at 17–18.

In *King*, a defendant sought to exclude evidence related to health problems associated with contamination on the ground that the plaintiffs could not recover for future medical injuries. 2017 WL 532284, at *2–3. The plaintiffs responded that the harmful effects of the chemicals impacted their ability to enjoy the property. *Id.* at *3. Judge Mills agreed with the plaintiffs and denied the motion in limine on the ground that the plaintiffs "anxiety and discomfort concerning the present and future state of their properties is admissible." *Id.*

This Court finds Judge Mills' reasoning persuasive and holds that the harmful effects of the chemicals are relevant to the extent they impact the plaintiffs' use and enjoyment of their properties and, relatedly, any emotional distress associated with the impact of the chemicals on the properties. Accordingly, the motion in limine will be denied in this respect.

### 11. Fear of future disease, illness, or harm

The Meritor Defendants move to exclude evidence or argument related to the plaintiffs' fear of future disease, illness, or harm. Doc. #775 at 14. The plaintiffs do not oppose this requested relief. Doc. #794 at 19. Accordingly, the motion will be granted in this respect.

### 12. Fraud or conspiracy

The Meritor Defendants argue that, to the extent the plaintiffs have dismissed their claims for fraud or conspiracy, "no evidence or testimony that in any way relates to fraud or conspiracy

can be probative of any fact, issue or claim in the case, and therefore must be excluded as irrelevant" or unfairly prejudicial. Doc. #775 at 14. The plaintiffs respond that they do not intend to introduce evidence which is "solely relevant" to the claims for fraud or conspiracy. Doc. #794 at 20. However, the plaintiffs argue that they "should not be prohibited from proving facts which relate to the elements of their claims for negligence, nuisance, trespass, or intentional infliction of emotional distress, such as the fact that the Defendants failed to report to the appropriate regulatory agencies, and concealed for years, massive leaks of TCE and toluene on the facility premises." *Id.* at 20–21.

The Court agrees that the motion should be granted to the extent it seeks exclusion of evidence related solely to the dismissed fraud or conspiracy claims. However, the defendants cite no authority, and this Court is aware of none, which would support excluding evidence relevant to the plaintiffs' remaining claims based on the fact that the evidence could in some way "relate to" the dismissed claims. Accordingly, the motion will be denied in this respect.

### 13. References to claims against defendants by other residents

The Meritor Defendants move to exclude references to four cases consolidated with this case and to "personal injury cases [filed] on behalf of twenty plaintiffs" against the defendants. Doc. #775 at 15. The plaintiffs do not oppose this relief. Doc. #794 at 21. Accordingly, the motion will be granted in this respect.

### 14. References to maximum contaminant levels for drinking water

The Meritor Defendants seek exclusion of evidence or argument that the groundwater at a monitoring well in the Subdivision exceeds, in some respects, the EPA's maximum contaminant levels ("MCLs") for drinking water. Doc. #775 at 15–16. They argue that because the residents of the Subdivision do not drink or use the groundwater, the fact that the groundwater exceeds

certain MCLs is irrelevant. *Id*. The plaintiffs, without citing authority, respond that "contamination of the groundwater under Plaintiffs['] properties above a regulatory level … indicates that Plaintiffs' properties are indeed contaminated." Doc. #794 at 22. Relatedly, the plaintiffs argue that the groundwater exceeding the MCLs is relevant because the defendants will argue at trial that "proof of contamination above applicable regulatory standards is required to recover damages for diminution of value." *Id*.

With regard to the plaintiffs' first point, the plaintiffs have offered absolutely no argument or evidence as to how or why groundwater exceeding the drinking water MCLs shows "contamination," or why such "contamination" is relevant to this action. With regard to the second point, the plaintiffs have offered no evidence or argument as to why an MCL related to drinking water would be an "applicable regulatory standard" for the groundwater tested at the well. Because it appears the MCLs for drinking water are irrelevant to this action, the motion in limine will be granted to the extent it seeks exclusion of references to such MCLs.

### 15. Compound Specific Isotope Analysis

In preparation for trial, the Meritor Defendants retained a consulting expert to perform Compound Specific Isotope Analysis ("CSIA"), a procedure which allows a researcher to "fingerprint" an environmental sample for the purpose of comparing it to other samples. This expert, in turn, directed James Peeples, one of the defendants' testifying experts, to take samples from certain sites. Peeples sent the samples to the consulting expert but, according to the defendants, did not review the actual results. The Meritor Defendants seek to exclude evidence or argument related to the CSIA testing (as distinct from the CSIA results) as privileged, irrelevant and unfairly prejudicial. Doc. #775 at 16–18, 32–33.

The plaintiffs respond that the defendants waived any privilege based on their designation of Peeples as a testifying expert and that the fact that Peeples "has refused to educate himself regarding the CSIA test results, or request that Defendants make the CSIA test results available for his review, severely undermines his 'source' opinions, and it would be unduly prejudicial to Plaintiffs to prohibit their counsel from questioning … Peeples along those lines."  Doc. #794 at 24.  They further contend that they are entitled to "offer evidence at trial that the Defendants conducted CSIA testing and argue the adverse inference which arises from the Defendants' failure to produce that evidence on an issue which is crucial to the jury's decision in this case."  *Id*.  The Meritor Defendants submit that penalizing a party for failing to disclose the results of a consulting expert's work would "spell the evisceration of the protections of" the privilege afforded to such experts under Federal Rule of Civil Procedure 26(b)(4)(D).  Doc #775 at 18.

Federal Rule 26(b)(4)(D) protects from discovery "facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial."  However, this is a *discovery* rule which has "nothing to do with the admissibility of already-disclosed material." *Benham v. Ozark Materials River Rock, LLC*, 885 F.3d 1267, 1276 (10th Cir. 2018); *see Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-595, 2007 WL 3232238, at *2 (M.D. Fla. Oct. 16, 2007) (Rule 26(b)(4) "does not purport to address admissibility of evidence at trial").  Thus, in the "absence of any claim of discovery abuse," a claim not made here,[17] Rule of Evidence 403, rather than Rule 26(b)(4), governs admission. *Rubel v. Eli Lilly & Co.*, 160 F.R.D. 458, 461 (S.D.N.Y. 1995).

---

[17] This Court has previously concluded that the fact of the CSIA testing is discoverable to the extent it was performed by Peeples and that the results of such testing would be discoverable to the extent Peeples reviewed or relied upon such results.  *See* Doc. #612; Doc. #690.  The defendants have declined to produce the CSIA testing on the grounds that Peeples did not review or rely upon such testing.

Having concluded that Rule 26(b)(4)(D) does not bar admission, the question becomes whether the fact of CSIA testing is admissible for the purposes offered by the plaintiffs: (1) impeachment of Peeples' source opinions; and (2) creating an adverse inference regarding the results of the testing.

"Unquestionably the failure of a defendant in a civil case to testify or offer other evidence within his ability to produce and which would explain or rebut a case made by the other side, may, in a proper case, be considered as a circumstance against him and may raise a presumption that the evidence would not be favorable to his position." *Transcon. Gas Pipe Line Corp. v. Mobile Drilling Barge Mr. Charlie*, 424 F.2d 684, 694 (5th Cir. 1970). "The logic supporting the adverse inference rule is that a party fails to produce evidence in its control in order to conceal adverse facts." *BNSF Ry. Co. v. Bhd. of Maint. of Way Emps.*, 550 F.3d 418, 424 (5th Cir. 2008). Notably, the inference is appropriate even when the undisclosed evidence is protected by privilege. *See Baxter v. Palmigiano*, 425 U.S. 308, 318–19 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them …."); *but see United States ex rel. Barko v. Haliburton Co.*, 709 F. App'x 23, 24 (D.C. Cir. 2017) (adverse inference inappropriate based on invocation of attorney-client privilege).

Here, the plaintiffs intend to offer properly discovered evidence that the defendants conducted source testing on pollution around the Subdivision and to argue that the failure to disclose these results warrants an adverse inference regarding these results. Even assuming that adverse inferences are inappropriate based on the invocation of a privilege,[18] there is simply no

---

[18] Textron's motion relies exclusively on authority declining to find an adverse inference based on the invocation of the attorney-client privilege. *See* Doc. #781 at 26–28. These cases are inapposite to the extent they rely on a rule of admissibility, rather than a rule of discovery. *See Wharton v. Calderon*, 127 F.3d 1201, 1205 (9th Cir. 1997) ("The attorney-client privilege, like most other privileges, is an *evidentiary* privilege ….").

privilege to invoke at trial because, in the absence of a discovery abuse, Rule 26(b)(4) is inapplicable at trial. *Rubel*, 160 F.R.D. at 462. Thus, while these results may be protected from discovery under Rule 26(b)(4), neither the Meritor Defendants, nor Textron in its motion discussed below, cite any authority for the proposition that protection from discovery renders an adverse inference inappropriate here. In the absence of such authority, the Court finds the fact of CSIA testing relevant to the action and that such relevance exceeds any danger of unfair prejudice to the defendants.

Even if the testing was irrelevant for the purpose of establishing an adverse inference, it is beyond dispute that "an expert's decision not to consider certain facts in formulating his opinions is a matter for cross-examination ...." *Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, No. 15-4927, 2018 WL 296015, at *5 (D. Kan. Jan. 4, 2018). The Court concludes that the fact of CSIA testing is a proper subject for cross-examination with regard to Peeples' source opinions and that the probative value of such questioning exceeds any danger of unfair prejudice.

### 16. Summary

The Meritor Defendants' motion to exclude numerous arguments and evidence on grounds of relevance will be granted in part and denied in part. The motion will be granted to the extent it seeks exclusion of evidence or argument related to: (1) locations the Facility dumped outside the MLRA; (2) dumping by the Facility on the land that would become the Subdivision; (3) contamination of Riverdale Creek and the efficacy of the PRB, except to the extent the efficacy of the PRB impacted groundwater flow; (4) the remediation plan proposed by the plaintiffs' experts; (5) the cost-allocation agreements of the defendants; (6) the death of an employee at the Facility; (7) cancer and illness, except to the extent such evidence or argument relates to the plaintiffs' use and enjoyment of their properties; (8) fears of future illness; (9) claims for fraud or conspiracy,

provided such arguments or evidence have no probative value with respect to plaintiffs' remaining claims; (10) other claims brought by Subdivision residents against the defendants; and (11) the fact that a groundwater well exceeded drinking water MCLs. The motion will be denied in all other respects.

## I. Stigma

In their amended complaint, the plaintiffs seek, among other things, "damages for "[d]iminution of property market value based on contamination and/or market stigma secondary to contamination." Doc. #43 at ¶ 77. The Meritor Defendants have moved to exclude evidence of stigma at trial because Dixie Clay (the plaintiffs' property valuation expert) abandoned her stigma opinions and because "no Plaintiff has any personal knowledge regarding the market perception of the value of her property, as no Plaintiff has even attempted to sell her property since news of the alleged contamination broke." Doc. #777 at 2–3. The Meritor Defendants also contend that evidence of stigma is irrelevant and unfairly prejudicial because the plaintiffs cannot show a permanent physical injury to their property. *Id*. at 5.

### 1. Relevancy

Under Mississippi law, "market stigma is not a compensable damage absent a confirmed physical property damage or a confirmed threat of physical property damage." *Berry v. Armstrong Rubber Co.*, 780 F.Supp. 1097, 1104 (S.D. Miss. 1991). The Meritor Defendants argue that since the plaintiffs can show neither, evidence of stigma is irrelevant. Doc. #777 at 5. The plaintiffs respond that "[t]he facts of this action … establish permanent injury to land." Doc. #788 at 3.

When confronted with a question of conditional relevancy, "[t]he court may admit the proposed evidence on the condition that the proof be introduced later." Fed. R. Evid. 104(b). In accordance with this rule, the Court concludes that the relevance of stigma, which is conditioned

on the showing of permanent damage to property or confirmed threat of such damage, is properly determined at trial. Should the plaintiffs fail to satisfy this condition, a jury instruction making clear that the introduced evidence of stigma is irrelevant would suffice to alleviate any potential for unfair prejudice. Accordingly, the motion in limine will be denied in this respect.

## 2. Competency of Clay

The Meritor Defendants argue that because Clay abandoned her stigma opinion, she may not testify on the issue of stigma or reference statements in her report from bankers "about whether not they would provide loans or refinancing to the Subdivision residents ...."[19] Doc. #777 at 6. The plaintiffs do not dispute that, having abandoned her stigma opinion, Clay may not testify on the issue of stigma. However, they contend that the statements of the bankers are related not only to the withdrawn stigma opinion but also to Clay's opinions regarding the highest and best use of the relevant properties.[20] Doc. #788 at 5–6. The Meritor Defendants did not reply to this argument, and the Court declines to advance arguments on their behalf. Accordingly, to the extent the banker statements were used to reach an unwithdrawn opinion, the motion in limine will be denied.

## 3. Competency of plaintiffs

Under both Mississippi and federal law, an owner of a property may testify as to the value of his property. *Moore v. State*, 187 So.3d 109, 115 (Miss. 2016); *LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 433–34 (5th Cir. 1982) (collecting cases). While the Meritor Defendants cite non-binding case law for the proposition that such testimony must satisfy certain threshold requirements, the law is equally clear that no such thresholds exist. *See Moore*, 187 So.3d at 115 ("The owner's estimate does not have to be 'rationally based,' and no predicate is required other

---

[19] In a footnote, the Meritor Defendants also argue that the consideration of the standards fails to satisfy the reliability standards of *Daubert*. Doc. #777 at 6 n.5. The footnote contains absolutely no argument or authority for this assertion.

[20] The plaintiffs also refer to statements of real estate agents not referenced in the defendants' motion in limine.

than ownership."); *LaCombe*, 679 F.2d at 434 ("[T]he opinion testimony of a landowner as to the value of his land is admissible without further qualification."). Accordingly, the plaintiffs are free to testify as to why they believe stigma has impacted their property values.

## IV
## Plaintiffs' Omnibus Motion in Limine

In their motion, the plaintiffs seek to exclude testimony or argument relating to "[h]ow, when, and under what circumstances Plaintiffs chose, employed, or retained their attorneys, including all counsel of record for Plaintiffs and Reid Stanford, a former counsel of record for Plaintiffs." Doc. #764 at 1 (emphases omitted). The plaintiffs argue that such evidence is irrelevant, or that its probative value is outweighed by the danger of unfair prejudice. *Id*. The Meritor Defendants do not oppose the requested relief but argue that the relationships of the plaintiffs' counsel to certain fact witnesses (including Shay Harris and Jerry Williams) are admissible for the purpose of showing bias. Doc. #798 at 1–2. Textron does not oppose the motion as framed but asks that "depending upon the evidence that is adduced at trial," it may be allowed to reconsider its position insofar as the plaintiffs' contact with attorneys becomes relevant to Textron's statute of limitations affirmative defense. Doc. #801 at 1–2. The plaintiffs did not address either argument.

To the extent the defendants do not oppose the exclusion of the circumstances of the retention of the plaintiffs' attorneys, the motion in limine will be granted. However, the defendants may seek reconsideration of this decision to the extent the circumstances become relevant to this action. To the extent neither Williams[21] nor Harris nor non-party fact witnesses are plaintiffs in

---

[21] Williams is a plaintiff in a member case.

this action, the circumstances of their relationships to the plaintiffs' attorneys would not be covered by this in limine ruling.

**V**

**<u>Textron's Omnibus Motion in Limine</u>**

Textron filed an omnibus motion seeking to exclude numerous pieces of evidence, many of which were addressed above.

### A.  Other Lawsuits or Other Plaintiffs

Textron seeks exclusion, during the compensatory damages phase of trial, of other lawsuits against Textron and the plaintiffs in such suits on the ground that such evidence is irrelevant.  Doc. #781 at 2–5.  The plaintiffs do not oppose this relief, which this Court has already determined should be granted.  Doc. #802 at 2.

### B.  Harm to Subdivision as Whole and Harm to Other Subdivision Residents

Textron argues that, during the compensatory damages phase of trial, references or evidence related to contamination in the Subdivision as a whole and evidence and references to harm to other Subdivision residents should be excluded as irrelevant and unfairly prejudicial.  Doc. #781 at 5–6.  The plaintiffs respond, as they did above, that evidence of contamination in the Subdivision may be used to show contamination on their individual properties.  Doc. #802 at 2–5.

For the same reasons above, the Court concludes that evidence of contamination elsewhere in the Subdivision, including non-party properties, is relevant to the extent it is used to show contamination or threat of contamination on the plaintiffs' properties.  Accordingly, the motion in limine will be denied to the extent it seeks exclusion of such evidence.

### C. "Unrelated Facility Practices, Such as Alleged Employment Practices, General Working Conditions, and Vapor Intrusion Inside the Facility"

Although Textron broadly refers to "facility" and "employment" practices, the substance of its argument relates only to the working conditions in the Facility, specifically the presence of TCE indoors and the alleged impact of TCE on certain employees. Doc. #781 at 7–8. Textron contends such evidence is irrelevant and unfairly prejudicial. *Id*. The plaintiffs respond that evidence of employee complaints is relevant to show "[t]he Defendants' actual knowledge of the dangers of TCE and its status as a hazardous substance," which the plaintiffs contend is relevant to their claims and to rebut the defendants' anticipated "state of the art defense." Doc. #802 at 6. The plaintiffs further argue that evidence of vapor intrusion in the Facility is relevant to show the Facility caused the air contamination and vapor intrusion on the plaintiffs' properties. *Id*. at 6–7, 15–16.

Textron did not respond to the plaintiffs' assertions that the defendants' knowledge of the potential hazards of TCE will be an issue at trial. To the extent it is an issue, the health effects of employees exposed to TCE would certainly be relevant to show the defendants' knowledge. Such relevance would outweigh any danger of unfair prejudice.

With regard to the data regarding presence of TCE in the Facility, Textron argues the evidence is irrelevant because there is no expert evidence linking the vapor intrusion in the Facility to the alleged contamination on any of the plaintiffs' properties. Doc. #781 at 8 n.9. The plaintiffs, citing *Shutes*, argue proximity of the Facility vapor intrusion to the alleged vapor intrusion on the plaintiffs' properties is sufficient to obviate the need for expert testimony and render the Facility vapor intrusion relevant. Doc. #802 at 6–7, 15–16. Once again, the plaintiffs stretch *Shutes* too far.

To repeat, *Shutes* stands for the proposition that expert testimony on causation is unnecessary where (1) a defendant produced airborne emissions; (2) the chemical was located on the plaintiff's property; and (3) there were no other potential sources of the chemical "in the area." 564 So.2d at 1384. To the extent *inside* a structure, air contamination is not an emission. Accordingly, in the absence of any expert evidence linking the presence of TCE in the Facility to the plaintiffs' properties (or even to the ambient air), such evidence is irrelevant and is properly excluded.

### D.  Harm to Natural Resources and Effectiveness of PRB

Textron seeks exclusion of evidence and argument related to the state's natural resources, including Riverdale Creek and animals in the creek, and the effectiveness of the PRB. Doc. #781 at 8–10. In response, the plaintiffs advance the same arguments they did with respect to the Meritor Defendants' motion regarding the creek and the PRB. Doc. #802 at 7–9. The plaintiffs make no argument as to the relevance of the harm to animals. *See id.*

For the same reasons above, the Court concludes that evidence related to contamination in the creek is properly excluded but that evidence related to the effectiveness of the PRB is proper for the purpose of cross-examining the defendants' experts on the issue of groundwater flow beneath the Facility.[22] To the extent the plaintiffs offered no argument as to relevance of harm to animals, such evidence will also be excluded.

### E.  Use of Compensatory Damages to Punish or Send Message

Textron seeks to exclude argument that compensatory damages should be used to punish Textron or send a message. Doc. #781 at 10. The plaintiffs do not oppose the requested relief. Doc. #802 at 9. Accordingly, the motion will be granted in this regard.

---

[22] The motion, though referring broadly to natural resources, addresses only the creek and the creek's animals.

## F. Textron's Financial Condition and Net Worth

Textron moves to exclude, at the compensatory damages phase, evidence of its financial condition or net worth. Doc. #781 at 10–11. The plaintiffs do not oppose the requested relief. Doc. #802 at 9. Accordingly, the motion will be granted in this regard.

## G. Personal Injury or Fear of Future Illness

Textron seeks exclusion of evidence related to personal injuries suffered by the plaintiffs or fear of future illnesses on the grounds that such claims are not before the Court because the plaintiffs did not assert claims for personal injury and have abandoned their claims for negligent infliction of emotional distress. Doc. #781 at 11–14. The plaintiffs, once again, do not oppose the requested relief to the extent it refers to abandoned or nonexistent claims but argue the carcinogenic nature of the chemicals is relevant to the extent it impacts their use and enjoyment of their properties. Doc. #802 at 10–11.

For the same reasons above, Textron's motion will be granted to the extent it seeks to preclude the plaintiffs from introducing evidence of personal injury or fear of future illness but will be denied to the extent the plaintiffs intend to offer fear of carcinogenic chemicals as impacting the use and enjoyment of their properties.

## H. Liability for Rockwell's Conduct

Textron seeks to exclude evidence or argument that: (1) it is jointly liable for Rockwell's conduct; and (2) the alleged knowledge of spills and releases held by Rockwell employees at the time the Facility was sold to Textron in 1985 may be imputed to Textron. Doc. #781 at 14–17. Textron contends that it cannot be held jointly liable under Mississippi law and that any knowledge imputed to them regarding spills and releases is irrelevant in the absence of causation evidence that their failure to act caused the alleged contamination. *Id*. at 15–16. The plaintiffs respond that

they will not argue Textron is jointly liable but contend that such knowledge is properly imputed to Textron and that such imputation is relevant because evidence shows that Textron's failure to act exacerbated the plaintiffs' injuries. Doc. #802 at 12–14. As support for this argument, the plaintiffs point to the fact that contamination levels in the Facility's equalization lagoon worsened after Textron assumed control. *Id*.

Knowledge of an employee is imputed to a company for the purpose of establishing liability. *Glover v. Jackson State Univ.*, 968 So.2d 1267, 1276 n.9 (Miss. 2007) (plurality opinion). Likewise, a defendant's negligence is actionable when it exacerbates an injury. *Winston v. Cannon*, 430 So.2d 413, 416–17 (Miss. 1983). Accordingly, the relevance of the imputed knowledge is conditional on the plaintiffs' ability to prove Textron's negligent failure to act on such knowledge caused or exacerbated the plaintiffs' injuries. In this regard, the Court notes that, as explained in a prior order, there is very little, if any, evidence that the equalization lagoon had any impact on contamination in the Subdivision. However, the Court, in an abundance of caution, will allow the admission of the knowledge evidence, with the understanding that the failure to establish causation will result in exclusion of the evidence at trial. *See* Fed. R. Evid. 104(b).

## I. Transcribed Statements

Textron argues that the transcribed statements taken by the plaintiffs' counsel are properly excluded as inadmissible hearsay and as unfairly prejudicial. Doc. #781 at 17–18. The plaintiffs again argue that the statements may be used for impeachment purposes or to establish a recorded recollection. Doc. #802 at 14–15. For the same reasons above, the Court agrees with the plaintiffs. Accordingly, the transcribed statements will be excluded except for the limited purpose of establishing a recorded recollection or impeachment.

### J. TCE Emissions

Textron argues that evidence related to TCE air emissions should be excluded as irrelevant and unfairly prejudice because testing revealed no TCE on the plaintiffs' properties and because the plaintiffs lack an expert to tie any possible contamination to the Facility. Doc. #781 at 18–20. The plaintiffs argue that "[f]acility-related chemicals have been detected in the ambient air in Eastern Heights on scores of instances" and then rely on *Shutes* for the proposition that no expert is required based on the Facility's proximity to the Subdivision. Doc. #802 at 15–17. The plaintiffs further speculate that they may be able to illicit a causation opinion from the defendants' experts. *Id*.

In considering the parties' arguments, the Court begins by reiterating that contamination on the plaintiffs' properties does not necessarily flow from contamination in the Subdivision. However, as above, the Court cannot conclude as a matter of law that the plaintiffs will be unable to show causation as to TCE or other air emissions. Accordingly, the Court concludes that such evidence and argument is not excludable at this time.

### K. Vapor Intrusion

Textron contends that evidence and argument regarding vapor intrusion should be excluded because the plaintiffs abandoned their claims premised on vapor intrusion. Doc. #781 at 20–22. The plaintiffs argue that they did not abandon this theory of liability but only argued at the summary judgment stage that "evidence of vapor intrusion was not necessary to maintain [their] trespass claims." Doc. #802 at 17.

Based on numerous recent evidentiary rulings, the Court ordered new briefing on the parties' summary judgment arguments (should mediation be unsuccessful). Doc. #856. Because

the Court did not rule on the summary judgment issues on the briefs submitted by the parties, the Court declines to find waiver on such briefs. Accordingly, the motion in limine will be denied.

## L. 1991 Agreed Order Between Textron and MDEQ

Textron seeks exclusion of a 1991 agreed order with MDEQ for "all alleged and potential claims relating to [the] equalization lagoon." Doc. #781 at 22–24 (emphases omitted). Textron argues the agreement is inadmissible under Rule 408 and Rule 403. *Id.* The plaintiffs respond that the agreement is admissible for the limited purpose "to establish that Textron did, in fact, undertake to close the Equalization lagoon and what its motives for doing so were." Doc. #802 at 19.

As an initial matter, the Court agrees with Textron that introduction of the settlement agreement between Textron and an environmental agency, particularly with regard to a subject of this litigation, carries a substantial risk of unfair prejudice by suggesting a predetermination of liability. Furthermore, as argued by the plaintiffs, the settlement agreement has minimal probative value. It seems undisputed that Textron, who owned the Facility at the time the equalization lagoon closed, was responsible for the closure. *See United States v. Perez-Solis*, 709 F.3d 453, 465 (5th Cir. 2013) ("Probative value may be calculated by comparing evidentiary alternatives.") (quotation marks omitted). Additionally, the plaintiffs have offered no argument as to why the motivation for closure is relevant to this case. Given the minimal probative value and the danger of prejudice, the Court concludes that the agreed order should be excluded.

## M. CSIA Testing

Textron, invoking the protections of Rule 26(b)(4), seeks exclusion of references or arguments to the CSIA testing performed by Peeples. For the same reasons above, the motion will be denied in this respect.

## N. CERCLA/Superfund Proceedings

Finally, Textron seeks exclusion of the EPA's CERCLA/Superfund efforts, including the listing of the Facility on the EPA's National Priorities List. Doc. #781 at 28–30. For the same reasons above, the Court concludes that the motion should be denied.

## O. Summary

Textron's omnibus motion in limine will be granted in part and denied in part. The motion will be granted to the extent it seeks exclusion of argument or evidence related to: (1) other lawsuits or other plaintiffs with claims against Textron; (2) the vapor intrusion levels in the Facility; (3) environmental harm to Riverdale Creek and animals and the effectiveness of the PRB, except to the extent such efficacy impacted groundwater flow; (4) the financial condition of Textron, during compensatory damages phase; (5) claims for personal injury or fear of future illness, except to the extent health concerns from contamination impacted use and enjoyment of the property; (6) transcribed statements taken by counsel for the plaintiffs, except to the extent such statements may be used as recorded recollections or for impeachment; and (7) the 1991 agreed order between Textron and MDEQ. The motion will be denied in all other respects.

## VI
## <u>Conclusion</u>

The Meritor Defendants' (1) motion to exclude references to punitive damages [757] is **GRANTED in Part and DENIED in Part**; (2) motion to exclude references to the National Priorities List [759] is **GRANTED in Part and DENIED in Part**; (3) motion to exclude statements of residents, former residents, and former workers [761] is **GRANTED in Part and Denied in Part**; (4) motion to exclude the testimony of Shay Harris [765] is **DENIED**; (5) motion to exclude undisclosed and unsupported expert opinions [768] is **DENIED**; (6) motion to exclude prejudicial evidence or argument [770] is **GRANTED in Part and DENIED in Part**; (7) motion

to exclude the testimony of undisclosed witnesses [772] is **DENIED**; (8) motion to exclude irrelevant evidence or argument [774] is **GRANTED in Part and DENIED in Part**; (9) motion to exclude evidence of stigma [776] is **DENIED**.

The plaintiffs' omnibus motion in limine [763] is **GRANTED**.

Textron's omnibus motion in limine [780] is **GRANTED in Part and DENIED in Part**.

**SO ORDERED**, this 4th day of March, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**